FILED

MAR - 1 2006

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
DEPUTY

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3    HONORABLE DAVID O. CARTER, JUDGE PRESIDING

4              - - - - - - -

5    UNITED STATES OF AMERICA,        )
                                      )
6              Plaintiff,             )
                                      )
7         vs.                         )   No. CR 02-938 DOC
                                      )   Status Conference
8    BARRY BYRON MILLS, TYLER DAVIS   )
     BINGHAM, CHRISTOPHER OVERTON     )
9    GIBSON, and EDGAR WESLEY HEVLE,  )
                                      )
10             Defendants.            )
                                      )

11

**ORIGINAL**
Debbie Gale, CSR 9472

12

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              Status Conference

17            Santa Ana, California

18          Friday, February 24, 2006

19

20   Debbie Gale, CSR 9472, RPR
     Federal Official Court Reporter
21   United States District Court            ENTER ON ICMS
     411 West 4th Street, Room 1-053
22   Santa Ana, California 92701             MAR  7 2006
     (714) 558-8141
23                                           SBB
                                             2839
24

25   AB2006-02-24 Status Conference

```
 1   APPEARANCES OF COUNSEL:

 2   On behalf of the Plaintiff UNITED STATES OF AMERICA:

 3                      DEPARTMENT OF JUSTICE
                       OFFICE OF THE UNITED STATES ATTORNEY
 4                     BY:   STEPHEN WOLFE
                             MICHAEL EMMICK (Not present)
 5                           Assistant United States Attorneys
                       1400 United States Courthouse
 6                     312 N. Spring Street
                       Los Angeles, California 90012
 7                     (213) 894-0511

 8                        -AND-

 9                      DEPARTMENT OF JUSTICE
                       OFFICE OF THE UNITED STATES ATTORNEY
10                     BY:   TERRI FLYNN (Not present)
                             Assistant United States Attorneys
11                     1400 United States Courthouse
                       312 N. Spring Street
12                     Los Angeles, California 90012
                       (213) 894-0511
13

14

15   On behalf of the Defendant BARRY BYRON MILLS:

16                      LAW OFFICES OF H. DEAN STEWARD
                       By:   H. DEAN STEWARD
17                           Attorney at Law
                       107 Avenida Miramar
18                     Suite C
                       San Clemente, California 92672
19                     (949) 481-4900

20                        -AND-

21                      LAW OFFICES OF MARK F. FLEMING
                       By:   MARK F. FLEMING
22                           Attorney at Law
                       433 "G" Street
23                     Suite 202
                       San Diego, California 92101
24                     (619) 652-9970

25
```

1    APPEARANCES (Continued):

2    On behalf of the Defendant TYLER DAVIS BINGHAM:

3

4              LAW OFFICES OF MICHAEL V. WHITE
               BY:  MICHAEL V. WHITE
                    Attorney at Law
5              1717 Fourth Street
               Third Floor
6              Santa Monica, California 90401
               (310) 576-6242
7
               -AND-
8

9              STEWART & HARRIS
               BY:  WILLIAM S. HARRIS
10                  Attorney at Law
               1499 Huntington Drive
11             Suite 403
               South Pasadena, California 91030
12             (626) 441-9300

13

14   On behalf of the Defendant CHRISTOPHER OVERTON GIBSON:

15

16             LAW OFFICES OF KENNETH A. REED
               BY:  KENNETH A. REED
                    Attorney at Law
17             404 West Fourth Street
               Suite C
18             Santa Ana, California 92701
               (714) 953-7400
19
               -AND-
20

21             LAW OFFICES OF PETER SCALISI
               BY:  PETER SCALISI (Not present)
22                  Attorney at Law
               17897 MacArthur Boulevard
23             Second Floor
               Irvine, California 92614
24             (949) 261-9914

25

1    APPEARANCES (Continued):

2

3    On behalf of the Defendant EDGAR WESLEY HEVLE:

4

5                    LAW OFFICES OF BERNARD J. ROSEN
                    BY:   BERNARD J. ROSEN
6                        Attorney at Law
                    1717 Fourth Street
7                    Suite 300
                    Santa Monica, California 90401
8                    (310) 451-4577

9                    -AND-

10                   LAW OFFICES OF DONALD J. CALABRIA
                    BY:   DONALD J. CALABRIA
11                       Attorney at Law
                    16133 Ventura Boulevard
12                   Suite 600
                    Encino, California 91436
13                   (818) 990-0110

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**I N D E X**

PROCEEDINGS                                                    PAGE

Status Conference                                               6

| EXHIBIT NO. | | IDENTIFICATION | IN EVIDENCE |
|---|---|---|---|
| Defense 1 | Still photos | 52 | |
| Defense 2 | Photo of glasses | 52 | |

CR 02-938 DOC - 2/24/2006 - Status Conference

6

1       **SANTA ANA, CALIFORNIA, FRIDAY, FEBRUARY 24, 2006**

2               **Status Conference**

3                *(9:04 a.m.)*

09:04:16  4       THE COURT:  We're on the record.  Mr. Wolfe is

09:04:20  5  present.

09:04:20  6       Mr. Wolfe, will Mr. Emmick be joining us, or

09:04:24  7  Ms. Flynn today.?

09:04:25  8       MR. WOLFE:  No, Your Honor.

09:04:26  9       THE COURT:  Then I won't delay the proceedings.

09:04:29  10       Mr. Fleming's present.  Mr. Mills, Mr. Steward are

09:04:30  11  present.

09:04:31  12       Mr. White, Mr. Bingham, Mr. Harris are present.

09:04:34  13       Mr. Rosen, Mr. Hevle, Mr. Calabria are present.

09:04:36  14       Mr. Gibson and Mr. Reed are present.

09:04:40  15       The first thing I want to call to your attention

09:04:43  16  is the clerk informed me this morning that one of the jurors

09:04:48  17  has already called asking for that hoped-for letter from the

09:04:51  18  Court in some form to verify jury service.  I think we're

09:04:56  19  going to have some very patriotic and conscientious

09:05:00  20  employers who are going to let these jurors sit, but the

09:05:02  21  sooner we can get a letter to them in some appropriate form,

09:05:06  22  the better those jurors are going to be in terms of having

09:05:09  23  answered questions.

09:05:10  24       So we won't leave today until we have a drafted

09:05:15  25  letter.  And I'm going to let each of you enter into that

CR 02-938 DOC - 2/24/2006 - Status Conference

7

| 09:05:19 | 1 | draft first, because I'm a little concerned about taking |
| 09:05:22 | 2 | that upon the Court and just writing a letter and giving it |
| 09:05:24 | 3 | to you.  If I say something inappropriate about the case in |
| 09:05:27 | 4 | that regard, then I haven't had your cooperation.  So I'm |
| 09:05:31 | 5 | going to ask the government to meet informally with |
| 09:05:34 | 6 | Mr. Steward, Mr. White, and the rest of the attorneys, draft |
| 09:05:37 | 7 | out a letter that you think would be appropriate.  I don't |
| 09:05:39 | 8 | know how much to say, how little to say, and I want to leave |
| 09:05:43 | 9 | that to a stipulation between the two of you. |
| 09:05:46 | 10 | Now, eventually, we'll reach an agreement.  It can |
| 09:05:49 | 11 | be early; it can be late.  But we'll have that letter today |
| 09:05:52 | 12 | 'cause I want that letter to go out. |
| 09:05:55 | 13 | The second thing is, I want to take up Mr. Hevle's |
| 09:05:58 | 14 | motion for just a moment.  And counsel representing |
| 09:06:00 | 15 | Mr. Hevle, I want to turn to Exhibit A.  I understand that |
| 09:06:03 | 16 | you would like to impeach or attempt to impeach Halualani |
| 09:06:07 | 17 | concerning the one-page reports.  And I understand the |
| 09:06:09 | 18 | import of an alleged ATF Form 3120.2, apparently being the |
| 09:06:32 | 19 | equivalent to an FBI 302, being sent by Agent Halualani to |
| 09:06:40 | 20 | another agent. |
| 09:06:42 | 21 | I'm concerned about the content, though.  The |
| 09:06:44 | 22 | alleged content apparently includes what Halualani later |
| 09:06:52 | 23 | believed to be a hoax.  But initially, the information was |
| 09:06:55 | 24 | that this involved Aryan Brotherhood activities in the |
| 09:07:00 | 25 | Los Angeles area and, apparently, allegations of blowing up |

CR 02-938 DOC - 2/24/2006 - Status Conference

8

| | | |
|---|---|---|
| 09:07:09 | 1 | or a bomb plot to blow up -- what? -- a federal courthouse? |
| 09:07:13 | 2 | Is that correct? |
| 09:07:15 | 3 | MR. ROSEN:  I'm sorry.  Mr. Fleming was asking me |
| 09:07:17 | 4 | a question.  I didn't hear the last question. |
| 09:07:20 | 5 | THE COURT:  Mr. Fleming, was it a federal |
| 09:07:22 | 6 | courthouse? |
| 09:07:24 | 7 | MR. ROSEN:  What was a federal courthouse? |
| 09:07:25 | 8 | THE COURT:  This is your motion. |
| 09:07:27 | 9 | MR. ROSEN:  I have no clue what it was. |
| 09:07:30 | 10 | THE COURT:  On page 2 of the 302, beginning -- |
| 09:09:07 | 11 | Mr. Rosen, do you see the line I'm pointing to? |
| 09:09:11 | 12 | MR. ROSEN:  Yes, Your Honor. |
| 09:09:11 | 13 | THE COURT:  The yellow underlining's mine, so |
| 09:09:14 | 14 | disregard it. |
| 09:09:15 | 15 | "S.A. Halualani advised that his |
| 09:09:18 | 16 | investigation is aware of possible |
| 09:09:21 | 17 | anticipated acts of violence by the AB which |
| 09:09:24 | 18 | do not include subject claimed bomb plot." |
| 09:09:30 | 19 | Apparently, the initial situation was that there |
| 09:09:32 | 20 | was a bomb plot planned by the AB in the Los Angeles area. |
| 09:09:37 | 21 | And for some reason I thought that that included, amongst |
| 09:09:41 | 22 | other things, a federal courthouse.  I may be wrong about |
| 09:09:44 | 23 | that. |
| 09:09:45 | 24 | MR. ROSEN:  I understand that.  As I recall, in |
| 09:09:48 | 25 | another report there was a reference that allegedly Myers |

| | | |
|---|---|---|
| 09:09:53 | 1 | said that Sahakian said that it will make that bombing look |
| 09:09:57 | 2 | like -- |
| 09:09:59 | 3 | THE COURT:  Thank you.  That was 10,000 pages ago. |
| 09:10:04 | 4 | MR. ROSEN:  That's correct. |
| 09:10:06 | 5 | THE COURT:  Okay.  Now, I think it would be |
| 09:10:10 | 6 | appropriate that you're able to develop -- if, in fact, it's |
| 09:10:13 | 7 | true -- that Halualani has reduced reports to one page, from |
| 09:10:17 | 8 | your perspective, and that you're denied the full version of |
| 09:10:22 | 9 | the ATF reports, which would contradict, from your |
| 09:10:25 | 10 | perspective, Halualani's testimony. |
| 09:10:28 | 11 | MR. ROSEN:  That is one of the points. |
| 09:10:30 | 12 | THE COURT:  It's not the content of the report |
| 09:10:31 | 13 | that is so critical.  It's to show the Court that, from your |
| 09:10:35 | 14 | standpoint, there's fabrication taking place. |
| 09:10:57 | 15 | MR. ROSEN:  The Court has expressed one of the |
| 09:10:59 | 16 | points, but there is a second issue that does relate to |
| 09:11:03 | 17 | content.  But the content I'm concerned with is what's |
| 09:11:06 | 18 | related in the next paragraph of that report, where he says |
| 09:11:11 | 19 | he already interviewed that same CW. |
| 09:11:16 | 20 | THE COURT:  This will not be turned over to you at |
| 09:11:18 | 21 | the present time.  I'll examine it *in camera*.  If there's |
| 09:11:25 | 22 | other intelligence information concerning other bomb plots |
| 09:11:27 | 23 | or other activities, that will not be forthcoming to you |
| 09:11:31 | 24 | unless I find relevance. |
| 09:11:33 | 25 | MR. ROSEN:  That's -- |

09:11:33  1          THE COURT:  So you may meet the first prong.  You

09:11:36  2    may have in front of the Court -- if, in fact, you're

09:11:40  3    correct -- unredacted ATF reports, which would help you

09:11:45  4    prove your point.  And I'll also probably disclose selected

09:11:47  5    portions if they're relevant to this case.  But any outside

09:11:53  6    information concerning any other ATF or FBI intelligence

09:11:56  7    concerning bomb plots that are not related to this case,

09:12:00  8    I'll redact.  So I'll look at it first.

09:12:03  9          MR. ROSEN:  I fully understand that.  Thank you,

09:12:05  10   Your Honor.

09:12:05  11         THE COURT:  Okay.  So therefore, I'll send this

09:12:07  12   out in written form so we have a record, but you can expect

09:12:10  13   that motion will be granted in the form I've just indicated.

09:12:23  14         MR. ROSEN:  Thank you.

09:12:23  15         THE COURT:  Now, the second issue.  I think we can

09:12:23  16   accomplish this very quickly today and not keep all of you

09:12:23  17   unnecessarily.

09:12:23  18         When would you like to submit preliminary jury

09:12:25  19   instructions to me, so that I know that I have an agreement

09:12:29  20   between the government and the defense?  What's convenient

09:12:32  21   before March 14th?  I can accept them any day.

09:12:36  22         And, Mr. Wolfe, I think that's really up to you.

09:12:38  23   You've got the tough schedule right now, so make it

09:12:41  24   convenient for you.

09:12:43  25         MR. WOLFE:  Your Honor, if you're asking that from

CR 02-938 DOC - 2/24/2006 - Status Conference

11

| | | |
|---|---|---|
| 09:12:46 | 1 | the government, I'd definitely rather have it on into trial |
| 09:12:51 | 2 | a month or more. |
| 09:12:53 | 3 | THE COURT:  Not the complete set of instructions. |
| 09:12:55 | 4 | You don't have to do that.  Just preliminary instructions |
| 09:12:58 | 5 | that you want me to read to the jury. |
| 09:13:00 | 6 | MR. WOLFE:  Oh. |
| 09:13:01 | 7 | THE COURT:  Just the opening instructions where |
| 09:13:03 | 8 | both parties are agreeing. |
| 09:13:06 | 9 | MR. WOLFE:  And does Your Honor not, then, have -- |
| 09:13:09 | 10 | the Court doesn't want to use its own instructions? |
| 09:13:12 | 11 | THE COURT:  I don't want to. |
| 09:13:13 | 12 | MR. WOLFE:  You want the parties to agree. |
| 09:13:14 | 13 | THE COURT:  Anytime I can get the parties to agree |
| 09:13:18 | 14 | to something, I don't have to worry about my record in terms |
| 09:13:21 | 15 | of the circuit.  And I want you to be a full participant in |
| 09:13:24 | 16 | this, and the defense also, all along the way.  That's why I |
| 09:13:30 | 17 | want you to draft this initial letter to the jurors, for |
| 09:13:30 | 18 | instance -- or to their employers. |
| 09:13:31 | 19 | I'm going to be here Saturday and Sunday before -- |
| 09:13:34 | 20 | if you want to submit it to me Saturday, before your opening |
| 09:13:38 | 21 | statement, that's fine. |
| 09:13:39 | 22 | MR. WOLFE:  No, that's fine, Your Honor.  I guess |
| 09:13:41 | 23 | I'd suggest -- does Your Honor have in mind that the parties |
| 09:13:45 | 24 | will reach an agreement, and there's a date for an agreed |
| 09:13:49 | 25 | set to be given to the Court? |

CR 02-938 DOC - 2/24/2006 - Status Conference

12

| 09:13:51 | 1 | THE COURT:  Yes.  You can talk to each other |
| 09:13:52 | 2 | informally by phone.  I don't have to hold you here.  I |
| 09:13:56 | 3 | don't care how that's accomplished.  I just want to know |
| 09:13:59 | 4 | that there's an agreed set of instructions.  They're usually |
| 09:14:05 | 5 | de minimis.  They're usually six to eight pages that are |
| 09:14:05 | 6 | read. |
| 09:14:07 | 7 | MR. WOLFE:  Your Honor, defense counsel was |
| 09:14:09 | 8 | suggesting the day before opening, but does that allow the |
| 09:14:12 | 9 | Court enough time? |
| 09:14:13 | 10 | THE COURT:  Don't worry about that.  I'm here |
| 09:14:16 | 11 | 18 hours a day, so I'm not concerned.  Day before opening is |
| 09:14:21 | 12 | fine, as long we have an agreement -- as long as we're not |
| 09:14:22 | 13 | having to get back into session.  I mean, that opening |
| 09:14:27 | 14 | statement takes place at 9:00 on March 14th.  And I don't |
| 09:14:28 | 15 | want you here at 6:30 in the morning before drafting |
| 09:14:28 | 16 | statements. |
| 09:14:29 | 17 | So I'm making it easy for both of you. |
| 09:14:32 | 18 | MR. WOLFE:  Well, then, Your Honor, I guess the |
| 09:14:34 | 19 | parties -- |
| 09:14:35 | 20 | THE COURT:  You can accomplish it today if you |
| 09:14:36 | 21 | wanted to.  You're going to be drafting a letter.  Why don't |
| 09:14:39 | 22 | you take a stab at the preliminary instructions.  I'll get |
| 09:14:42 | 23 | the Ninth Circuit instructions out for you.  They're rather |
| 09:14:46 | 24 | simple. |
| 09:14:46 | 25 | MR. STEWARD:  Your Honor, I think we can do it -- |

| | | |
|---|---|---|
| 09:14:48 | 1 | I'd rather not do it today. |
| 09:14:52 | 2 | THE COURT:  March 13th, how's that? |
| 09:14:55 | 3 | MR. STEWARD:  Perfect. |
| 09:14:55 | 4 | THE COURT:  March 13th, by 2:00 o'clock in the |
| 09:14:57 | 5 | afternoon.  If there's any disagreements, I'll set the |
| 09:14:59 | 6 | matter for a hearing at 2:00 o'clock on March 13th.  I think |
| 09:15:03 | 7 | that would be silly.  I don't want to drag you in here. |
| 09:15:06 | 8 | They're just standard instructions, for goodness sakes. |
| 09:15:12 | 9 | MR. WOLFE:  Very well, Your Honor. |
| 09:15:25 | 10 | THE COURT:  That should give you plenty of time. |
| 09:15:49 | 11 | Mr. Beckwith, could I enlist your help once again? |
| 09:15:54 | 12 | Come up for just a second and have a seat next to Mr. Wolfe. |
| 09:15:59 | 13 | First of all, I want to compliment you.  You've |
| 09:16:01 | 14 | been absolutely stellar in helping get through the discovery |
| 09:16:04 | 15 | in this matter.  And if I could constantly praise you, I |
| 09:16:08 | 16 | want to continue to praise you.  Thank you very much, sir, |
| 09:16:10 | 17 | for your help. |
| 09:16:12 | 18 | MR. BECKWITH:  Thank you, Your Honor. |
| 09:16:13 | 19 | THE COURT:  And I praise Mr. Wolfe for his efforts |
| 09:16:16 | 20 | also in this regard. |
| 09:16:18 | 21 | Oechsle testifies that there's a tape actually |
| 09:16:22 | 22 | made of the June 2nd clash between the black and white |
| 09:16:26 | 23 | inmates at Marion.  Now, Oechsle's not under oath.  I don't |
| 09:16:35 | 24 | know what weight to give that.  He later says that this is |
| 09:16:38 | 25 | used as a training film of some type at Marion.  And he |

CR 02-938 DOC - 2/24/2006 - Status Conference

14

| | | |
|---|---|---|
| 09:16:43 | 1 | later says in this transcript that he saw that at a control |
| 09:16:49 | 2 | center of some type when he was some kind of orderly. |
| 09:16:55 | 3 | I'm not going to bring Oechsle back.  He'll |
| 09:16:59 | 4 | obviously be called during the defense case, so I'm going to |
| 09:17:03 | 5 | hear, as I've indicated to counsel, you know, bits and |
| 09:17:06 | 6 | portions along the way of the allegation about outrageous |
| 09:17:11 | 7 | government conduct. |
| 09:17:12 | 8 | Do you know of any tape, to your knowledge, that |
| 09:17:16 | 9 | is in existence concerning the fight that took place in |
| 09:17:21 | 10 | early January at Marion? |
| 09:17:24 | 11 | MR. BECKWITH:  Your Honor, I'm not directly aware |
| 09:17:26 | 12 | of a tape that's in existence.  However, based on looking at |
| 09:17:30 | 13 | this video and based on the security procedures at our |
| 09:17:33 | 14 | institutions, it would be likely at one time a video did |
| 09:17:37 | 15 | exist.  Whether it can be found or not, that's the question. |
| 09:17:40 | 16 | And we have Marion staff looking very thoroughly through |
| 09:17:45 | 17 | everything that they can possibly find, looking back to the |
| 09:17:45 | 18 | event, to see if they can locate this videotape.  As of yet, |
| 09:17:50 | 19 | they have not been able to locate anything in regard to this |
| 09:17:55 | 20 | videotape. |
| 09:17:56 | 21 | THE COURT:  Who at Marion is in charge of this |
| 09:17:58 | 22 | search? |
| 09:17:59 | 23 | MR. BECKWITH:  Right now, we have, from the |
| 09:18:01 | 24 | warden, directed down through our legal team at Marion, down |
| 09:18:04 | 25 | to our investigative services staff, are looking for it. |

*DEBBIE GALE, U.S. COURT REPORTER*

CR 02-938 DOC - 2/24/2006 - Status Conference

15

| | | |
|---|---|---|
| 09:18:07 | 1 | THE COURT:  Excellent.  What's the warden's name? |
| 09:18:10 | 2 | MR. BECKWITH:  I'd have to get you the updated |
| 09:18:13 | 3 | name. |
| 09:18:14 | 4 | THE COURT:  Let's call him "the warden at Marion." |
| 09:18:17 | 5 | I'm sure he's motivated.  Mr. Pennington from the Bureau of |
| 09:18:20 | 6 | Prisons has been instrumental.  I'm either going to want to |
| 09:18:24 | 7 | see the warden and have his attestation, or have his |
| 09:18:28 | 8 | attestation.  And I'm going to give him now a limited time |
| 09:18:28 | 9 | to complete that, but I want to work with you. |
| 09:18:29 | 10 | What's an acceptable time for the warden, who I |
| 09:18:40 | 11 | know is diligently pursuing this, to complete his search for |
| 09:18:40 | 12 | this tape at Marion? |
| 09:18:40 | 13 | MR. BECKWITH:  Well, I know the search has been |
| 09:18:44 | 14 | ongoing.  And as of today, they have not found it yet.  But |
| 09:18:44 | 15 | as far as an attestation that they have searched and have |
| 09:18:46 | 16 | not located it, we can get that to you as soon as the Court |
| 09:18:50 | 17 | would like. |
| 09:18:50 | 18 | THE COURT:  No.  You give me a date.  In other |
| 09:18:53 | 19 | words, I'm trying to work with you and the defense, but give |
| 09:18:55 | 20 | me a date that's convenient.  But then I want to see the |
| 09:18:58 | 21 | warden here -- fly him out here -- or I want him under oath |
| 09:19:01 | 22 | on an attestation that that tape does not exist.  That way, |
| 09:19:02 | 23 | if it turns up, I know where to turn.  I'm not turning to |
| 09:19:05 | 24 | you.  I'm turning to the warden. |
| 09:19:09 | 25 | MR. BECKWITH:  I think one week would be |

*DEBBIE GALE, U.S. COURT REPORTER*

CR 02-938 DOC - 2/24/2006 - Status Conference

16

| 09:19:10 | 1 | sufficient time, Your Honor. |
| 09:19:11 | 2 | THE COURT:  Do you want to give yourself the next |
| 09:19:13 | 3 | week and then into the -- |
| 09:19:15 | 4 | MR. BECKWITH:  That would be great.  Thank you. |
| 09:19:17 | 5 | THE COURT:  Okay.  Let's see if this date's |
| 09:19:18 | 6 | convenience, that the attestation is to be to the Court |
| 09:19:22 | 7 | by -- how about March 7th?  Would Tuesday be acceptable? |
| 09:19:29 | 8 | MR. BECKWITH:  Yes, Your Honor. |
| 09:19:30 | 9 | THE COURT:  That gives you next week and a working |
| 09:19:32 | 10 | day on Monday.  I can accept a faxed certified copy to begin |
| 09:19:37 | 11 | with, as long as the original follows.  I don't require his |
| 09:19:38 | 12 | presence as long as I have him verifying and attesting under |
| 09:19:38 | 13 | penalty of perjury that no tape exists. |
| 09:19:44 | 14 | MR. BECKWITH:  Yes, Your Honor. |
| 09:19:44 | 15 | THE COURT:  That clears my record, also. |
| 09:19:47 | 16 | Now, Mr. Steward, Mr. Fleming, any other |
| 09:19:49 | 17 | suggestions -- or, Mr. Wolfe?  Is that satisfactory? |
| 09:19:53 | 18 | MR. FLEMING:  It is, Your Honor.  We provided the |
| 09:19:55 | 19 | government this morning with some new information about the |
| 09:19:57 | 20 | existence of the tape from January the 2nd of 1997. |
| 09:20:02 | 21 | THE COURT:  Is this what I just received? |
| 09:20:03 | 22 | MR. FLEMING:  It may be.  Is it entitled Statement |
| 09:20:06 | 23 | of Raymond Oechsle regarding videotape of Marion assault"? |
| 09:20:11 | 24 | THE COURT:  No. |
| 09:20:12 | 25 | MR. STEWARD:  Should be two things there, |

CR 02-938 DOC - 2/24/2006 - Status Conference

17

| | | |
|---|---|---|
| 09:20:14 | 1 | Your Honor. |
| 09:20:14 | 2 | THE COURT:  Here it is on the second page.  When I |
| 09:20:17 | 3 | took the bench, this was handed to me.  It says, |
| 09:20:23 | 4 | "Well, during the course of my orderly |
| 09:20:26 | 5 | duties, the tapes that never existed -- that |
| 09:20:28 | 6 | the government claims they had no knowledge |
| 09:20:30 | 7 | of and never turned over in Ricky Williams' |
| 09:20:33 | 8 | trial -- I seen the fuckin' tape myself |
| 09:20:36 | 9 | through the bubble in my duties as an |
| 09:20:36 | 10 | orderly, as an inmate being allowed out of my |
| 09:20:39 | 11 | cell, the four or five of us, in the unit, to |
| 09:20:42 | 12 | clean up before the prisoners come out." |
| 09:20:45 | 13 | Now, I've already read that in the Oechsle |
| 09:20:49 | 14 | transcript. |
| 09:20:50 | 15 | MR. FLEMING:  Yes. |
| 09:20:50 | 16 | THE COURT:  What's new? |
| 09:20:51 | 17 | MR. FLEMING:  Well, if you turn the page, |
| 09:20:53 | 18 | Your Honor, what we've attached are still shots from a |
| 09:20:55 | 19 | variety of cameras capturing the assault that took place on |
| 09:21:00 | 20 | January the 2nd of 1997. |
| 09:21:01 | 21 | THE COURT:  Oh, I see. |
| 09:21:02 | 22 | MR. FLEMING:  So this is corroboration of the |
| 09:21:05 | 23 | statement that Your Honor just read that a tape did exist. |
| 09:21:09 | 24 | That's obvious from the camera shots. |
| 09:21:12 | 25 | THE COURT:  First of all, Mr. Beckwith, I'm going |

CR 02-938 DOC - 2/24/2006 - Status Conference

18

| | | |
|---|---|---|
| 09:21:14 | 1 | to tell that same story again and again.  I absolutely have |
| 09:21:18 | 2 | immense faith in you, the Bureau of Prisons, and the warden. |
| 09:21:22 | 3 | But in my experience during the Mexican Mafia |
| 09:21:24 | 4 | trials, remember that they sent me a sergeant, and the |
| 09:21:27 | 5 | sergeant told me that the gladiator fights and movement |
| 09:21:33 | 6 | records didn't exist.  And on ordering the warden down, who |
| 09:21:39 | 7 | eventually didn't appear, and then ordering the Department |
| 09:21:42 | 8 | of Corrections -- the head of the Department of Corrections |
| 09:21:42 | 9 | down, suddenly the lawyers were able to find that.  And |
| 09:21:49 | 10 | that's my concern.  I'm not going to put a records sergeant |
| 09:21:55 | 11 | in federal prison, but I'm not going to stand still for this |
| 09:22:00 | 12 | inadvertently turning up sometime, if it exists. |
| 09:22:06 | 13 | I also would have a strong suspicion something |
| 09:22:07 | 14 | like this, if it was initially taken, would be kept, if I |
| 09:22:10 | 15 | was a professional at Marion, for one reason:  Training |
| 09:22:14 | 16 | purposes.  I would want to know about a fight between the |
| 09:22:18 | 17 | Aryan Brotherhood and DC Blacks, et cetera.  And these are |
| 09:22:20 | 18 | kept at Pelican Bay all the time.  They used to be kept at |
| 09:22:25 | 19 | Corcoran until the allegations involving the gladiator |
| 09:22:26 | 20 | fights, and then somehow they disappeared. |
| 09:22:30 | 21 | MR. FLEMING:  Your Honor, can we suggest another |
| 09:22:32 | 22 | spot where they might look? |
| 09:22:34 | 23 | THE COURT:  Work with Mr. Wolfe.  He's been |
| 09:22:35 | 24 | exemplary. |
| 09:22:37 | 25 | MR. FLEMING:  Absolutely.  But if you recall, |

CR 02-938 DOC - 2/24/2006 - Status Conference

19

| | | |
|---|---|---|
| 09:22:38 | 1 | Ray Oechsle claims to have seen this videotape in J-Unit at |
| 09:22:45 | 2 | ADX.  So one place where they may want to look as well, in |
| 09:22:47 | 3 | addition to Marion, is with the ADX. |
| 09:22:50 | 4 | THE COURT:  Okay.  That's the second place. |
| 09:22:52 | 5 | My guess, though, is that there's more than one |
| 09:22:54 | 6 | copy.  These things are normally used as training tapes, |
| 09:22:58 | 7 | when you have a conflict like this.  In Pelican Bay in the |
| 09:23:03 | 8 | past, and at least the state institutions that I was |
| 09:23:04 | 9 | familiar with in my 17 years of state court, these tapes |
| 09:23:08 | 10 | hang around.  They're a tremendous value to staff.  So if |
| 09:23:11 | 11 | they're there, it would be beneficial for both sides, I |
| 09:23:14 | 12 | think. |
| 09:23:15 | 13 | MR. BECKWITH:  Your Honor, and we have expanded |
| 09:23:17 | 14 | our search beyond Marion.  We concentrated there |
| 09:23:21 | 15 | specifically because that's where it existed.  And we have |
| 09:23:24 | 16 | expanded our search to other -- and we have inquiries out to |
| 09:23:26 | 17 | our other institutions if anybody has received or seen a |
| 09:23:29 | 18 | copy of this. |
| 09:23:30 | 19 | THE COURT:  And my abruptness today is only to set |
| 09:23:33 | 20 | deadlines, just to give you power back, Mr. Beckwith, that |
| 09:23:36 | 21 | the Court's setting the following as a date.  And that means |
| 09:23:36 | 22 | that when you're going to your contemporaries -- you know, |
| 09:23:39 | 23 | we all move in terms of priorities in our own institution. |
| 09:23:39 | 24 | They may have horrendous problems at the same time, and this |
| 09:23:45 | 25 | just isn't at the top of the ladder.  So this will put it at |

CR 02-938 DOC - 2/24/2006 - Status Conference

20

| | | |
|---|---|---|
| 09:23:48 | 1 | the top of the ladder.  Okay. |
| 09:23:51 | 2 | MR. WOLFE:  Your Honor, may I ask whether the |
| 09:23:53 | 3 | Court would consider requiring the defense to disclose to |
| 09:23:56 | 4 | the Court where these still photographs came from, so that |
| 09:24:00 | 5 | we have an idea where to find them? |
| 09:24:02 | 6 | THE COURT:  Yes.  Where did the still photographs |
| 09:24:02 | 7 | come from? |
| 09:24:03 | 8 | MR. STEWARD:  I'm told by my client that they're |
| 09:24:05 | 9 | from our discovery. |
| 09:24:09 | 10 | DEFENDANT MILLS:  They're on my laptop. |
| 09:24:11 | 11 | THE COURT:  Now, just a moment.  Mr. Mills, shhhh. |
| 09:24:12 | 12 | I haven't seen you sworn into the bar yet.  Okay. |
| 09:24:14 | 13 | MR. STEWARD:  I can tell the Court where I |
| 09:24:16 | 14 | received them.  I received them from Joe Green, who's a |
| 09:24:31 | 15 | defense lawyer from *U.S. v. Sahakian* back in St. Lewis. |
| 09:24:31 | 16 | THE COURT:  Did those come into the Sahakian |
| 09:24:31 | 17 | trial? |
| 09:24:31 | 18 | MR. STEWARD:  I don't know. |
| 09:24:32 | 19 | THE COURT:  And Sahakian was part of the triad |
| 09:24:35 | 20 | tried in Illinois after the nine-month trial that hung up, |
| 09:24:36 | 21 | and then the judge dismissed the case. |
| 09:24:38 | 22 | MR. STEWARD:  Correct, Your Honor. |
| 09:24:39 | 23 | MR. REED:  They're in that part of the discovery |
| 09:24:41 | 24 | Your Honor, that has the Sahakian photos.  One of the |
| 09:24:45 | 25 | computer experts around here found them.  And they're on |

09:24:50   1    Disk 2.  It wasn't me.

09:24:53   2              THE COURT:  Help Mr. Wolfe so he doesn't search

09:24:56   3    through this.  Give him more specific information.  They're

09:24:59   4    in the Sahakian -- what?  I mean, where would he go, so he's

09:25:04   5    not wasting his time?

09:25:07   6              MR. REED:  CopyPro, Disk 2.  All of our discovery

09:25:11   7    comes on a disk.  CopyPro, Disk Number 2.

09:25:14   8              THE COURT:  Do you have that disk with you?

09:25:16   9              MR. REED:  I have it downloaded in the computer,

09:25:18   10   but you have to have the actual disk itself.

09:25:23   11             THE COURT:  Now, just a moment.  This is way too

09:25:24   12   complicated for me.

09:25:26   13             I want to play this now on the screen or within a

09:25:29   14   couple minutes.  How do I do that?  And I want to know the

09:25:33   15   location, so we can put this up and we can see this -- the

09:25:38   16   stills anyway.  And be careful what you ask for, because,

09:25:41   17   you know, you don't know what these show, and there's a good

09:25:45   18   chance of them coming in evidence.

09:25:49   19             MR. REED:  Unfortunately, the expert that was able

09:25:52   20   to find them is not someone who can do that in open court,

09:25:57   21   'cause he doesn't have an "esquire."

09:26:03   22             THE COURT:  How long would it take this person to

09:26:04   23   get this set up?

09:26:05   24             MR. REED:  I don't know.  He's here.  I just don't

09:26:07   25   think his lawyers would let him do that.  He's smarter than

09:26:11  1   all of us.

09:26:14  2           MR. FLEMING:  Your Honor, our understanding is, of

09:26:17  3   the photos that we've just produced to Your Honor and to the

09:26:20  4   government -- of those pages, two of the pages are contained

09:26:24  5   in our discovery.  We will find the page of that discovery

09:26:27  6   for Your Honor, but we can't do that this morning.  We just

09:26:31  7   don't have access to that discovery.

09:26:34  8           THE COURT:  Nonsense.  We'll do that today.  Okay.

09:26:36  9   So send an investigator.  I'm paying for it.  Get it done,

09:26:38  10  and we're here until it gets done today.

09:26:40  11          MR. FLEMING:  That's fine.

09:26:40  12          THE COURT:  Start somebody down the road now.  And

09:26:42  13  I want it see these today.  Now, it can be 2:00 o'clock this

09:26:48  14  afternoon or it can be 10:00 o'clock tonight.  Figure it

09:26:54  15  out.  And then, Mr. Wolfe, we'll know that and you're not

09:26:57  16  searching through boxes.

09:27:00  17          MR. WOLFE:  Thank you, Your Honor.

09:27:00  18          THE COURT:  We'll see what these photos are and

09:27:03  19  we'll put 'em up today.

09:27:51  20          MR. FLEMING:  Your Honor, may Mr. Steward make a

09:27:53  21  phone call to Mr. Green?

09:27:55  22          THE COURT:  That's fine.  Then we'll come back to

09:27:58  23  the rest of the motions.

09:27:59  24              (Recess held at 9:27 a.m.)

09:28:09  25              (Proceedings resumed at 9:34 a.m.)

| | | |
|---|---|---|
| 09:34:11 | 1 | THE COURT:  We're on the record.  How are we going |
| 09:34:13 | 2 | to do this? |
| 09:34:14 | 3 | MR. FLEMING:  Your Honor, I just spoke with Mike |
| 09:34:16 | 4 | White.  Mr. White is heading to his car right now in the |
| 09:34:20 | 5 | parking lot.  He has his computer and the disk that we need. |
| 09:34:24 | 6 | We think we'll be able to put that right up when he gets |
| 09:34:28 | 7 | back.  It should take us a few minutes. |
| 09:34:33 | 8 | THE COURT:  All right.  The third thing is the |
| 09:34:36 | 9 | 18-page letter allegedly written by Mr. Oechsle.  I say |
| 09:34:43 | 10 | "allegedly" because I don't know if this exists or not, or |
| 09:34:47 | 11 | if it doesn't exist, if it was ever written. |
| 09:34:51 | 12 | Do you have any indication, Mr. Wolfe, or any |
| 09:34:53 | 13 | knowledge of an 18-page letter that Oechsle wrote? |
| 09:34:58 | 14 | MR. WOLFE:  Not yet, Your Honor. |
| 09:34:59 | 15 | THE COURT:  Okay. |
| 09:35:00 | 16 | MR. WOLFE:  There's no sign that it ever existed. |
| 09:35:04 | 17 | THE COURT:  Okay.  Eventually, I'm going to make |
| 09:35:07 | 18 | an order that that be disclosed.  I just need your |
| 09:35:11 | 19 | representation if it doesn't exist.  I can wait. |
| 09:35:14 | 20 | MR. WOLFE:  Your Honor, I'd be happy to have the |
| 09:35:17 | 21 | Court issue the order that it be disclosed.  If it exists, I |
| 09:35:22 | 22 | would be happy to disclose it.  If it existed, I would think |
| 09:35:26 | 23 | it was discoverable, but there's no sign of it. |
| 09:35:29 | 24 | THE COURT:  The correspondence between Oechsle, |
| 09:35:31 | 25 | Ford, Jessner, Cutchin, Halualani, I'm going to issue that, |

| | | |
|---|---|---|
| 09:35:37 | 1 | Mr. Fleming, in an order as well.  That will protect |
| 09:35:41 | 2 | Mr. Wolfe. |
| 09:35:42 | 3 | MR. WOLFE:  Very well, Your Honor. |
| 09:35:43 | 4 | THE COURT:  The Rule 35 letter, I'll also grant |
| 09:35:46 | 5 | that request. |
| 09:35:47 | 6 | The phone calls between Oechsle, Ford, Jessner, |
| 09:35:50 | 7 | Cutchin, Halualani, I'm going to delay that.  I think that |
| 09:35:54 | 8 | they're redundant at the present time.  I'll simply see if |
| 09:35:57 | 9 | these letters do exist, and the correspondence in the |
| 09:36:03 | 10 | Rule 35 grant.  But, Mr. Fleming, I can come back to that. |
| 09:36:06 | 11 | MR. FLEMING:  Okay. |
| 09:36:06 | 12 | THE COURT:  So in other words, if they don't exist |
| 09:36:09 | 13 | and I hear testimony from Mr. Oechsle, or if they don't |
| 09:36:14 | 14 | exist and I have concerns, I may order the phone calls.  But |
| 09:36:17 | 15 | I'm not sure what they're going to show.  In other words, I |
| 09:36:20 | 16 | think if it does exist, you really need that 18-page letter. |
| 09:36:25 | 17 | MR. FLEMING:  Oh, yes. |
| 09:36:26 | 18 | THE COURT:  And if that 18-page letter does exist, |
| 09:36:27 | 19 | my guess is that the person who would be most knowledgeable |
| 09:36:31 | 20 | about that is Mr. Jessner. |
| 09:36:34 | 21 | MR. FLEMING:  I think the person that would be |
| 09:36:36 | 22 | most knowledgeable about that would be the prosecutor, |
| 09:36:38 | 23 | Cutchin.  The last we know of the letter, according to |
| 09:36:42 | 24 | Mr. Oechsle, was that it was seized from his cell by CMC |
| 09:36:48 | 25 | Clifford Young. |

CR 02-938 DOC - 2/24/2006 - Status Conference

25

| 09:36:49 | 1 | THE COURT:  Is Mr. Cutchin still an AUSA? |
| 09:36:52 | 2 | MR. FLEMING:  Yes, he is. |
| 09:36:54 | 3 | THE COURT:  Where is he located? |
| 09:36:56 | 4 | MR. FLEMING:  He's in Illinois.  Benton. |
| 09:36:58 | 5 | THE COURT:  Why don't we call him? |
| 09:37:11 | 6 | MR. FLEMING:  I think that's an excellent idea. |
| 09:37:11 | 7 | MR. WOLFE:  Your Honor, I think that -- meaning no |
| 09:37:11 | 8 | disrespect to Mr. Fleming, but I think that's silly on its |
| 09:37:11 | 9 | face.  He just said the person who seized it was Clifford |
| 09:37:11 | 10 | Young, and Clifford Young did whatever he did with it.  The |
| 09:37:14 | 11 | person who's most knowledgeable is plainly either Oechsle or |
| 09:37:18 | 12 | Clifford Young.  Oechsle has said his piece. |
| 09:37:21 | 13 | THE COURT:  Well, just a moment. |
| 09:37:21 | 14 | MR. FLEMING:  May I finish? |
| 09:37:23 | 15 | THE COURT:  No. |
| 09:37:26 | 16 | Cutchin, at least according to Oechsle, is |
| 09:37:29 | 17 | intimately involved with the case.  I'm just looking -- I |
| 09:37:33 | 18 | don't want to narrow this, but I don't want to broaden it to |
| 09:37:37 | 19 | the point of ridiculousness, as you said.  But Cutchin |
| 09:37:41 | 20 | certainly has to be the person involved in a Rule 35 letter, |
| 09:37:45 | 21 | a complaint.  Oechsle, apparently, addressed it to Cutchin, |
| 09:37:50 | 22 | from Oechsle's testimony.  And there was a Yonkman -- or, I |
| 09:37:55 | 23 | forget -- Young? |
| 09:37:58 | 24 | MR. FLEMING:  Clifford Young. |
| 09:37:59 | 25 | MR. WOLFE:  Clifford Young. |

CR 02-938 DOC - 2/24/2006 - Status Conference

26

| | | |
|---|---|---|
| 09:38:00 | 1 | THE COURT:  -- CMC Clifford Young, who allegedly |
| 09:38:02 | 2 | seized it. |
| 09:38:03 | 3 | It seems to me that there are -- instead of me |
| 09:38:06 | 4 | placing the phone call then today, I'll let you place the |
| 09:38:09 | 5 | phone call.  But I'd like to know from Cutchin if he has any |
| 09:38:12 | 6 | knowledge about an 18-page letter, because -- it's not the |
| 09:38:15 | 7 | existence of the letter.  The letter may not exist.  But if |
| 09:38:19 | 8 | there was a letter written, then the defense is entitled to |
| 09:38:22 | 9 | call Cutchin about what the contents of that letter were. |
| 09:38:26 | 10 | So I don't want to stop with just the inquiry of |
| 09:38:29 | 11 | "Does it exist?  No, it doesn't exist," and that's the end |
| 09:38:33 | 12 | of the story.  The issue is, if it doesn't exist or if it |
| 09:38:38 | 13 | can't be found, then the defense is entitled to know who saw |
| 09:38:44 | 14 | that letter.  And I think that the starting point, so that |
| 09:38:47 | 15 | I'm not making the order too broad, is a simple phone call |
| 09:38:50 | 16 | to Cutchin.  And that can be accomplished by you, and a |
| 09:38:56 | 17 | simple inquiry through BOP, to Young. |
| 09:39:00 | 18 | MR. BECKWITH:  Your Honor, if I may.  Mr. Young |
| 09:39:02 | 19 | has been questioned by the Bureau of Prisons.  And his |
| 09:39:05 | 20 | response was, he did not confiscate this letter and that he |
| 09:39:10 | 21 | would be glad to send a statement to the Court stating that |
| 09:39:13 | 22 | he did not ever confiscate or -- or had any dealing with |
| 09:39:18 | 23 | this letter. |
| 09:39:19 | 24 | THE COURT:  And also, then, does he -- then the |
| 09:39:21 | 25 | second part of the inquiry, I would think, would be, does he |

CR 02-938 DOC - 2/24/2006 - Status Conference

27

| | | |
|---|---|---|
| 09:39:24 | 1 | have any knowledge if such a letter ever existed.  In other |
| 09:39:28 | 2 | words, the -- one is, "No, I didn't confiscate it."  Fine. |
| 09:39:33 | 3 | The second inquiry is, does he have any knowledge that the |
| 09:39:36 | 4 | letter ever existed. |
| 09:39:38 | 5 | MR. WOLFE:  Your Honor, I spoke with Mr. -- taking |
| 09:39:40 | 6 | this sort of in reverse order.  I spoke with Mr. Cutchin at |
| 09:39:43 | 7 | about the time this document was filed.  He said he didn't |
| 09:39:47 | 8 | recall ever seeing, hearing about, having, or in any way |
| 09:39:52 | 9 | being brought to an awareness of the existence of the thing. |
| 09:39:56 | 10 | THE COURT:  Well, then it's already been |
| 09:39:56 | 11 | accomplished. |
| 09:39:56 | 12 | MR. WOLFE:  I left another voicemail message for |
| 09:39:59 | 13 | Mr. Cutchin yesterday to see whether he'd had any |
| 09:40:04 | 14 | intervening improvement in recollection. |
| 09:40:06 | 15 | I spoke with Mr. Young yesterday.  Mr. Young said |
| 09:40:09 | 16 | that he didn't remember seizing it.  He didn't remember ever |
| 09:40:13 | 17 | obtaining such a letter.  He looked in all the places where, |
| 09:40:17 | 18 | if such a letter had ever existed, he might have filed it. |
| 09:40:21 | 19 | None were found.  A search was undertaken by other staff |
| 09:40:24 | 20 | members of other places, not related specifically to |
| 09:40:27 | 21 | Mr. Young, where such a letter, if it ever existed, might |
| 09:40:30 | 22 | have been found.  And no trace of it has ever been found by |
| 09:40:34 | 23 | anyone. |
| 09:40:35 | 24 | THE COURT:  Then let's do this.  The work's |
| 09:40:36 | 25 | already been done.  I just need to perfect my record if this |

| | | |
|---|---|---|
| 09:40:40 | 1 | case goes up on appeal, especially if it turns into a death |
| 09:40:45 | 2 | case.  And the defense needs to have the security of knowing |
| 09:40:48 | 3 | that it doesn't exist, you know, from BOP's perspective and |
| 09:40:51 | 4 | from Cutchin's perspective; and therefore, you have the |
| 09:40:55 | 5 | tactical decision to make if you're going to call |
| 09:40:56 | 6 | Mr. Oechsle.  You know, you may not have corroborating |
| 09:41:00 | 7 | evidence concerning that, or contra-testimony that it was |
| 09:41:04 | 8 | ever seen. |
| 09:41:04 | 9 | So how do we accomplish that without unnecessarily |
| 09:41:06 | 10 | using your time?  Because now, I don't have to place the |
| 09:41:08 | 11 | call to Cutchin.  You've already done it.  Thank you. |
| 09:41:12 | 12 | I'm satisfied with an attestation from Mr. Young, |
| 09:41:16 | 13 | and I'm satisfied with a brief attestation from Mr. Cutchin. |
| 09:41:22 | 14 | I'm not going to call them out here, Counsel. |
| 09:41:25 | 15 | MR. FLEMING:  I understand. |
| 09:41:26 | 16 | THE COURT:  You can call them during your case, |
| 09:41:27 | 17 | but I think that's the best way to perfect my record.  And |
| 09:41:30 | 18 | if you have any suggestions, Mr. Fleming -- |
| 09:41:32 | 19 | MR. FLEMING:  Your Honor, what we'd like to ask |
| 09:41:34 | 20 | Your Honor for is an order that these attestations be signed |
| 09:41:37 | 21 | under penalty of perjury. |
| 09:41:38 | 22 | THE COURT:  Oh, they will be. |
| 09:41:39 | 23 | MR. FLEMING:  That they were never in possession |
| 09:41:41 | 24 | of or had any knowledge of this letter -- this 18-page |
| 09:41:44 | 25 | letter that Mr. Oechsle references in his testimony. |

| | | |
|---|---|---|
| 09:41:48 | 1 | THE COURT:  What you're going to do today, then, |
| 09:41:51 | 2 | is draft that request.  Put it into language so I can look |
| 09:41:54 | 3 | at it, along with the jury letter, and I'll look at it |
| 09:41:57 | 4 | sometime this morning when you complete that. |
| 09:41:59 | 5 | MR. FLEMING:  Be happy to. |
| 09:41:59 | 6 | THE COURT:  And we'll do that right in court.  And |
| 09:42:00 | 7 | I'll approve it or disapprove it or make modifications.  But |
| 09:42:05 | 8 | it will all be done today.  I'm trying not to bring you back |
| 09:42:05 | 9 | tomorrow on Saturday unless I have to. |
| 09:42:05 | 10 | MR. FLEMING:  While we're talking about |
| 09:42:07 | 11 | Mr. Cutchin, should we include the Rule 35 letter in that |
| 09:42:11 | 12 | attestation? |
| 09:42:13 | 13 | THE COURT:  Yes. |
| 09:42:13 | 14 | MR. WOLFE:  Your Honor, I think I've seen that |
| 09:42:15 | 15 | letter.  I'd be especially happy to have it issued in terms |
| 09:42:19 | 16 | of the defense's request, because I don't believe that the |
| 09:42:22 | 17 | letter requested actually exists because it's misdated.  But |
| 09:42:29 | 18 | if Your Honor would like to see the Rule 35 letter that was |
| 09:42:38 | 19 | prepared by the Southern District of Illinois for |
| 09:42:38 | 20 | Mr. Oechsle, I believe I have a copy, and I would be happy |
| 09:42:38 | 21 | to file it with the Court or produce it in discovery or |
| 09:42:41 | 22 | whatever Your Honor wishes. |
| 09:42:43 | 23 | THE COURT:  Excellent.  That resolves the Rule 35 |
| 09:42:46 | 24 | letter. |
| 09:42:47 | 25 | MR. FLEMING:  Apparently, it does. |

CR 02-938 DOC - 2/24/2006 - Status Conference

30

| 09:42:48 | 1 | THE COURT:  Mr. Wolfe, thank you, once again. |
| 09:42:50 | 2 | MR. WOLFE:  You're welcome, Your Honor. |
| 09:42:52 | 3 | THE COURT:  You absolutely have my admiration.  I |
| 09:42:55 | 4 | appreciate it. |
| 09:42:56 | 5 | The access to the three-drawer filing cabinet, I'm |
| 09:42:59 | 6 | going to deny that motion.  It's not the filing cabinet -- |
| 09:43:02 | 7 | you can have witnesses come in and testify about the filing |
| 09:43:05 | 8 | cabinet, Mr. Fleming.  You're not precluded from that.  But |
| 09:43:08 | 9 | the documents in that filing cabinet are the substance of |
| 09:43:12 | 10 | your requests, and that's what we're all about concerning |
| 09:43:14 | 11 | these three or four months of intensive discovery that we've |
| 09:43:18 | 12 | been trying to enter into. |
| 09:43:19 | 13 | So you'll have witnesses, apparently, who come in |
| 09:43:21 | 14 | to say that the three-drawer filing cabinet exists, such as |
| 09:43:27 | 15 | Oechsle and maybe others.  But the contents of that filing |
| 09:43:28 | 16 | cabinet, I think it defies my imagination to believe that it |
| 09:43:35 | 17 | still exists. |
| 09:43:36 | 18 | MR. FLEMING:  Anything's possible in this case. |
| 09:43:38 | 19 | THE COURT:  Okay.  But I'm not going to chase |
| 09:43:40 | 20 | down -- do you know, Mr. Beckwith, is there a filing |
| 09:43:44 | 21 | cabinet?  I believe it was at Marion, wasn't it? |
| 09:43:46 | 22 | MR. FLEMING:  It was at the ADX. |
| 09:43:48 | 23 | THE COURT:  ADX.  It was a three-drawer filing |
| 09:43:50 | 24 | cabinet.  And Oechsle alleges that that was opened and, I |
| 09:43:54 | 25 | think, controlled by Roach. |

CR 02-938 DOC - 2/24/2006 - Status Conference

31

| | | |
|---|---|---|
| 09:43:56 | 1 | MR. FLEMING:  Roach had a key and a lock. |
| 09:43:58 | 2 | THE COURT:  Yeah, a key and lock, and somewhat |
| 09:44:00 | 3 | distributed the information to the other cooperators. |
| 09:44:03 | 4 | Do you know anything about a filing cabinet? |
| 09:44:06 | 5 | MR. BECKWITH:  I'm not aware of anything like |
| 09:44:08 | 6 | that, Your Honor. |
| 09:44:08 | 7 | THE COURT:  Has an inquiry been made if it exists? |
| 09:44:12 | 8 | MR. BECKWITH:  I can't say to that.  I've never |
| 09:44:13 | 9 | been made aware of it. |
| 09:44:14 | 10 | THE COURT:  Would you ask? |
| 09:44:15 | 11 | MR. BECKWITH:  Yes, I can. |
| 09:44:16 | 12 | THE COURT:  Find out if a filing cabinet exists. |
| 09:44:16 | 13 | I don't know who you would ask.  What was the time period |
| 09:44:19 | 14 | again? |
| 09:44:20 | 15 | MR. FLEMING:  It was 2000 and 2001. |
| 09:44:22 | 16 | THE COURT:  Yeah, 2000 and 2001.  It would be a |
| 09:44:26 | 17 | three-drawer filing cabinet. |
| 09:44:29 | 18 | The import of it is this:  Oechsle, who has |
| 09:44:32 | 19 | flipped, and then it looks like has flipped again, has |
| 09:44:37 | 20 | alleged that there's a three-drawer filing cabinet at ADX; |
| 09:44:41 | 21 | that when the -- it was in the library, I believe -- from |
| 09:44:47 | 22 | the transcript. |
| 09:44:48 | 23 | Mr. Fleming, the library? |
| 09:44:50 | 24 | MR. FLEMING:  I'm looking right now, Your Honor, |
| 09:44:51 | 25 | just to be absolutely sure. |

| | | |
|---|---|---|
| 09:44:54 | 1 | THE COURT:  It was the library. |
| 09:44:56 | 2 | MR. FLEMING:  They refer to it as a "library," |
| 09:44:58 | 3 | but it -- yes, above the H-Unit. |
| 09:45:00 | 4 | THE COURT:  And in that library, Roach allegedly |
| 09:45:03 | 5 | had a key and was kind of the person who could distribute |
| 09:45:07 | 6 | this information and had access to it, it sounds like, any |
| 09:45:11 | 7 | time he and the other cooperators were out of the cell.  The |
| 09:45:14 | 8 | allegation by the defense is that this would be suggested |
| 09:45:19 | 9 | testimony because the cooperators had access and, therefore, |
| 09:45:23 | 10 | could verify and check their stories against one another and |
| 09:45:27 | 11 | had access to the same documents. |
| 09:45:30 | 12 | So if such a cabinet exists, probably Shoff -- |
| 09:45:35 | 13 | MR. FLEMING:  Smith and Shoff would know of it. |
| 09:45:38 | 14 | THE COURT:  -- Smith and Shoff would be the two |
| 09:45:41 | 15 | primary people.  And the reason I'm trying to narrow this |
| 09:45:45 | 16 | today is I just don't want all of you going off and wasting, |
| 09:45:48 | 17 | you know, a week.  We can find this very quickly just by |
| 09:45:48 | 18 | spending an hour today. |
| 09:45:50 | 19 | MR. FLEMING:  Your Honor, this is the same cabinet |
| 09:45:52 | 20 | that Danny Weeks testified about where the Mata materials |
| 09:45:56 | 21 | were kept. |
| 09:45:59 | 22 | THE COURT:  Right. |
| 09:46:01 | 23 | The grand jury transcripts of Brian Healy, Roach |
| 09:46:04 | 24 | SIS Les Smith -- Roach is a witness.  The transcript is |
| 09:46:08 | 25 | potentially *Jencks* material, maybe also for Healy.  But I |

| | | |
|---|---|---|
| 09:46:11 | 1 | don't understand what would possibly justify Smith. |
| 09:46:14 | 2 | MR. FLEMING:  This is perhaps, in view of the |
| 09:46:17 | 3 | defense, the most important part of the discovery request, |
| 09:46:20 | 4 | that is the Grand Jury transcripts that Mr. Oechsle claims |
| 09:46:24 | 5 | that he was provided while he was at H-Unit prior to his -- |
| 09:46:30 | 6 | during his preparation to testify himself before the Grand |
| 09:46:33 | 7 | Jury.  So this is, in the view of the defense, the single |
| 09:46:37 | 8 | most important request that we're making. |
| 09:46:40 | 9 | THE COURT:  Well, that doesn't matter.  You can |
| 09:46:41 | 10 | make the request. |
| 09:46:42 | 11 | So I'll go back to my question.  Oechsle says that |
| 09:46:46 | 12 | Smith supplied these transcripts? |
| 09:46:50 | 13 | MR. FLEMING:  Yes. |
| 09:46:51 | 14 | THE COURT:  Let me retrace -- so you know I'm |
| 09:46:53 | 15 | either confused or I understand, I'll retrace my |
| 09:46:57 | 16 | understanding of what you want. |
| 09:46:59 | 17 | What you really want to show is that these |
| 09:47:01 | 18 | transcripts came into the hands of the cooperators at |
| 09:47:04 | 19 | H-Unit, and they were never entitled to get Grand Jury |
| 09:47:09 | 20 | transcripts. |
| 09:47:10 | 21 | MR. FLEMING:  Yes. |
| 09:47:10 | 22 | THE COURT:  So the first thing you would argue to |
| 09:47:12 | 23 | me, in terms of outrageous government conduct, would be, |
| 09:47:15 | 24 | "Look, Judge, there's no court order.  They shouldn't have |
| 09:47:18 | 25 | had access to the transcripts."  And second, "Once they had |

CR 02-938 DOC - 2/24/2006 - Status Conference

34

| | | |
|---|---|---|
| 09:47:22 | 1 | access to the transcripts, then they could compare |
| 09:47:24 | 2 | Grand Jury testimony that they were never entitled to." |
| 09:47:27 | 3 | Is that correct? |
| 09:47:28 | 4 | MR. FLEMING:  That is exactly it. |
| 09:47:30 | 5 | THE COURT:  Okay.  I got it.  Now, pardon me for |
| 09:47:32 | 6 | repeating that back to you.  What's so obvious to you, I |
| 09:47:34 | 7 | need to make certain that I understand.  That's why I'm not |
| 09:47:34 | 8 | afraid of looking foolish.  I'll repeat back to you what I |
| 09:47:36 | 9 | think your point is. |
| 09:47:38 | 10 | All right.  I'll consider that, hand that down by |
| 09:47:42 | 11 | written order one way or the other. |
| 09:47:44 | 12 | MR. WOLFE:  Your Honor, may I address that |
| 09:47:46 | 13 | briefly? |
| 09:47:46 | 14 | THE COURT:  Yes. |
| 09:47:47 | 15 | MR. WOLFE:  Perhaps I misunderstand the law.  I |
| 09:47:49 | 16 | would have thought that what Mr. Fleming said is, by its own |
| 09:47:53 | 17 | terms, insufficient.  Because, unless I'm mistaken, if |
| 09:48:06 | 18 | Mr. Smith gave someone else a transcript of Mr. Smith's |
| 09:48:06 | 19 | testimony, that it would be a Grand Jury witness in |
| 09:48:06 | 20 | possession of his own testimony.  And I believe such a |
| 09:48:10 | 21 | witness is free to tell, any, all, or the whole world about |
| 09:48:14 | 22 | what he said in the Grand Jury.  Therefore, the request, by |
| 09:48:17 | 23 | its own terms, is improper. |
| 09:48:22 | 24 | MR. FLEMING:  May I respond? |
| 09:48:23 | 25 | THE COURT:  Please. |

09:48:24  1          MR. FLEMING:  If Leslie Smith shared with Raymond

09:48:28  2   Oechsle his Grand Jury transcripts in which he describes,

09:48:32  3   according to Mr. Oechsle, the meaning of "prince, baby boy,

09:48:37  4   baby girl," regardless of whether he violated the law under

09:48:40  5   (6)(E) by showing another person his own Grand Jury

09:48:40  6   transcripts, he's -- it's clearly discoverable as *Brady* to

09:48:45  7   show the manufacturing of testimony that's been at the heart

09:48:48  8   of the defense motion for the past six months.

09:48:50  9          THE COURT:  Why wouldn't I hear the foundation for

09:48:52  10  this under oath, first?  Why wouldn't I delay this to have

09:48:56  11  Oechsle under oath?

09:48:57  12          What I'm not going to do is bring him in, nor am I

09:49:02  13  going to accept the present transcript until he's under

09:49:05  14  oath.  But once he's under oath and in court -- why can't I

09:49:08  15  delay this until that portion of your case?

09:49:11  16          MR. FLEMING:  Well, the reason is, this is such a

09:49:13  17  central part of our case, that we wanted to be able to fully

09:49:16  18  explain it during opening statement, and to make sure that

09:49:19  19  the corroboration is there.

09:49:21  20          We haven't seen Leslie Smith's transcripts.  If

09:49:25  21  those Grand Jury transcripts discuss "baby boy, prince,"

09:49:28  22  then Ray Oechsle has information that the defense does not

09:49:32  23  even have yet.

09:49:34  24          THE COURT:  Just a moment.

09:49:34  25          When you say "baby boy," I have one document that

| | | |
|---|---|---|
| 09:49:36 | 1 | was of interest; and that is, the document allegedly by |
| 09:49:42 | 2 | Mills stating "baby boy was born" or whatever, "weighs |
| 09:49:49 | 3 | 8-pounds, 7-ounces."  That's supposed to be the code for the |
| 09:49:56 | 4 | war's on, if it's a boy; war's off, if it's a girl; and the |
| 09:50:00 | 5 | "8-7" is supposed to refer to California Penal Code |
| 09:50:06 | 6 | Section 187, which is the California Penal code section for |
| 09:50:07 | 7 | murder. |
| 09:50:08 | 8 | Now, is that what you're referring to when you say |
| 09:50:10 | 9 | "baby boy" and "prince"? |
| 09:50:12 | 10 | MR. FLEMING:  That's exactly it. |
| 09:50:13 | 11 | MR. WOLFE:  Your Honor, Mr. Fleming has at last |
| 09:50:15 | 12 | put his finger on exactly what's happening here.  The reason |
| 09:50:19 | 13 | the defense badly needs this is because they suspect, as I |
| 09:50:22 | 14 | believe, that Raymond Oechsle made this stuff up and is a |
| 09:50:28 | 15 | liar.  And they do not want to front him as a witness unless |
| 09:50:33 | 16 | they know that there's no rebuttal.  So they're asking |
| 09:50:36 | 17 | Your Honor to let them know and let them find out in advance |
| 09:50:39 | 18 | whether this is a crock that they should bury or whether |
| 09:50:43 | 19 | they have something. |
| 09:50:43 | 20 | And they're -- I don't think they're entitled, |
| 09:50:46 | 21 | Judge. |
| 09:50:48 | 22 | THE COURT:  Mr. Fleming? |
| 09:50:51 | 23 | MR. FLEMING:  Guilty as charged. |
| 09:50:52 | 24 | THE COURT:  It's obvious what's happening here. |
| 09:50:54 | 25 | All kidding aside, what's really happening is, you're a |

| | | |
|---|---|---|
| 09:50:58 | 1 | little worried about Oechsle. |
| 09:51:00 | 2 | MR. FLEMING:  Of course. |
| 09:51:00 | 3 | THE COURT:  You don't have to admit that.  That's |
| 09:51:02 | 4 | an incriminating statement.  So let's wait now.  Let me say |
| 09:51:06 | 5 | it.  Okay? |
| 09:51:06 | 6 | You're a little worried about Oechsle, and you |
| 09:51:09 | 7 | don't quite know whether to put him up there or not; and, of |
| 09:51:12 | 8 | course, if he says something and you can't corroborate it, |
| 09:51:14 | 9 | it looks... |
| 09:51:16 | 10 | MR. FLEMING:  Bad. |
| 09:51:18 | 11 | THE COURT:  Yeah, bad.  But I'm not flying |
| 09:51:19 | 12 | Mr. Oechsle out here.  I'm not helping each one of you with |
| 09:51:24 | 13 | your tactics.  As I said before, what's good for the goose |
| 09:51:28 | 14 | is good for the gander, and here we go.  I'll probably delay |
| 09:51:31 | 15 | this until Mr. Oechsle's under oath, and -- but I'll |
| 09:51:34 | 16 | consider that.  We'll go back and hand it down in a written |
| 09:51:38 | 17 | form.  Let's move on.  That's not the gravamen -- this is |
| 09:51:39 | 18 | not the most important part of your case.  But anyway -- all |
| 09:51:43 | 19 | right. |
| 09:51:43 | 20 | Roach and Jessner's correspondence concerning |
| 09:51:47 | 21 | Roach's unhappiness.  This could be *Giglio* or *Brady*, |
| 09:51:52 | 22 | depending upon the content of that correspondence, but I |
| 09:51:56 | 23 | don't want work product turned over.  I'm very leary of |
| 09:51:59 | 24 | that.  Mr. Wolfe, how would you suggest I approach that? |
| 09:52:04 | 25 | In camera? |

| | | |
|---|---|---|
| 09:52:04 | 1 | Do you want to look at it first and give me your |
| 09:52:07 | 2 | thoughts? |
| 09:52:08 | 3 | MR. WOLFE:  Your Honor, I'd suggest that the |
| 09:52:13 | 4 | request just be altered slightly; that is, the request asks |
| 09:52:17 | 5 | for "any letters in which dissatisfaction is stated."  If |
| 09:52:24 | 6 | Your Honor made the order that the contents of any letter |
| 09:52:28 | 7 | which discusses it be revealed, and allowed the government |
| 09:52:31 | 8 | to excise other things that aren't dissatisfaction or |
| 09:52:37 | 9 | threats, then I would agree that they're entitled to it. |
| 09:52:40 | 10 | THE COURT:  Let's say "any portion of letter -- or |
| 09:52:46 | 11 | of correspondence" -- |
| 09:52:48 | 12 | MR. WOLFE:  Very well, Your Honor. |
| 09:52:49 | 13 | THE COURT:  -- "that voices dissatisfaction," |
| 09:52:52 | 14 | would that be acceptable? |
| 09:52:54 | 15 | MR. WOLFE:  Yes, Your Honor. |
| 09:52:55 | 16 | THE COURT:  And I think that protects your work |
| 09:52:57 | 17 | product.  I agree.  Let's make sure Mr. Fleming agrees. |
| 09:53:00 | 18 | Mr. Fleming? |
| 09:53:01 | 19 | MR. FLEMING:  The -- if I understand the Court's |
| 09:53:04 | 20 | ruling on this, it's any written correspondence within the |
| 09:53:08 | 21 | possession of the government, either the BOP or in the |
| 09:53:11 | 22 | prosecutor's office. |
| 09:53:12 | 23 | THE COURT:  No.  With Jessner. |
| 09:53:14 | 24 | MR. FLEMING:  Okay. |
| 09:53:15 | 25 | THE COURT:  With Jessner. |

| | | |
|---|---|---|
| 09:53:16 | 1 | And that's going to be addressed to Mr. Jessner, |
| 09:53:18 | 2 | and will probably be in the U.S. Attorney's file, if it |
| 09:53:22 | 3 | exists.  I just don't want the work product to carry over in |
| 09:53:26 | 4 | case Mr. Jessner's responding back. |
| 09:53:29 | 5 | MR. FLEMING:  I understand. |
| 09:53:29 | 6 | THE COURT:  It should be confined to this area. |
| 09:53:29 | 7 | I'll resolve it.  It's an easy issue.  Let's go on to the |
| 09:53:32 | 8 | next one. |
| 09:53:33 | 9 | The -- John Burr.  John Burr, from my memory, is |
| 09:53:45 | 10 | the alleged homosexual, who Mr. Oechsle states was brought |
| 09:53:45 | 11 | in to H-Unit, allegedly, through BOP personnel and -- don't |
| 09:53:51 | 12 | help me with this -- Manly, Mr. Manly, to orally copulate or |
| 09:53:59 | 13 | to engage in homosexual activities with three or four of the |
| 09:54:03 | 14 | cooperating witnesses, and from the reading of the |
| 09:54:06 | 15 | transcript, as a favor. |
| 09:54:08 | 16 | I can't remember.  This was Oechsle's request, |
| 09:54:20 | 17 | although Oechsle says he didn't participate in it? |
| 09:54:24 | 18 | MR. FLEMING:  It was Oechsle's request, and he |
| 09:54:26 | 19 | admits that he did participate in it. |
| 09:54:29 | 20 | THE COURT:  In the oral copulation -- |
| 09:54:31 | 21 | MR. FLEMING:  Yes. |
| 09:54:31 | 22 | THE COURT:  -- or the homosexual activity? |
| 09:54:31 | 23 | MR. FLEMING:  And he named two other inmates who |
| 09:54:33 | 24 | also participated. |
| 09:54:36 | 25 | THE COURT:  And what you want is, you want Burr's |

09:54:38  1   movement records.  Because, from your standpoint -- let me
09:54:40  2   see if I can state what I think your position is.  If you
09:54:41  3   have the movement records, you can corroborate -- since it's
09:54:46  4   apparent you're going to call Mr. Burr --
09:54:48  5              MR. FLEMING:  Yes.
09:54:49  6              THE COURT:  You can corroborate Mr. Burr suddenly
09:54:52  7   being moved from J-Unit, for instance, to H-Unit for no
09:54:55  8   reason, when he's not a cooperator.  And if Mr. Burr states
09:54:58  9   that he's a homosexual and that he engaged in, you know,
09:55:05  10  different activity with these cooperating witnesses, then it
09:55:07  11  gives more credibility to favors that were given by BOP
09:55:12  12  and/or whomever's involved.
09:55:14  13             And the second is, it would -- you'd attempt to
09:55:18  14  bolster your outrageous government conduct motion.
09:55:22  15             MR. FLEMING:  Yes.
09:55:22  16             THE COURT:  Two pronged, is that what --
09:55:25  17             MR. FLEMING:  Yes, yes.
09:55:26  18             THE COURT:  Okay.  Mr. Wolfe, these are easy to
09:55:28  19  find, movement records are.  Those can be found.  Minimally,
09:55:31  20  I can have Mr. Beckwith find those.
09:55:35  21             MR. WOLFE:  Your Honor, the failing in the defense
09:55:37  22  showing here, I think, is that it's only discoverable if
09:55:42  23  it's a *quid pro quo* for false testimony.
09:55:47  24             If Mr. Manly -- or if I were a corrections
09:55:51  25  officer, and I said, "Well, you know, it's against

| | | |
|---|---|---|
| 09:55:56 | 1 | regulations, but I don't want to stand in the way of true |
| 09:55:59 | 2 | love, and I did what's alleged," there wouldn't be anything |
| 09:56:03 | 3 | wrong with it, apart from the fact that it's against |
| 09:56:06 | 4 | regulations. |
| 09:56:07 | 5 | And the sole relevance of this assertion to this |
| 09:56:09 | 6 | case is if it was as a benefit for honest testimony or as an |
| 09:56:17 | 7 | inducement to false testimony.  And there's -- the fact that |
| 09:56:22 | 8 | movement took place is neither here nor there.  The sole |
| 09:56:27 | 9 | connection is Raymond Oechsle's unvarnished and unsworn |
| 09:56:33 | 10 | word.  And showing -- all it shows, if John Burr is an |
| 09:56:38 | 11 | inmate and was moved, is that Oechsle knew that John Burr |
| 09:56:43 | 12 | was an inmate and that he was moved.  It does nothing -- |
| 09:56:47 | 13 | it's like saying, "The sun rose on" such and such a day, |
| 09:56:51 | 14 | "because I was told if I testified falsely, they'd make the |
| 09:56:55 | 15 | sun rise for me." |
| 09:56:56 | 16 | The corroboration -- I got to say, I don't see it |
| 09:57:02 | 17 | on any careful inquiry. |
| 09:57:05 | 18 | THE COURT:  Okay.  Let's do this.  First, let's |
| 09:57:07 | 19 | not call this "true love." |
| 09:57:09 | 20 | MR. WOLFE:  Well... |
| 09:57:10 | 21 | THE COURT:  And let's produce these records. |
| 09:57:12 | 22 | They're very easy to do.  I want the movement records |
| 09:57:17 | 23 | produced.  But let's make that a limited time period. |
| 09:57:17 | 24 | The alleged activity that Mr. Oechsle testifies to |
| 09:57:21 | 25 | is in 2000? |

CR 02-938 DOC - 2/24/2006 - Status Conference

42

| | | |
|---|---|---|
| 09:57:24 | 1 | MR. FLEMING:  And 2001. |
| 09:57:26 | 2 | THE COURT:  But what's the time frame?  I'm going |
| 09:57:28 | 3 | to narrow that.  Mr. Beckwith's not going to go out and run |
| 09:57:31 | 4 | a year and a half's records.  You give me about a |
| 09:57:35 | 5 | three-month period of time. |
| 09:57:37 | 6 | MR. FLEMING:  Doesn't give a lot of time for true |
| 09:57:39 | 7 | love to develop, but we'll -- can we check back on that, |
| 09:57:43 | 8 | Your Honor? |
| 09:57:44 | 9 | THE COURT:  I'll take a recess right now. |
| 09:57:46 | 10 | MR. FLEMING:  Okay.  Let me confer with counsel, |
| 09:57:49 | 11 | and maybe come up with that. |
| 09:57:51 | 12 | THE COURT:  And you start drafting the jury |
| 09:57:53 | 13 | letter, and I ought to be able to have you out of here, |
| 09:57:57 | 14 | frankly, within an hour and not waste all of your time. |
| 09:57:58 | 15 | All right.  So if you would start checking, |
| 09:57:58 | 16 | Mr. Beckwith, I'd be interested in those movement records. |
| 09:57:58 | 17 | What do you need?  About 20 minutes? |
| 09:58:03 | 18 | MR. WHITE:  Your Honor, I can't find -- I don't |
| 09:58:05 | 19 | have the pictures. |
| 09:58:06 | 20 | THE COURT:  You'll get them.  We'll have them |
| 09:58:07 | 21 | today or tonight.  Get somebody.  I'm paying a lot of |
| 09:58:10 | 22 | investigators who are sitting around.  Go get them. |
| 09:58:15 | 23 | *(Recess held at 9:58 a.m.)* |
| 09:58:18 | 24 | *(Proceedings resumed at 10:28 a.m.)* |
| 10:28:26 | 25 | THE COURT:  We're back on the record.  All counsel |

| 10:28:28 | 1 | are present and the defendants are present. |
| 10:28:30 | 2 | I'm going to ask if these suggestions would be |
| 10:28:33 | 3 | appropriate in terms of modifying this letter.  The letter |
| 10:28:37 | 4 | reads: |
| 10:28:38 | 5 | "Dear Madam or Sir, |
| 10:28:41 | 6 | "Your employee has been selected to serve |
| 10:28:43 | 7 | as a juror in the case of *United States v.* |
| 10:28:45 | 8 | *Mills* pending before this court.  The service |
| 10:28:47 | 9 | of your employee in this regard is invaluable |
| 10:28:50 | 10 | to the administration of justice and to our |
| 10:28:53 | 11 | democracy.  As an employer of a juror, you |
| 10:28:56 | 12 | have kindly agreed to compensate the juror |
| 10:28:59 | 13 | during the term of jury service. |
| 10:29:01 | 14 | "The Court thanks you for this financial |
| 10:29:03 | 15 | sacrifice and for the sacrifice of the loss |
| 10:29:07 | 16 | of your employee's services to the |
| 10:29:10 | 17 | company/organization during this trial.  Your |
| 10:29:15 | 18 | citizenship in this regard is commendable. |
| 10:29:19 | 19 | "Very truly yours." |
| 10:29:20 | 20 | Now, the first thing is, how do we distribute |
| 10:29:25 | 21 | this? |
| 10:29:26 | 22 | I don't want to send this out by letter with an |
| 10:29:30 | 23 | address on it, because then everybody knows who the employer |
| 10:29:31 | 24 | is.  So it seems to me it's going to be given to the juror, |
| 10:29:36 | 25 | who needs to come in and pick this up from the clerk. |

|          |    |                                                                                |
|----------|----|--------------------------------------------------------------------------------|
| 10:29:40 | 1  | The second thing is, we were thinking that we                                  |
| 10:29:45 | 2  | could add, "I regret that I cannot address this to you or                      |
| 10:29:49 | 3  | the juror personally" -- because, of course, it's "Dear                        |
| 10:29:53 | 4  | Sir," or "Dear Madam."  It's not "Dear Ms. Smith, Supervisor                   |
| 10:30:06 | 5  | of Shipping for Home Depot."  "-- However, due to the                          |
| 10:30:06 | 6  | security concerns, we are maintaining the confidentiality of                   |
| 10:30:07 | 7  | the jurors' identities."                                                       |
| 10:30:09 | 8  | Now, two things about that last line.  My first                                |
| 10:30:12 | 9  | concern in writing this is, well, we don't want to hype the                    |
| 10:30:17 | 10 | security concerns; by the same token, the security concerns                    |
| 10:30:22 | 11 | are already obvious to the juror who's sitting, so there                       |
| 10:30:25 | 12 | doesn't seem to be any taint.                                                  |
| 10:30:26 | 13 | Number two, it's a subtle way of sending a message                             |
| 10:30:30 | 14 | to them that, you know, "Leave this juror alone."                              |
| 10:30:32 | 15 | Number three, this juror's going to have a number.                             |
| 10:30:36 | 16 | So we're not saying in this, by the way, "Thank you for the                    |
| 10:30:40 | 17 | service of Juror, Mr. Jones, who's sitting on this jury."                      |
| 10:30:43 | 18 | So I'm going to give this back to you.  If you disagree with                   |
| 10:30:46 | 19 | me, that's fine.  I'm simply asking for your                                   |
| 10:30:48 | 20 | recommendations.                                                               |
| 10:30:50 | 21 | And I'll give this to Mr. Wolfe, who drafted it                                |
| 10:30:57 | 22 | initially.                                                                     |
| 10:30:59 | 23 | MR. WHITE:  Mr. Harris.                                                         |
| 10:31:01 | 24 | THE COURT:  Mr. Harris, thank you.  I'll give it                               |
| 10:31:02 | 25 | to Mr. Harris.                                                                  |

CR 02-938 DOC - 2/24/2006 - Status Conference

45

| | | |
|---|---|---|
| 10:31:06 | 1 | Those are suggestions.  I'll have you and the |
| 10:31:08 | 2 | government at some point come up with a final letter.  This |
| 10:31:12 | 3 | is not a requirement, just a couple thoughts. |
| 10:31:15 | 4 | Now, can we now play this, or put up these |
| 10:31:19 | 5 | pictures? |
| 10:31:24 | 6 | MR. REED:  Yes. |
| 10:31:25 | 7 | THE COURT:  Thank you. |
| 10:31:49 | 8 | MR. REED:  Your Honor, I can't put them on the |
| 10:31:51 | 9 | ELMO, but I can plug them into a computer that the Court can |
| 10:31:56 | 10 | look at. |
| 10:31:57 | 11 | THE COURT:  You can't put them on the ELMO? |
| 10:32:00 | 12 | MR. REED:  I can't put them on the screen |
| 10:32:01 | 13 | without -- I can download them onto a drive, and then |
| 10:32:05 | 14 | probably your clerk can -- there's a way to do it, but it's |
| 10:32:10 | 15 | somewhat complicated. |
| 10:32:13 | 16 | THE COURT:  Too complicated.  How do we display |
| 10:32:16 | 17 | these?  Do you want more time? |
| 10:32:19 | 18 | MR. REED:  I have to print 'em, which I can print |
| 10:32:21 | 19 | them in black and white. |
| 10:32:23 | 20 | We can display these that you have. |
| 10:32:27 | 21 | THE COURT:  I've already got them in black and |
| 10:32:30 | 22 | white. |
| 10:32:31 | 23 | MR. REED:  The photos that I have, they don't look |
| 10:32:34 | 24 | any better than that, except that they're -- that they're |
| 10:32:35 | 25 | exhibits. |

CR 02-938 DOC - 2/24/2006 - Status Conference

46

| | | |
|---|---|---|
| 10:32:38 | 1 | THE COURT:  Let me see your computer for a moment. |
| 10:32:40 | 2 | Mr. Wolfe, do you want to come up and see? |
| 10:32:43 | 3 | If I was capable of putting these up on the |
| 10:32:46 | 4 | screen, they wouldn't be any better quality? |
| 10:32:49 | 5 | MR. REED:  You see them just like this. |
| 10:32:50 | 6 | THE COURT:  That's significantly better. |
| 10:32:54 | 7 | Mr. Wolfe, we'll come over to you with this. |
| 10:33:05 | 8 | Okay.  Show me the photos. |
| 10:33:10 | 9 | *(Photos displayed on laptop computer.)* |
| 10:33:32 | 10 | THE COURT:  Now, this is going to be from |
| 10:33:35 | 11 | Camera 7. |
| 10:33:36 | 12 | Now, this is from Camera 6.  This is 7:44, I |
| 10:33:40 | 13 | assume, and 24 seconds, a.m.? |
| 10:33:46 | 14 | MR. REED:  Yes. |
| 10:33:47 | 15 | THE COURT:  And this is on January 2nd, 1997.  And |
| 10:33:50 | 16 | it's a 24-hour camera. |
| 10:34:01 | 17 | Now, I would assume eventually, depending upon the |
| 10:34:10 | 18 | quality, that you might be able to pick out some faces in |
| 10:34:13 | 19 | this. |
| 10:34:24 | 20 | Camera 6. |
| 10:34:31 | 21 | Now, we come to the shots that just show four |
| 10:34:35 | 22 | photos. |
| 10:34:36 | 23 | MR. REED:  It's Exhibit 157-C. |
| 10:34:40 | 24 | THE COURT:  This comes from Camera 5.  Thank you. |
| 10:34:53 | 25 | MR. REED:  This is Exhibit 157-D. |

CR 02-938 DOC - 2/24/2006 - Status Conference

47

| | | |
|---|---|---|
| 10:34:59 | 1 | THE COURT:  And this is from Camera 6, four more |
| 10:35:03 | 2 | photographs. |
| 10:35:03 | 3 | MR. REED:  The last one is 157-E. |
| 10:35:10 | 4 | THE COURT:  And it's from Camera 7.  Four more |
| 10:35:13 | 5 | photographs.  Thank you very much.  Instead of putting this |
| 10:35:15 | 6 | up on the ELMO, the quality would be what I'm seeing on this |
| 10:35:19 | 7 | computer screen? |
| 10:35:21 | 8 | MR. REED:  Yes. |
| 10:35:21 | 9 | THE COURT:  Okay.  Thank you very much. |
| 10:35:23 | 10 | Appreciate your courtesy. |
| 10:35:39 | 11 | Where did these photos come from?  Were they |
| 10:35:41 | 12 | actually put into evidence in the Sahakian trial? |
| 10:35:45 | 13 | MR. STEWARD:  Yes. |
| 10:35:45 | 14 | THE COURT:  Now, was there a discovery order in |
| 10:35:48 | 15 | the Sahakian trial that asked for the tape? |
| 10:35:55 | 16 | MR. STEWARD:  There was testimony about the tape. |
| 10:35:58 | 17 | THE COURT:  Did anybody ask for the tape, to your |
| 10:36:01 | 18 | knowledge? |
| 10:36:02 | 19 | MR. STEWARD:  Yes. |
| 10:36:03 | 20 | THE COURT:  And what was the response?  Why wasn't |
| 10:36:07 | 21 | the tape produced, and why isn't it a part of the record |
| 10:36:09 | 22 | that we can easily get from the Sahakian trial? |
| 10:36:12 | 23 | MR. STEWARD:  Sure.  Let me explain that.  As |
| 10:36:14 | 24 | explained to Mr. Rearick, my investigator, this morning by |
| 10:36:19 | 25 | Joe Green, one of the defense lawyers in the Sahakian case, |

CR 02-938 DOC - 2/24/2006 - Status Conference

48

| | | |
|---|---|---|
| 10:36:22 | 1 | the defense called SIS Officer Rivas, R-I-V-A-S, and |
| 10:36:29 | 2 | introduced the photos that the Court just looked at, still |
| 10:36:32 | 3 | photos.  Rivas was asked under oath, "Does the videotape, |
| 10:36:36 | 4 | the actual video, exist?"  His testimony was that it had |
| 10:36:40 | 5 | been destroyed. |
| 10:36:43 | 6 | The follow-up question was, "Is there a record, |
| 10:36:46 | 7 | somehow, of when and where this was destroyed?"  Rivas's |
| 10:36:50 | 8 | response was, "It was recorded in a destruction log as |
| 10:36:55 | 9 | required by BOP policy." |
| 10:36:59 | 10 | Question next was, "Where's the destruction log |
| 10:37:05 | 11 | today?"  Answer, "It's been destroyed." |
| 10:37:07 | 12 | THE COURT:  Nonsense. |
| 10:37:08 | 13 | MR. STEWARD:  That's what he testified to. |
| 10:37:10 | 14 | The follow-up question was, "Is there a log of the |
| 10:37:14 | 15 | destruction, of the destruction log?"  He said, "No." |
| 10:37:16 | 16 | THE COURT:  Nonsense. |
| 10:37:17 | 17 | All right.  Now, I want the tape.  Don't believe |
| 10:37:19 | 18 | it.  Maybe the judge back there buys it.  I don't believe |
| 10:37:24 | 19 | that kind of nonsense.  I want the tape.  And I'll move |
| 10:37:28 | 20 | heaven and earth to get the tape, if nothing else, to |
| 10:37:32 | 21 | demonstrate -- not to you -- you're exemplary, but I'll have |
| 10:37:37 | 22 | that tape. |
| 10:37:38 | 23 | Okay.  Now, I'm prepared to hand down these other |
| 10:37:41 | 24 | orders that we've covered today.  But, if any of you have |
| 10:37:47 | 25 | any comments, concerns, after what we've gone over in the |

CR 02-938 DOC - 2/24/2006 - Status Conference

49

| | | |
|---|---|---|
| 10:37:59 | 1 | morning session, you know, I'd like to hear them now; |
| 10:37:59 | 2 | otherwise, I'd like to get you on your way, if I can. |
| 10:37:59 | 3 | Let me start with Mr. Wolfe.  What haven't we |
| 10:37:59 | 4 | covered today that you need in preparation of your case? |
| 10:37:59 | 5 | What am I missing, Mr. Wolfe? |
| 10:38:01 | 6 | MR. WOLFE:  Your Honor, there's one thing.  The |
| 10:38:05 | 7 | identity of Marion C.I. Number 12.  It was delayed to allow |
| 10:38:10 | 8 | the Bureau of Prisons -- I've learned from Mr. Beckwith this |
| 10:38:14 | 9 | morning that that inmate has health problems that have meant |
| 10:38:20 | 10 | moving him is taking longer than -- |
| 10:38:24 | 11 | THE COURT:  How much more time do you need?  I'll |
| 10:38:26 | 12 | grant that. |
| 10:38:27 | 13 | MR. WOLFE:  BOP asks that we disclose the identity |
| 10:38:30 | 14 | on March 5. |
| 10:38:32 | 15 | THE COURT:  March 5th.  That's so ordered.  It's |
| 10:38:33 | 16 | delayed until that date. |
| 10:38:34 | 17 | Mr. Beckwith, if there's another complication, get |
| 10:38:38 | 18 | back and just tell me that. |
| 10:38:40 | 19 | MR. BECKWITH:  Yes, Your Honor. |
| 10:38:41 | 20 | THE COURT:  Thank you for your efforts, again. |
| 10:38:43 | 21 | MR. WOLFE:  Nothing more, Your Honor. |
| 10:38:44 | 22 | THE COURT:  Okay.  You sure everything on your |
| 10:38:45 | 23 | list is accommodated today? |
| 10:38:48 | 24 | Any other arguments or concerns concerning what |
| 10:38:50 | 25 | we've covered today in these various Mills motion requests? |

CR 02-938 DOC -- 2/24/2006 - Status Conference

50

| | | |
|---|---|---|
| 10:39:04 | 1 | MR. WOLFE:  Nothing further. |
| 10:39:05 | 2 | THE COURT:  Okay.  Then, Mr. Fleming and |
| 10:39:06 | 3 | Mr. Steward? |
| 10:39:10 | 4 | MR. STEWARD:  Your Honor, we had also provided the |
| 10:39:12 | 5 | Court with a second exhibit, if you will.  It's a two-pager; |
| 10:39:17 | 6 | the second is a photo of some glasses. |
| 10:39:21 | 7 | THE COURT:  Yeah.  I saw that, and just got that |
| 10:39:23 | 8 | this morning, and now I've read it.  Let me read it into the |
| 10:39:26 | 9 | record. |
| 10:39:26 | 10 | "QUESTION:" -- concerning statement of Raymond |
| 10:39:29 | 11 | Oechsle on January 12th. |
| 10:39:31 | 12 | "QUESTION:  Autopsy photographs? |
| 10:39:33 | 13 | "ANSWER:  Yeah.  There were autopsy |
| 10:39:35 | 14 | photographs. |
| 10:39:37 | 15 | "QUESTION:  Photographs of evidence and |
| 10:39:41 | 16 | little flags showing where it was recovered |
| 10:39:44 | 17 | from? |
| 10:39:45 | 18 | "ANSWER:  Yes.  A pair of Jason |
| 10:39:49 | 19 | Schwyhart's glasses.  He wears thick glasses. |
| 10:39:52 | 20 | I think one of the glasses was broke.  It was |
| 10:39:56 | 21 | cracked." |
| 10:39:56 | 22 | This is in Volume I, page 100, and it concerns |
| 10:39:59 | 23 | crime scene photographs of the Lewisburg murders. |
| 10:39:59 | 24 | Then I turn to the second page, and I see a pair |
| 10:40:03 | 25 | of glasses on a linoleum floor.  It states, "A-Block, second |

CR 02-938 DOC - 2/24/2006 - Status Conference

51

| | | |
|---|---|---|
| 10:40:08 | 1 | floor landing." |
| 10:40:09 | 2 | You suspect that those are Mr. Schwyhart's |
| 10:40:12 | 3 | glasses? |
| 10:40:13 | 4 | MR. STEWARD:  Yes, Your Honor. |
| 10:40:14 | 5 | THE COURT:  And you'd like this to be produced? |
| 10:40:16 | 6 | MR. STEWARD:  Actually, no.  We submitted this to |
| 10:40:18 | 7 | the Court as further corroboration of Mr. Oechsle.  The |
| 10:40:24 | 8 | glasses, themselves -- this is a photo that was turned over |
| 10:40:27 | 9 | by the government, which Oechsle is describing.  Oechsle had |
| 10:40:31 | 10 | nothing to do with Lewisburg at all, claims he was shown |
| 10:40:35 | 11 | these various things -- |
| 10:40:36 | 12 | THE COURT:  I see. |
| 10:40:37 | 13 | MR. STEWARD:  -- and this is corroboration of it. |
| 10:40:40 | 14 | THE COURT:  In the H-Unit? |
| 10:40:42 | 15 | MR. STEWARD:  Correct, correct.  And I think -- |
| 10:40:47 | 16 | THE COURT:  Let me repeat that back to you. |
| 10:40:50 | 17 | MR. STEWARD:  Sure. |
| 10:40:51 | 18 | THE COURT:  Oechsle wasn't at Lewisburg.  He was |
| 10:40:53 | 19 | on H-Unit.  But you're attempting to corroborate Oechsle by |
| 10:40:57 | 20 | showing that there are unique things that he couldn't know |
| 10:41:00 | 21 | unless he received this kind of information on H-Unit. |
| 10:41:04 | 22 | MR. STEWARD:  Correct, Your Honor. |
| 10:41:05 | 23 | THE COURT:  Okay.  And what do you want me to do |
| 10:41:12 | 24 | with this? |
| 10:41:13 | 25 | MR. STEWARD:  Well, I think at this point we were |

CR 02-938 DOC - 2/24/2006 - Status Conference

52

| | | |
|---|---|---|
| 10:41:15 | 1 | hoping that we could set a hearing date for Mr. Oechsle to |
| 10:41:19 | 2 | come visit us, again.  Sounds like the Court wants to hear |
| 10:41:22 | 3 | it as we go along, and we understand that.  May we just -- |
| 10:41:25 | 4 | on both of these, the still photos and the glasses, may we |
| 10:41:29 | 5 | simply file these at this time? |
| 10:41:30 | 6 | THE COURT:  Sure.  They're filed.  Do you want to |
| 10:41:32 | 7 | attach an exhibits number to it? |
| 10:41:34 | 8 | MR. STEWARD:  Fine, Your Honor.  We'll do |
| 10:41:34 | 9 | Defense 1 and 2.  "1" being the still photos, and "2" being |
| 10:41:40 | 10 | the glasses, and we'll leave it at that. |
| 10:41:43 | 11 | THE COURT:  Okay. |
| 10:41:43 | 12 | *(Exhibit Defense No. 1 marked for identification.)* |
| 10:41:44 | 13 | *(Exhibit Defense No. 2 marked for identification.)* |
| 10:41:46 | 14 | THE COURT:  Okay.  Now, what else haven't we |
| 10:41:48 | 15 | covered today?  Oh, the letter.  Have you shown this to |
| 10:42:04 | 16 | Mr. Wolfe? |
| 10:42:05 | 17 | MR. WOLFE:  Yes, Your Honor, I have seen it. |
| 10:42:06 | 18 | THE COURT:  Is this acceptable? |
| 10:42:08 | 19 | MR. WOLFE:  Yes. |
| 10:42:09 | 20 | THE COURT:  Acceptable, Mr. Fleming?  Mr. Steward? |
| 10:42:11 | 21 | MR. FLEMING:  Yes. |
| 10:42:11 | 22 | MR. STEWARD:  Yes. |
| 10:42:12 | 23 | THE COURT:  Mr. White? |
| 10:42:13 | 24 | MR. WHITE:  Yes, with the striking of the |
| 10:42:14 | 25 | "security." |

| | | |
|---|---|---|
| 10:42:15 | 1 | THE COURT:  Mr. Harris? |
| 10:42:17 | 2 | MR. HARRIS:  Yes. |
| 10:42:17 | 3 | THE COURT:  So cross out line -- Mr. Rosen, is |
| 10:42:25 | 4 | this letter acceptable? |
| 10:42:28 | 5 | MR. ROSEN:  Oh, yes, Your Honor. |
| 10:42:29 | 6 | THE COURT:  Mr. Calabria? |
| 10:42:31 | 7 | MR. CALABRIA:  Yes, Your Honor. |
| 10:42:33 | 8 | THE COURT:  And, Mr. Reed? |
| 10:42:34 | 9 | MR. REED:  Yes, Your Honor. |
| 10:42:36 | 10 | THE COURT:  Okay.  Now, okay. |
| 10:42:47 | 11 | Mr. White, what haven't we covered today? |
| 10:42:50 | 12 | MR. WHITE:  Your Honor, Mr. Harris is drafting the |
| 10:42:52 | 13 | proposed affidavits that are to be sent to Mr. Jessner, |
| 10:42:56 | 14 | Mr. Cutchin, and Sergeant Young. |
| 10:43:01 | 15 | THE COURT:  Why don't I do this:  Why don't I get |
| 10:43:04 | 16 | off the bench for just a moment.  You can accomplish much |
| 10:43:06 | 17 | more informally just speaking with Mr. Wolfe.  And I'll get |
| 10:43:09 | 18 | back on the bench, and if it's agreed to, that will be it. |
| 10:43:13 | 19 | But you can consult quietly without me using up the record. |
| 10:43:17 | 20 | MR. WHITE:  Your Honor, I have one other request |
| 10:43:18 | 21 | for the Court to consider regarding scheduling. |
| 10:43:22 | 22 | THE COURT:  Okay. |
| 10:43:22 | 23 | MR. WHITE:  We are to restart the trial |
| 10:43:24 | 24 | April 11th.  The first night of Passover is April 12th, and |
| 10:43:29 | 25 | that's as the Court, I'm sure, is aware. |

CR 02-938 DOC - 2/24/2006 - Status Conference

54

| 10:43:35 | 1 | THE COURT:  Oh, absolutely. |

10:43:35   1          THE COURT:  Oh, absolutely.

10:43:32   2          MR. WHITE:  So my request would be that I can get

10:43:37   3   out of here early enough to get home.

10:43:41   4          THE COURT:  Absolutely.

10:43:41   5          MR. WHITE:  And maybe start a little later on

10:43:44   6   Wednesday, because there are a number of cups of wine that I

10:43:47   7   have to drink...

10:43:49   8          THE COURT:  It's all negotiable.

10:43:53   9          First of all, Mr. Harris, we'll be here.  I'll

10:43:56   10   explain to the jury that you're leaving.  And other members

10:43:59   11   of the jury may have the same concern, so we may have to

10:44:02   12   recess the whole case early that day.  If not, Mr. Harris is

10:44:06   13   here.  And whatever explanation you'd like me to give, I'm

10:44:09   14   happy to do that.

10:44:09   15          As far as starting the next day, in your

10:44:12   16   inebriated condition, you'll make it.  So here's what we'll

10:44:16   17   do.  Mr. Harris will be here.  You can arrive late.  I'll

10:44:28   18   give that explanation to the jury, that that's with my

10:44:28   19   consent.

10:44:28   20          But I'm training that jury.  Whether it's

10:44:28   21   8:00 o'clock or 8:30, it will be always the same time.  Once

10:44:28   22   we decide what that time is, I won't vary it.

10:44:31   23          MR. WHITE:  Yes, Your Honor.  I will be here if

10:44:33   24   Court's in session, so if I have to be late --

10:44:36   25          THE COURT:  No, I don't want that.

*DEBBIE GALE, U.S. COURT REPORTER*

CR 02-938 DOC – 2/24/2006 - Status Conference

55

| | | |
|---|---|---|
| 10:44:40 | 1 | MR. WHITE:  I understand the Court doesn't want |
| 10:44:40 | 2 | it; but in my prioritizing, what's most important is... |
| 10:44:44 | 3 | THE COURT:  Not for one hour, or a couple hours, |
| 10:44:46 | 4 | no.  That's silly.  You go about your way and enjoy that |
| 10:44:50 | 5 | holiday.  It's important.  Okay? |
| 10:44:52 | 6 | Now, what else, before I take a brief recess? |
| 10:44:57 | 7 | Mr. Fleming? |
| 10:44:58 | 8 | MR. FLEMING:  Your Honor, we had the -- Your Honor |
| 10:44:58 | 9 | asked us to pick a time frame for the movement records of |
| 10:45:02 | 10 | Mr. Burr, and we talked about this.  And we'd ask Your Honor |
| 10:45:05 | 11 | to order those records from April of 2001 to the end of the |
| 10:45:11 | 12 | year, if we could extend it just a little bit -- |
| 10:45:14 | 13 | THE COURT:  Okay. |
| 10:45:15 | 14 | MR. FLEMING:  -- for John Burr at the ADX? |
| 10:45:17 | 15 | THE COURT:  Until -- let's say until December... |
| 10:45:23 | 16 | MR. FLEMING:  December 30, 2001. |
| 10:45:27 | 17 | THE COURT:  That ought to be easy to get.  It's a |
| 10:45:30 | 18 | push of the button, because it's automated. |
| 10:45:33 | 19 | MR. FLEMING:  Yeah. |
| 10:45:34 | 20 | THE COURT:  Okay.  It will be April 1st, 2001, to |
| 10:45:37 | 21 | December 30th, 2001.  And I'll put this out by minute order, |
| 10:45:42 | 22 | by the way, early next week.  You'll have this in writing, |
| 10:45:45 | 23 | but everybody knows what they can get started with. |
| 10:45:49 | 24 | Now, why don't I take a recess because we're |
| 10:45:52 | 25 | wasting the record now. |

| | |
|---|---|
| 10:45:54 | 1 |
| 10:45:57 | 2 |
| 10:45:58 | 3 |
| 10:45:58 | 4 |
| 10:46:00 | 5 |
| 10:46:04 | 6 |
| 10:46:09 | 7 |
| 10:46:11 | 8 |
| 10:46:12 | 9 |
| 10:46:14 | 10 |
| 10:46:18 | 11 |
| 10:46:23 | 12 |
| 10:46:30 | 13 |
| 10:46:32 | 14 |
| 10:46:36 | 15 |
| 10:46:38 | 16 |
| 10:46:39 | 17 |
| 10:46:42 | 18 |
| 10:46:51 | 19 |
| 10:46:54 | 20 |
| 10:47:00 | 21 |
| 10:47:03 | 22 |
| 10:47:05 | 23 |
| 10:47:06 | 24 |
| 10:47:08 | 25 |

MR. WOLFE:  Your Honor, may I make a somewhat different suggestion?

THE COURT:  Sure.

MR. WOLFE:  Your Honor, I would suggest that we simply end the hearing now, because I urge the Court not to -- it's one thing to have an oath for a witness, tell the truth, the whole truth --

THE COURT:  I can't hear you.

MR. WOLFE:  Its one thing to have a prescribed oath for a witness, but I'm very loathe to have the defendants prescribe words, every word, word by word, about the subject matter that the witnesses are obliged to swear under penalty of perjury.  Suppose they want to say, "I'm nearly positive" or something of this sort.  I know what Your Honor thinks about that.

THE COURT:  Not much.

MR. WOLFE:  Well, I understand.  Even if they say -- well, it seems very odd to me to state this form of words, and then ask the Court to order that the defendants -- not the defendants -- the deponents swear to it without even having heard from them about what the facts are.

THE COURT:  It was only a courtesy.  Then I'm going to demand the warden be here, and we'll set that for a date, because that way, I can talk to him.  I'm not

| | | |
|---|---|---|
| 10:47:10 | 1 | depending upon a piece of paper. I want somebody |
| 10:47:12 | 2 | responsible, and it will be the warden. So we'll pick a |
| 10:47:15 | 3 | date. |
| 10:47:15 | 4 | MR. WOLFE: Your Honor -- |
| 10:47:16 | 5 | THE COURT: So I'm not going to waste my time now |
| 10:47:19 | 6 | with the wording. |
| 10:47:20 | 7 | You may be absolutely right, but by the same |
| 10:47:24 | 8 | token, I'm going to be absolutely satisfied. And it's my |
| 10:47:29 | 9 | prior experience with CDC, not BOP, and that was |
| 10:47:29 | 10 | absolutely... |
| 10:47:31 | 11 | MR. WOLFE: Your Honor, I don't understand the |
| 10:47:33 | 12 | defense counsel to be drafting something for the warden. I |
| 10:47:36 | 13 | understand them to be drafting it for an AUSA. That's my |
| 10:47:39 | 14 | concern. |
| 10:47:40 | 15 | THE COURT: Oh, they're not going to do that, |
| 10:47:41 | 16 | Counsel. |
| 10:47:42 | 17 | MR. WOLFE: Well -- |
| 10:47:42 | 18 | THE COURT: I thought it was just the warden. |
| 10:47:45 | 19 | MR. FLEMING: No, Your Honor. |
| 10:47:46 | 20 | THE COURT: Time out. I'm taking a recess. This |
| 10:47:48 | 21 | is a waste of time. You two can sit for a while and figure |
| 10:47:51 | 22 | it out. There are other things I can do. Give me a call |
| 10:47:53 | 23 | when you've resolved this informally amongst yourselves. |
| 10:48:04 | 24 | MR. WOLFE: Very well, Your Honor. |
| 10:48:04 | 25 | *(Recess held at 10:48 a.m.)* |

| | | |
|---|---|---|
| 10:48:19 | 1 | (Resumed at 11:20 a.m.) |
| 11:20:58 | 2 | THE COURT: Let's go back on the record. And all |
| 11:21:01 | 3 | counsel and the defendants are present. |
| 11:21:06 | 4 | After we recess today, is there anything that you |
| 11:21:10 | 5 | believe you'll need to call to my attention in the next two |
| 11:21:13 | 6 | weeks before the opening statement? |
| 11:21:15 | 7 | Better yet, I'm available to you. So in other |
| 11:21:18 | 8 | words, Mr. Wolfe, if something comes up -- you know, if |
| 11:21:21 | 9 | something comes up for the defense, call Lisa, and I'll put |
| 11:21:25 | 10 | you on the calendar for the next day, literally. So I'll |
| 11:21:28 | 11 | remain available during this two-week period of time, and |
| 11:21:31 | 12 | Saturdays. I'm not joking about that. So if you're tied up |
| 11:21:36 | 13 | in a trial or something, we can be in Saturday session. But |
| 11:21:40 | 14 | give me enough time so that the marshals and security are |
| 11:21:43 | 15 | ready. |
| 11:21:44 | 16 | All right. Counsel, who wants to address the |
| 11:21:46 | 17 | Court? |
| 11:21:48 | 18 | MR. HARRIS: Your Honor, the parties have agreed |
| 11:21:49 | 19 | on the agreed language of Mr. Cutchin and Mr. Young. |
| 11:21:56 | 20 | THE COURT: Okay. Do you want to read that? |
| 11:22:00 | 21 | MR. HARRIS: Yes, Your Honor. |
| 11:22:00 | 22 | All right. To repeat, the parties have agreed to |
| 11:22:05 | 23 | language for the declarations of James Cutchin and Clifford |
| 11:22:09 | 24 | Young. |
| 11:22:11 | 25 | The Cutchin declaration states: |

| | | |
|---|---|---|
| 11:22:14 | 1 | "James Cutchin declares, number one, I |
| 11:22:16 | 2 | have never seen or received a letter from |
| 11:22:18 | 3 | Raymond Oechsle to the Inspector General |
| 11:22:21 | 4 | detailing misconduct in H-Unit and/or J-Unit |
| 11:22:25 | 5 | at the ADX in Florence, Colorado.  I declare |
| 11:22:29 | 6 | under penalty of perjury," et cetera, |
| 11:22:30 | 7 | et cetera, "Signed, James Cutchin." |
| 11:22:32 | 8 | Number two, a declaration of Clifford -- |
| 11:22:34 | 9 | CMC Clifford Young.  "Clifford Young |
| 11:22:39 | 10 | declares, Number One, "I have never seized or |
| 11:22:42 | 11 | caused the seizure of a letter written by |
| 11:22:45 | 12 | Raymond Oechsle to the Inspector General; |
| 11:22:47 | 13 | number two, I never mailed or transmitted a |
| 11:22:51 | 14 | letter written by Raymond Oechsle to the |
| 11:23:02 | 15 | Inspector General, to Assistant |
| 11:23:02 | 16 | U.S. Attorney, James Cutchin.  I declare |
| 11:23:02 | 17 | under penalty of perjury, signed, CMC |
| 11:23:02 | 18 | Clifford Young." |
| 11:23:04 | 19 | THE COURT:  Acceptable to you, Mr. Fleming? |
| 11:23:04 | 20 | Mr. Steward? |
| 11:23:06 | 21 | MR. FLEMING:  Yes, Your Honor. |
| 11:23:06 | 22 | THE COURT:  Mr. Rosen?  Mr. Calabria? |
| 11:23:08 | 23 | MR. CALABRIA:  Yes, Your Honor. |
| 11:23:09 | 24 | MR. ROSEN:  Yes, Your Honor. |
| 11:23:10 | 25 | THE COURT:  Mr. Reed? |

CR 02-938 DOC - 2/24/2006 - Status Conference

60

| | | |
|---|---|---|
| 11:23:12 | 1 | MR. REED:  Yes, Your Honor. |
| 11:23:12 | 2 | THE COURT:  Mr. White? |
| 11:23:14 | 3 | MR. WHITE:  Yes, Your Honor. |
| 11:23:14 | 4 | THE COURT:  Mr. Wolfe? |
| 11:23:15 | 5 | MR. WOLFE:  Yes, Your Honor. |
| 11:23:16 | 6 | THE COURT:  Why don't you give those to Lisa. |
| 11:23:17 | 7 | I'll put those out in a minute order.  Or do you want me, |
| 11:23:21 | 8 | Mr. Wolfe, to give that to Mr. Beckwith or to you and have |
| 11:23:25 | 9 | it transmitted? |
| 11:23:27 | 10 | MR. WOLFE:  Your Honor, I'd be happy to just take |
| 11:23:29 | 11 | them and communicate with those two. |
| 11:23:31 | 12 | THE COURT:  Why don't we do that.  That's much |
| 11:23:33 | 13 | more gentlemanly, I think.  Just give those to the US |
| 11:23:38 | 14 | Attorney. |
| 11:23:40 | 15 | MR. HARRIS:  Very well, Your Honor. |
| 11:23:40 | 16 | THE COURT:  That way it doesn't go out in order |
| 11:23:43 | 17 | form.  Then, is there anything further? |
| 11:23:45 | 18 | MR. STEWARD:  No, Your Honor. |
| 11:23:47 | 19 | THE COURT:  Mr. Steward? |
| 11:23:48 | 20 | MR. STEWARD:  No. |
| 11:23:48 | 21 | THE COURT:  Mr. Fleming? |
| 11:23:49 | 22 | MR. FLEMING:  No, Your Honor. |
| 11:23:50 | 23 | THE COURT:  Mr. White? |
| 11:23:51 | 24 | MR. WHITE:  No. |
| 11:23:51 | 25 | THE COURT:  Mr. Harris? |

| | | |
|---|---|---|
| 11:23:52 | 1 | MR. HARRIS:  No. |
| 11:23:53 | 2 | THE COURT:  Mr. Calabria? |
| 11:23:55 | 3 | MR. CALABRIA:  No, Your Honor. |
| 11:23:55 | 4 | THE COURT:  Mr. Rosen? |
| 11:23:57 | 5 | MR. ROSEN:  No, Your Honor. |
| 11:23:58 | 6 | THE COURT:  Mr. Reed? |
| 11:23:59 | 7 | MR. REED:  No, Your Honor. |
| 11:24:00 | 8 | THE COURT:  Mr. Wolfe? |
| 11:24:01 | 9 | MR. WOLFE:  No, Your Honor. |

11:24:02  10   THE COURT:  Now, we'll reconvene on March 14th.

11:24:05  11      Now, what I do not want -- this will absolutely

11:24:08  12  drive me crazy.  That's a legal phrase.  About the time that

11:24:12  13  I'm setting aside -- any day, including Saturdays, during

11:24:16  14  this two-week period -- and one of the two sides comes in at

11:24:20  15  8:30 on March 14th with a motion -- I don't need to go any

11:24:26  16  further.

11:24:27  17      MR. STEWARD:  We won't even think of it,

11:24:29  18  Your Honor.

11:24:30  19      THE COURT:  Okay.  That's clear to everybody.  In

11:24:32  20  other words, I'm available.  But the first time that

11:24:35  21  happens, you won't see the light of day or night.  Okay?

11:24:39  22  All right.

11:24:39  23      Then you have a wonderful two weeks.  And we'll

11:24:42  24  see you on March 14th, but we want to make that at 8:30,

11:24:45  25  just so we're all set up -- okay? -- before the jury comes

CR 02-938 DOC - 2/24/2006 - Status Conference

62

| | | |
|---|---|---|
| 11:24:48 | 1 | in. |
| 11:24:48 | 2 | Have a good time. |
| 11:24:49 | 3 | Mr. Beckwith, thank you very much, again. |
| 11:24:52 | 4 | Mr. Wolfe, thank you. |
| 11:24:53 | 5 | And Counsel, thank you. |
| 11:25:00 | 6 | (At 11:25 a.m., proceedings were adjourned.) |
| 11:25:00 | 7 | -oOo- |
| 11:25:00 | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

CR 02-938 DOC - 2/24/2006 - Status Conference

63

-oOo-

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:   February 27, 2006

DEBBIE GALE, U.S. COURT REPORTER
CSR NO. 9472, RPR