CR 02-938(E)-DOC          August 29, 2006

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

SEP 2 1 2006

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                    - - -

4          HONORABLE DAVID O. CARTER, JUDGE PRESIDING

5                    - - -

6

7    UNITED STATES OF AMERICA,          )
                                        )
8                    Plaintiff,         )
                                        )
9      vs.                              )   No. CR 02-938(E)-DOC
                                        )
10   BARRY BYRON MILLS; TYLER DAVIS     )      DAY 63 - VOLUME I
     BINGHAM; CHRISTOPHER OVERTON       )
11   GIBSON; EDGAR WESLEY HEVLE,        )      DEATH PENALTY PHASE
                                        )
12                   Defendants.        )
                                        )
     ───────────────────────────────────

13                                      **ORIGINAL**

14

15

16          REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                Santa Ana, California

18             Tuesday, August 29, 2006

19

20

21   JANE C.S. RULE, CSR No. 9316
22   Federal Court Reporter
     UNITED STATES DISTRICT COURT
23   411 West Fourth Street, Room 1053
     Santa Ana, California 92701-4516
24   (714) 558-7755

25   Reporter's Reference:  06-08-29 ABD63V1

3888

CR 02-938(E)-DOC          August 29, 2006                    2

```
 1   APPEARANCES:

 2


 3   On behalf of the Plaintiff UNITED STATES OF AMERICA:

 4          OFFICE OF THE UNITED STATES ATTORNEY
            BY:  STEPHEN WOLFE
 5               MICHAEL W. EMMICK
                 JOEY L. BLANCH
 6               Attorneys at Law
            312 North Spring Street
 7          Los Angeles, California 90012
            (213) 894-0511
 8
                      - AND -
 9
            OFFICE OF THE UNITED STATES ATTORNEY
10          BY:  TERRI K. FLYNN
                 Attorney at Law
11          411 West 4th Street
            8th Floor
12          Santa Ana, California 92701
            (714) 338-3592
13

14   On behalf of the Defendant BARRY BYRON MILLS:

15          LAW OFFICES OF H. DEAN STEWARD
            BY:  H. DEAN STEWARD
16               Attorney at Law
            107 Avenida Miramar
17          Suite C
            San Clemente, California 92672
18          (949) 481-4900

19                    - AND -

20          LAW OFFICES OF MARK F. FLEMING
            BY:  MARK F. FLEMING
21               Attorney at Law
            433 "G" Street
22          Suite 202
            San Diego, CA 92101
23          (619) 652-9970

24

25
```

CR 02-938(E)-DOC          August 29, 2006                    3

```
 1  APPEARANCES (Continued):

 2

 3  On behalf of the Defendant TYLER DAVIS BINGHAM:

 4          LAW OFFICES OF MICHAEL V. WHITE
            BY:  MICHAEL V. WHITE
 5               Attorney at Law
            1717 Fourth Street
 6          Third Floor
            Santa Monica, California 90401
 7          (310) 576-6242

 8                   - AND -

 9          STEWART & HARRIS
            ATTORNEYS AT LAW
10          BY:  WILLIAM S. HARRIS
                 Attorney at Law
11          1499 Huntington Drive
            Suite 403
12          South Pasadena, California 91030
            (626)441-9300
13

14

15

16

17

18

19

20

21

22

23

24

25
```

CR 02-938(E)-DOC          August 29, 2006                    4

```
1                        I N D E X

2

3

4        JURY TRIAL - DAY 63, VOLUME I (DEATH PENALTY PHASE)

5

6           GOVERNMENT'S PRESENTATION OF EXHIBITS

7

8                        EXHIBITS

9

10   Exhibit                    Identification        Evidence

11   Plaintiff No. 569               --                  43

12   Plaintiff Nos. 571 - 584        --                  43

13   Plaintiff's Nos. 530 - 538      --                  21

14   Plaintiff's Nos. 550 - 567      --                  43

15

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 08:42 | 1 | **SANTA ANA, CALIFORNIA, TUESDAY, AUGUST 29, 2006** |
| 08:42 | 2 | **DAY 63 - VOLUME I** |
| 08:42 | 3 | **(8:42 a.m.)** |
| 08:42 | 4 | (The following proceedings is taken outside the |
| 08:42 | 5 | presence of the jury.) |
| 08:42 | 6 | THE COURT:  Okay.  We are in session.  All counsel are |
| 08:42 | 7 | present.  The government is present.  The defense counsel is |
| 08:42 | 8 | present. |
| 08:42 | 9 | Will you summon the jury, please. |
| 08:43 | 10 | (The following proceedings is taken in the presence of |
| 08:43 | 11 | the jury.) |
| 08:43 | 12 | THE COURT:  All right.  The jury is present, the |
| 08:44 | 13 | alternates.  All counsel are present, defense counsel, the |
| 08:44 | 14 | defendants, the government. |
| 08:44 | 15 | And Counsel, would you like to call your next witness |
| 08:44 | 16 | or present your next piece of evidence, please. |
| 08:44 | 17 | MS. FLYNN:  Your Honor, at this time we would like to |
| 08:44 | 18 | introduce and publish some documents. |
| 08:44 | 19 | THE COURT:  All right.  Does the jury have this |
| 08:44 | 20 | notebook, Counsel? |
| 08:44 | 21 | MS. FLYNN:  No, your Honor.  I planned to put them on |
| 08:44 | 22 | the ELMO. |
| 08:44 | 23 | THE COURT:  Okay. |
| 08:44 | 24 | MS. FLYNN:  And your Honor, for the record, it's going |
| 8:44 | 25 | to be Exhibits 500 through 538 is what the government is moving |

CR 02-938(E)-DOC          August 29, 2006                    6

| | | |
|---|---|---|
| 08:44 | 1 | to introduce and publish at this time. |
| 08:44 | 2 | THE COURT:  All right.  Just one moment. |
| 08:44 | 3 | Thank you very much. |
| 08:45 | 4 | Now, we received a number of those yesterday, haven't |
| 08:45 | 5 | we? |
| 08:45 | 6 | MS. FLYNN:  No, your Honor.  We received, I think, |
| 08:45 | 7 | starting at 585. |
| 08:45 | 8 | THE COURT:  You are absolutely correct.  Thank you. |
| 08:45 | 9 | MS. FLYNN:  May I go ahead and publish those, your |
| 08:45 | 10 | Honor? |
| 08:45 | 11 | THE COURT:  You may. |
| 08:45 | 12 | **GOVERNMENT'S PRESENTATION OF EXHIBITS** |
| 08:45 | 13 | MS. FLYNN:  Okay.  Beginning with Exhibit 500, this is |
| 08:45 | 14 | the -- and I am just going to read pertinent portions of the |
| 08:45 | 15 | document. |
| 08:45 | 16 | This is the Judgment and Commitment Order dated |
| 08:45 | 17 | December 27th, 1967, for T.D. Bingham's conviction for petty |
| 08:45 | 18 | theft, in which he received six months. |
| 08:45 | 19 | Exhibit 501 is the Report and Recommendation of the |
| 08:45 | 20 | Probation Officer, which goes with the conviction for the |
| 08:45 | 21 | violation of petty theft, which he committed on December 10th, |
| 08:46 | 22 | 1966.  It indicates on page 3 that the petty theft was for |
| 08:46 | 23 | taking $60 from a service station. |
| 08:46 | 24 | Mr. Bingham's statement was that he couldn't make any |
| 08:46 | 25 | excuse for taking the money.  "I took because there isn't, but |

CR 02-938(E)-DOC          August 29, 2006                      7

08:46  1   I would like probation."
08:46  2        The document also contains criminal history and a
08:46  3   juvenile record, in the middle of the document, and there's
08:46  4   personal information towards the end regarding Mr. Bingham's
08:46  5   background.
08:47  6        Exhibit 502 is the Information filed against T.D.
08:47  7   Bingham for violation of Section 211 of the Penal Code of the
08:47  8   State of California for unlawfully and feloniously robbing
08:47  9   Victor R. Schoenfeld of money by use of a deadly weapon.
08:47 10   That's Count 1.  And Count 2 is that T.D. Bingham, on or about
08:47 11   the 8th day of October, 1968, at and in the County of San Luis
08:47 12   Obispo, State of California, did unlawfully and feloniously
08:47 13   commit an assault with a deadly weapon upon Victor R.
08:47 14   Schoenfeld.
08:47 15        I realize these are hard to see.  This is the abstract
08:48 16   of judgment for T.D. Bingham based on his plea of guilty to
08:48 17   robbery in the first degree.
08:48 18        THE COURT:  Is this Exhibit 503, Counsel?
08:48 19        MS. FLYNN:  Oh, yes.  I'm sorry, Your Honor.  Exhibit
08:48 20   503, now, the Abstract of Judgment for plea of guilty to
08:48 21   robbery of the first degree, and on the second page is a plea
08:48 22   of guilty to assault with a deadly weapon.
08:48 23        Exhibit 504 is the report of the probation officer
08:48 24   that goes with Tyler Davis Bingham -- Tyler Bingham's
08:48 25   conviction for robbery and assault with a deadly weapon.  It

CR 02-938(E)-DOC          August 29, 2006                      8

08:49  1  indicates, on page 3, Mr. Bingham's statement of the facts, and

08:49  2  indicates that once inside the office of the service station,

08:49  3  the defendant produced a pistol and demanded money from

08:49  4  Mr. Schoenfeld, and that he told Mr. Schoenfeld to walk towards

08:49  5  the washroom.  And when he did, Mr. Bingham told Mr. Schoenfeld

08:49  6  to turn around, at which time he struck him over the head once

08:49  7  with the pistol.

08:49  8          Exhibit 505 is the transcript of the sentencing

08:49  9  hearing for the robbery and assault with a deadly weapon

08:49  10 conviction from 1968.

08:49  11         Exhibit 506 is the Report of Violation of

08:50  12 Institutional Rules at San Quentin State Prison for the date of

08:50  13 an incident of January 16th, 1970, where Mr. Bingham was

08:50  14 engaged in an altercation with Inmate Quinlivan.  Mr. Bingham

08:50  15 was found guilty and was given 29 days in isolation.

08:50  16         THE COURT:  Just one moment, Counsel.

08:50  17         Thank you.

08:51  18         MS. FLYNN:  Exhibit 507 is a Rules Violation Report

08:51  19 for Folsom State Prison.  It's very difficult to read, but the

08:51  20 allegation is for disobeying a direct order.  The date is on or

08:51  21 about March 15th, 1973, and Mr. Bingham pled guilty to

08:51  22 disobeying a direct order, and he was identified as one of the

08:51  23 inmates involved in a fight on the yard.

08:51  24         Exhibit 508 is another Rules Violation Report for

08:51  25 Folsom State Prison dated March 28th, 1973, alleging -- or

CR 02-938(E)-DOC          August 29, 2006                    9

08:52   1   finding Mr. Bingham guilty of being involved in a fight.

08:52   2   Officer -- Correctional Officer Weisgarber wrote that he had

08:52   3   observed Inmate Bingham and another inmate, Culver, engage in a

08:52   4   fist fight in the lower exercise yard, and he fired a warning

08:52   5   shot, which stopped the fight.  The document indicates at the

08:52   6   bottom that Mr. Bingham was found guilty.

08:52   7          Exhibit 509 is also a Rules Violation Report for

08:52   8   Folsom State Prison dated June 27th, 1973, and Mr. Bingham was

08:52   9   found guilty of being verbally hostile towards staff.  The

08:52   10  Correctional Officer Weisgarber wrote that "At approximately

08:53   11  1:30 p.m. on this date, I cautioned two inmates to stop

08:53   12  throwing handballs at each other in the lower exercise yard of

08:53   13  the adjustment center.  Inmate Bingham started mouthing off at

08:53   14  me and so much had inferred that he was running the yard and

08:53   15  that they could do what they please."

08:53   16         The bottom of the document indicates that he pled

08:53   17  guilty of throwing handballs.

08:53   18         Exhibit 510 is a Rules Violation Report for Folsom

08:53   19  State Prison dated April 13th, 1974, and the charge is fighting

08:54   20  with Inmate Ayers.  The report states that Bingham was the

08:54   21  aggressor and swung first on Ayers.

08:54   22         He had pled guilty.  Mr. Bingham's statement was that

08:54   23  he claims he had tried to straighten out so he can get out of

08:54   24  the security housing unit, but "there are times when you do

08:54   25  what you have to do."

CR 02-938(E)-DOC          August 29, 2006                    10

08:54  1        Exhibit 511 is a Rules Violation Report from Folsom

08:54  2   State Prison dated April 17th, 1974, for throwing food trays

08:54  3   onto the tier.  Mr. Bingham, at the bottom, was found guilty.

08:55  4        Exhibit 512 is a readmission summary for a 1975 parole

08:55  5   violation.  The bottom paragraph on the first page says that

08:55  6   "Bingham is a 29-year-old first-timer who was first

08:55  7   incarcerated in the California Youth Authority at the age of

08:55  8   15.  Bingham has spent most of his life in institutions since.

08:55  9   His prior institutional behavior can only be classified as

08:55 10   very poor.  He has spent considerable time in segregation

08:55 11   units and has been associated with white radical gangs.

08:55 12        "Bingham's loyalty and dependence toward the gangs'

08:56 13   family appears to be his crutch in life, and his anti-social

08:56 14   conduct, both in and out of prison, can possibly be attributed

08:56 15   to his associated" -- "his association" -- "associates" --

08:56 16   sorry -- "and his loyalty to the same.  It is doubtful that

08:56 17   Bingham's behavior will change, unless the goals and conduct of

08:56 18   his institution family changes."

08:56 19        The second page, Bingham makes a statement that he

08:56 20   claims that his gang affiliation is in the past, and the parole

08:56 21   officer writes, "Although Bingham was involved in an escape

08:56 22   attempt during" --

08:56 23        THE COURT:  Slower, Counsel.  Slower.

08:56 24        MS. FLYNN:  Sorry.

8:56 25        "Although Bingham was involved in an escape attempt

08:56  1   during the pending charges of this violation and had poor

08:56  2   adjustment during the previous incarceration, it is not

08:56  3   anticipated he will be a custodial problem."

08:57  4        It goes on to say "This prediction is based on the

08:57  5   fact that he has a parole date of 3/28/77, and on the

08:57  6   assumption he will not be placed in an institution with

08:57  7   factions opposed to his alleged group affiliation, Aryan

08:57  8   Brotherhood."

08:57  9        Exhibit 513 is an information against T.D. Bingham

08:57  10  charging him with a violation for unlawfully, willfully and

08:57  11  feloniously transport, sell and furnish narcotics; to wit,

08:57  12  heroin."

08:58  13       THE COURT:  Counsel, just one moment.

08:58  14       What's the date of the document?

08:58  15       MS. FLYNN:  The document doesn't have a date, but it

08:58  16  says that "Defendant on or about January 25th, 1978."

08:58  17       THE COURT:  All right.  Thank you.

08:58  18       MS. FLYNN:  Exhibit 514 is an Information charging

08:58  19  Mr. Bingham, "On or about July 1st, 1978 in Contra Costa

08:58  20  County, State of California, did then and unlawfully, willfully

08:58  21  and feloniously escape from the Contra Costa County Jail."

08:59  22       515 is the Judgment and Commitment Order dated

08:59  23  September 5th, 1979, indicating that Mr. Bingham pled guilty on

08:59  24  10/4/1978 to transport, sell and furnish narcotics and escape

08:59  25  from custody.

CR 02-938(E)-DOC          August 29, 2006                          12

08:59   1              THE COURT:  What was the date again, Counsel, on 515?

08:59   2              MS. FLYNN:  September 5th, 1979 is the date of the

08:59   3    judgment and conviction.  Date of the conviction is 10/4/1978.

09:00   4              THE COURT:  Thank you.

09:00   5              MS. FLYNN:  Exhibit 516, which I won't put on the

09:00   6    overhead, is the Change of Plea and Sentencing transcript for

09:00   7    Defendant Bingham for the 1978 narcotics and escape

09:00   8    convictions.

09:00   9              517 is entitled "Accumulative Case Summary," and the

09:00  10    second page indicates it was put together after his conviction

09:00  11    for narcotics and escape from custody.

09:01  12              On page 4 of the document, there's a summary of the

09:01  13    charges for the controlled substance that says, "On January

09:01  14    25th, 1978, Bingham became involved in the sales of heroin to a

09:01  15    Contra Costa County Narcotics Strike Force undercover officer.

09:01  16    This bail was part of an ongoing investigation in which the

09:01  17    undercover officer had made numerous buys from a Diane Lee

09:01  18    Elrod and John Capitanich.

09:01  19              "On the above-mentioned date, Bingham and Elrod took

09:01  20    money from the undercover officer, drove to John Capitanich's

09:01  21    residence and returned with a hand-rolled balloon containing

09:01  22    1 gram gross weight of heroin."

09:01  23              At the bottom of that same page, page 4 of this

09:01  24    document, it summarizes the escape from county jail charges,

09:02  25    that "On July 1st, 1978, approximately 01:54 hours, J. Petko

CR 02-938(E)-DOC          August 29, 2006                    13

09:02 1  was working on top of the county courthouse when he heard a

09:02 2  noise and observed three prisoners escape.  He immediately

09:02 3  reported the escape.  Mr. Petko was able" -- "was also able to

09:02 4  give a description of the vehicle and observed" -- "he observed

09:02 5  make three trips around the county jail and park."

09:02 6        It goes on, on the next page, to say "Jail personnel

09:02 7  conducted a floor count and found Bingham, Squires and Miller

09:02 8  to be missing.  The point of escape was a window on the main

09:02 9  floor.  The outside grate had been unscrewed from outside the

09:02 10 jail, and an inside window lever had been hacksawed from the

09:03 11 inside.  Jail personnel found one hacksaw blade with a rag tie

09:03 12 on one end, one tennis shoe and one pair of orange jail

09:03 13 coveralls lying on the floor to the aforementioned window."

09:03 14       On the next page it goes on to summarize the views of

09:03 15 the district attorney at this time that says, "If the law

09:03 16 permitted it, this defendant would be a prime candidate for a

09:03 17 life term in prison."

09:04 18       Exhibit 518 is entitled "Institution Programming

09:04 19 Summary."  The bottom of the document indicates it's dated

09:04 20 November 8th, 1978.  On page 2 it summarizes "While recently on

09:04 21 parole, subject suffered numerous arrests.  He was arrested for

09:04 22 suspicion of robbery, but the charges were apparently dropped.

09:04 23 He was not released, however, because he was involved in an

09:04 24 assault on a correctional officer.  He subsequently pled guilty

09:04 25 to one count of battery on the correctional officer.

09:04  1        "Subject also was arrested for driving a vehicle,
09:04  2  which had been reported stolen, and the two offenses for which
09:04  3  he was currently incarcerated.  In the escape, subject states
09:04  4  that a hacksaw had been in the Contra County Jail for several
09:04  5  months previous to the time when he was committed there.  He
09:04  6  states that other inmates showed him the hacksaw blade, and he
09:05  7  sawed through the jail cell bars and escaped.  He was
09:05  8  apparently only on escape status about six hours when he was
09:05  9  again arrested by authorities after the license number of the
09:05 10  automobile in which he obtained a ride was noticed by a janitor
09:05 11  of the jail."
09:05 12        The third and final page of this document indicates
09:05 13  that "Although a file" -- "the file appears to indicate that
09:05 14  the subject is a member of the AB.  He states that he is no
09:05 15  longer a member."
09:05 16        And again, this document is dated November 8th, 1978.
09:05 17        THE COURT:  That was November 18th, Counsel?
09:05 18        MS. FLYNN:  8th.
09:06 19        THE COURT:  November 8th, 1978?
09:06 20        MS. FLYNN:  Yes.
09:06 21        THE COURT:  All right.  Thank you.
09:06 22        MS. FLYNN:  Exhibit 519 is a Rules Violation Report
09:06 23  from San Quentin dated 10/1/1980, indicating that the specific
09:06 24  act charged is contraband, and it goes on to state that the
`9:06 25  officer -- the officer states, "I found two round metal rods in

09:06   1   a conduit pipe, which is connected to the cell light fixture

09:06   2   box at the rear end of the cell."

09:06   3          The bottom of the document, it indicates that

09:06   4   Mr. Bingham was found guilty.

09:06   5          Exhibit 520 is also a Rules Violation Report dated

09:06   6   October 1st, 1980 in San Quentin, with a specific act charged

09:07   7   "contraband, handcuff key."  The officer writes, "I discovered

09:07   8   a handcuff key wrapped in tape and covered with tobacco.  Said

09:07   9   key was wedged between the bunk and cell wall."

09:07   10         The bottom of the document indicates that Bingham was

09:07   11  found guilty.

09:07   12         Exhibit 521 is entitled "Supplemental Report to

09:07   13  Parolee at Large," report dated 11/30/81, and supplemental

09:07   14  report of 5/16/84.  It states, "On November 17th, 1981, an

09:08   15  emergency action was taken by the Board of Prison Terms to

09:08   16  suspend the subject's parole, effective November 1st, 1981.

09:08   17  This emergency action was later confirmed by the board of

09:08   18  prison terms.  Subject's whereabouts were unknown at the time.

09:08   19  His at-large status was again confirmed by the Board of Prison

09:08   20  Terms on May 23rd, 1983."

09:08   21         Exhibit 522 is the Judgment and Probation Commitment

09:08   22  Order for Tyler Davis Bingham, showing that he pled guilty to

09:09   23  Counts 2 and 3 of the Indictment, which alleged "On or about

09:09   24  June 6th, 1985, in the Western District of Texas, defendant, by

09:09   25  force and violence and by intimidation, did take from Shirley

09:09   1   Birchfield approximately $12,844 belonging to and in the care,

09:09   2   custody and control, management and possession of Inter First

09:09   3   Bank, Odessa N.A., the deposits of which were insured by the

09:09   4   FDIC."

09:09   5          It goes on to state that "The defendant did assaults

09:09   6   and put in jeopardy the life of Shirley Birchfield by means and

09:09   7   use of a handgun, and defendant did knowingly and willfully and

09:09   8   unlawfully carry a firearm during the commission of the bank

09:09   9   robbery."

09:10   10         Exhibit 523 is the Presentence Report for Tyler Davis

09:10   11  Bingham prepared for his conviction for bank robbery and

09:10   12  carrying a firearm during the commission of the felony.  A

09:10   13  summary of the facts is listed on page 3, in which it states

09:10   14  that "The FBI investigation determined the gunman to be Tyler

09:10   15  Davis Bingham and the driver of the automobile to be Antonio

09:10   16  Martinez Rivera."

09:10   17         It also goes on to indicate on page -- it's marked

09:10   18  page 3 in the top corner, but it's page 4 of all of the

09:11   19  documents.  It says "Defendant's version:  He admits he robbed

09:11   20  the Interstate Bank of approximately $12,000 on June 6th,

09:11   21  1985."

09:11   22         THE COURT:  Just one moment, Counsel.

09:11   23         Is this page 4 at the top?

09:11   24         MS. FLYNN:  It's actually page 3, your Honor, but it's

09:11   25  the fourth page, if you count from the beginning, and it's near

09:11  1    the bottom, it says "defendant's version."

09:11  2            THE COURT:   Thank you.

09:11  3            So it's the fourth page in, marked page 3 at the top,

09:11  4    though?

09:11  5            MS. FLYNN:   Yes.

09:11  6            THE COURT:   Thank you.

09:11  7            MS. FLYNN:   The document goes on to layout

09:11  8    Mr. Bingham's history and personal information.  It states on

09:12  9    page 8 -- page 8 at the top, 9 total -- that "Bingham advised

09:12  10   the probation officer he reverted to the use of heroin because

09:12  11   he was not working full time, which brought about financial

09:12  12   problems.  He said not being able to support his wife and three

09:12  13   children and meet his financial responsibilities lead him to

09:12  14   feeling sorry for himself and becoming depressed."

09:12  15           Exhibit 524 is a staff summary regarding Mr. Bingham's

09:12  16   conviction for bank robbery and carrying a firearm.  It

09:12  17   contains the description of the offense, summary of

09:12  18   Mr. Bingham's record and evaluation of Mr. Bingham's social

09:13  19   situation as of October 9th, 1985, the date of the document.

09:13  20           525 is the Indictment against Mr. Bingham for a

09:13  21   violation of 18 USC Section 113(a), which is an assault with

09:13  22   the intent to commit murder.  It alleges that "On October 23rd,

09:13  23   1985 at USP Lompoc, Defendant Tyler Davis Bingham did assault

09:13  24   Gary Lee Evilsizer with intent to commit murder.  At said time

09:13  25   and place, Defendant Richard Chris Burt aided and abetted the

CR 02-938(E)-DOC          August 29, 2006                    18

```
09:13   1    commission of the above offense."
09:14   2           Exhibit 526 are the Criminal Minutes showing that "On
09:14   3    June 3rd, 1988, Bingham pled guilty to Count 2 of the
09:14   4    Indictment, assault with intent to commit murder."
09:14   5           And Exhibit 527 is a three-page document containing
09:14   6    the Judgment and Probation Commitment Order for his plea of
09:14   7    guilty for assault with the intent to commit murder.
09:14   8           THE COURT:  All right.  Just one moment, please.
09:14   9           Thank you.
09:15  10           MS. FLYNN:  Exhibit 528 is the presentence report
09:15  11    prepared for Tyler Davis Bingham for his conviction for assault
09:15  12    with intent to commit murder.  In the document it summarizes
09:15  13    his criminal history, and it indicates that his co-defendant
09:15  14    pled guilty to possessing a weapon, specifically a knife at USP
09:15  15    Lompoc, and it indicates that Mr. Bingham pled guilty to
09:16  16    assaulting the victim, Gary Evilsizer, with the intent to
09:16  17    commit murder while Mr. Burt, his co-defendant, allegedly aided
09:16  18    and abetted.
09:16  19           On page 6, at the bottom, there is a paragraph that
09:16  20    states, "Mr. Bingham was designated" -- actually, let me back
09:16  21    up.
09:16  22           It indicates and summarizes his criminal history.  It
09:16  23    lists his June 1985 conviction for bank robbery, and underneath
09:16  24    that it explains, "Mr. Bingham was designated to the United
09:16  25    States Penitentiary at Lompoc, California, and arrived there in
```

CR 02-938(E)-DOC        August 29, 2006                    19

```
09:16   1   late September of 1985.  He remained there only until this
09:16   2   incident occurred, October 23rd, 1985, and was then segregated
09:16   3   and redesignated to the United States Penitentiary at Marion."
09:17   4        Exhibit 529 is an incident report for USP Lompoc dated
09:17   5   January 24th, 1986 for assaulting a staff member.  It states
09:17   6   that "Inmate Bingham started urinating through the screen down
09:17   7   on me," which was written by J. Humble, a correctional officer.
09:17   8        THE COURT:  Just one moment, Counsel.
09:18   9        All right.  Thank you.
09:18  10        MS. FLYNN:  On page 3 of Exhibit 529, it indicates
09:18  11   that the findings of the disciplinary committee was that the
09:18  12   act was committed as charged.
09:18  13        Exhibit 530 is an Institution Discipline Committee
09:18  14   Report for USP Lompoc dated February 23rd, 1986 for a charge of
09:18  15   assault.
09:19  16        On page 1, there is a summary of the inmate's
09:19  17   statement.  "Inmate stated that 'I certainly did that.'  He
09:19  18   further stated that he was upset because the officer did not
09:19  19   bring the phone down."
09:19  20        And on page 2, it indicates that the findings of the
09:19  21   committee were that the act was committed as charged.
09:19  22        Pages 3 and 4 of Exhibit 530 are the Incident Reports
09:19  23   describing what happened.  Officer Ralph Rogas wrote, "While
09:19  24   this officer was doing rounds in the lower I Unit, I was called
09:19  25   to cell L-2 by Inmate Bingham.  He said that, quote, 'You are a
```

```
09:19   1   punk motherfucker,' end of quote, and then spit on this
09:19   2   officer's face.  The inmate was mad because he only received
09:19   3   his allotted time on the phone."
09:20   4          Exhibit 531 is another Institution Discipline
09:20   5   Committee Report for possession of intoxicants, March 14th,
09:20   6   1986, which was for possessing brew in his cell.
09:20   7          Exhibit 532 is another Institution Discipline
09:20   8   Committee Report at USP Lompoc, March 30th, 1986, a charge of
09:20   9   being unsanitary.  Findings of the committee on page 2 were
09:20  10   that the act was committed as charged.
09:21  11          And on page 3 and 4 it contains the incident report
09:21  12   describing what happened.  Officer R.H. Dimmet wrote, "Inmate
09:21  13   Bingham threatened to flood lower I Unit at 9:00 a.m. on
09:21  14   March 30th, 1986 if he did not use the phone, quote, 'now.'
09:21  15   The phone was scheduled to be in lower I Unit at 3:00.  At
09:21  16   1:30 p.m., Inmate Bingham flooded his cell in lower I Unit."
09:21  17          Exhibit 533 is a document -- a Department of Justice,
09:21  18   Bureau of Prisons System document entitled "Notification of
09:21  19   Central Inmate Monitoring," CIM, "Classification or
09:22  20   Declaration."  It's for Tyler Davis Bingham.  It's dated
09:22  21   June 20th, 1986, and it indicates that his CIM assignment, his
09:22  22   classification, was as of a disruptive group member of the
09:22  23   Aryan Brotherhood.
09:22  24          Exhibit 534 is an Institution Discipline Committee
09:22  25   Report at FCI Terminal Island dated November 23rd, 1987,
```

CR 02-938(E)-DOC          August 29, 2006                    21

09:22  1  indicating that "On December 7th, 1987, this inmate's urine

09:23  2  tested positive for morphine."  And that the second page finds

09:23  3  that the act was committed as charged.

09:23  4         Exhibit 535 is an incident report dated September

09:23  5  23rd, 1990, with an allegation of fighting with another person,

09:23  6  and the finding, in the middle towards the bottom, it's in box

09:23  7  number 18, it states "It's the finding of this committee that

09:23  8  you committed the following prohibited act."

09:24  9         Exhibit 536 and 537 -- I will put them on the

09:24  10 screen -- are both Discipline Hearing Officer Reports from

09:24  11 Leavenworth, Kansas, dated October 8th, '91 for 536, and

09:24  12 October 22nd, '91 -- I'm sorry if I said -- it's October 8th,

09:24  13 '91 for Exhibit 536, and October 22nd, '91 for 537.  They both

09:24  14 charge possession introduction of use of narcotics, and Bingham

09:24  15 was found to have committed both of those acts.

09:24  16        And finally Exhibit 538 is also a Discipline Hearing

09:24  17 Officer Report from Leavenworth, Kansas, dated April 22nd,

09:24  18 1992, and this was for refusing a urine sample, and he was

09:24  19 found to have committed that act as charged.

09:25  20        The government would move to admit Exhibits 500

09:25  21 through 538.

09:25  22        MR. WHITE:  No objection.

09:25  23        THE COURT:  They are received at this time.

09:25  24        (Plaintiff's Exhibit numbers 530 through 538 are

09:25  25 received into evidence.)

CR 02-938(E)-DOC          August 29, 2006                    22

```
09:25   1              THE COURT:  All right.  Counsel?

09:26   2              MR. WOLFE:  Your Honor, may I ask whether we might

09:26   3   take a break early this morning?

09:26   4              THE COURT:  Well, I was going to suggest that.  I

09:26   5   think this would be an appropriate time for all parties.

09:26   6              Why don't we take a break at this time, and we are

09:26   7   going to give you a half-hour break.

09:26   8              You are admonished not to discuss this matter

09:26   9   amongst yourselves, nor form or express any opinion concerning

09:26  10   this case.  Have a nice recess.

09:26  11              (The following proceedings is taken outside the

09:26  12   presence of the jury.)

09:26  13              THE COURT:  The jury is no longer present.  All

09:27  14   counsel, the defendants, the government is present.

09:27  15              I assume you are going to go into Mr. Bingham's

09:27  16   background next?

09:27  17              MR. WOLFE:  Mr. Mills, yes, your Honor.

09:27  18              THE COURT:  I mean, Mr. Mills' background, I'm sorry.

09:27  19              In the documents, you said yesterday that we had

09:27  20   passed through a reference by a probation officer or someone to

09:27  21   the five or six murders that Ms. Blanch mentioned.  Do you know

09:27  22   where that document is?

09:27  23              MR. WOLFE:  Yes, your Honor.  It's Exhibit 552.  It's

09:27  24   on the last page.

09:27  25              THE COURT:  552, thank you.
```

CR 02-938(E)-DOC          August 29, 2006                          23

```
09:28   1        Refresh my recollection.  This states that Mr. --
09:28   2  strike that.  I am going to quote, "Mills, a 33-year-old white
09:28   3  male is before the Court for conspiracy to commit murder and
09:28   4  murder.  Mills has refused to talk with the writer, and
09:28   5  therefore, the writer does not have any personal feelings,
09:28   6  negative or positive, concerning this individual.  However, the
09:28   7  investigative report does reflect that Mills is considered a
09:28   8  danger to society.
09:28   9        "Investigating authorities indicate that Mills had
09:28  10  been investigated for at least six other murders committed at
09:28  11  the Atlanta penitentiary, and although there was strong
09:28  12  evidence that he was involved in these murders, there was not
09:28  13  enough evidence to bring him to trial for such" -- "such as
09:28  14  instant offense."  And that's actually the way it's worded.
09:29  15        It goes on to state, so I complete the paragraph,
09:29  16  "Mills' record would indicate that he has no desire to obtain
09:29  17  an acceptable behavior standard in the community.  It would
09:29  18  seem that Mills can only deal with his problems through
09:29  19  violence.  The Criminal Justice System, as it is now
09:29  20  established, may not have the tools needed to deal with this
09:29  21  type of person.  Even it did" -- "even it" -- strike that.
09:29  22        "Even it it did" -- that's the way it literally
09:29  23  reads -- "it would not appear that Mills is ready to make a
09:29  24  change in his behavior.  Prognosis is very Poor."
09:29  25        In yesterday's statement, Mr. Fleming, Ms. Blanch,
```

CR 02-938(E)-DOC          August 29, 2006                    24

```
09:29   1   could you refresh the Court with exactly the words used?  Was
09:29   2   it that Mr. Mills had committed six other murders or that
09:30   3   Mr. Mills had been investigated for six other murders?
09:30   4          And Ms. Blanch, is this the basis for your opening
09:30   5   statement?
09:30   6          MS. BLANCH:  It is, your Honor, and what I said in the
09:30   7   opening statement --
09:30   8          THE COURT:  Okay.
09:30   9          MS. BLANCH:  -- was that the probation officer wrote
09:30  10   that officials at USP Atlanta believed he was involved in the
09:30  11   murders of six additional inmates, but there was never enough
09:30  12   evidence to bring charges.
09:30  13          THE COURT:  Thank you for refreshing my recollection.
09:30  14          I heard that as he had committed six other murders
09:30  15   yesterday, so I'm confused.
09:30  16          MR. FLEMING:  Your Honor, I think you should take a
09:30  17   look at the transcript.  Our recollection is slightly different
09:30  18   from that.
09:30  19          THE COURT:  Well, we are going to look at the
09:30  20   transcript.
09:30  21          MR. FLEMING:  I'm sorry?
09:30  22          THE COURT:  We are going to look at the transcript.
09:30  23          MR. FLEMING:  We haven't received that portion of the
09:30  24   transcript.
09:30  25          THE COURT:  Because we are down to one court reporter.
```

CR 02-938(E)-DOC          August 29, 2006                    25

```
09:30    1    I don't think you are going to yet.  The rest of the court
09:31    2    reporters have fled.
09:31    3              (Laughter.)
09:31    4         THE COURT:  Not because of you gentlemen or the
09:31    5    government.  It's just because they are exhausted.
09:31    6         Jane, we will need to take a look at that portion.
09:31    7         Counsel, why don't we take a recess at this time for
09:31    8    20 minutes.  Why don't we reassemble in 10 minutes and have
09:31    9    that portion literally read back to us by Jane; would that be
09:31   10    acceptable?
09:31   11         MR. FLEMING:  Yes, your Honor.
09:31   12         MR. WOLFE:  Your Honor, I would be discussing this
09:31   13    document after the break.  Am I to assume that it's only that
09:31   14    sentence that your Honor wishes removed --
09:31   15         THE COURT:  Yes.
09:31   16         MR. WOLFE:  -- or is there more?
09:31   17         THE COURT:  Yes.
09:31   18         MR. WOLFE:  May I take the original back and strike
09:31   19    that sentence?
09:31   20         THE COURT:  Yes, but I'm not certain, yet, that you
09:31   21    need to remove that.  That will come as a shock to you.
09:31   22         MR. WOLFE:  I'll wait, your Honor.
09:31   23         THE COURT:  I think you're going to have to remove
09:31   24    that because I don't know -- I think the prejudicial effect
`9:32   25    outweighs the probative value concerning the investigation
```

09:32  1   phase.  I don't think it's even a Crawford issue for me.  It

09:32  2   may be that the paragraph comes in.  It's not a Crawford issue,

09:32  3   and that's counsel's objection to protect Mr. Mills.  I'll make

09:32  4   that objection on his behalf.

09:32  5           My concern is his investigation is going to lead to

09:32  6   the belief that he committed the murders.  The nexus is going

09:32  7   to be awfully strong for the jury.

09:32  8           Now, if you've got separate investigative reports,

09:32  9   that would be very helpful to me.  I can reverse that ruling

09:32 10   very quickly because right now I'm worried about foundation.

09:32 11   I'm worried about what the source of the information was, so

09:32 12   I'd like to be able to go back through those reports again.

09:32 13   And remember, there's a tremendous difference in my mind,

09:32 14   sometimes, compared to a police officer or corroborating

09:33 15   evidence where I'm having trouble, and the reason we got that

09:33 16   Crawford ruling from the Court was it's when -- another inmate,

09:33 17   for instance, and sometimes police officers, but especially --

09:33 18   I'm especially concerned when I get something like "another

09:33 19   inmate unidentified at the present time" or "a confidential

09:33 20   informant," or "an anonymous informant saw Mr. Mills kill," you

09:33 21   know, "Mr. Jones," or whomever.  I'm using Mr. Jones as an

09:33 22   example.

09:33 23           MR. WOLFE:  Your Honor, there is not a thing to back

09:33 24   up this statement, not one thing.

09:33 25           THE COURT:  Okay.  So at least you, in good faith, had

09:33  1    tried to find reports, obviously.  It would be to your benefit.

09:33  2    You haven't found anything to back this up?

09:33  3           MR. WOLFE:  No, your Honor.

09:33  4           THE COURT:  I'm going to strike this paragraph -- or

09:33  5    strike that sentence.  If you have something foundational, I'll

09:33  6    certainly consider it, try to see if there's corroboration in

09:34  7    it.  But otherwise, I don't know where that comes from, and I

09:34  8    think the prejudicial effect outweighs the probative value.  So

09:34  9    you can strike that sentence.

09:34  10          MR. WOLFE:  Very well, your Honor.

09:34  11          THE COURT:  Now, that leaves back on your shoulders,

09:34  12   Mr. Fleming and Mr. Steward, you know, what you want to do.

09:34  13   I'm giving you the first option to suggest to the Court.  I

09:34  14   don't know if you want to try to unring the bell, leave the

09:34  15   bell rung, ignore it, gloss over it with the instruction, of

09:34  16   course, that "opening statements are not evidence, that all the

09:34  17   evidence you hear comes" -- those are uniquely your choices.

09:34  18          As far as the mistrial is concerned, I'm denying it.

09:34  19   This can be cured by curative instructions, and I am not

09:34  20   finding that this is intentional.  This is inadvertent, as far

09:34  21   as the Court's concerned, and if it is error, my view is it's a

09:34  22   timeless error.

09:34  23          With the number of murders, Ms. Blanche, in this case,

09:34  24   17 murders or attempted murders, you referred to this

09:35  25   accurately from the report.

CR 02-938(E)-DOC        August 29, 2006                    28

```
09:35   1           MS. BLANCH:  Thank you, your Honor.
09:35   2           THE COURT:  Do you want time to think about that?
09:35   3           MR. STEWARD:  Well, I want to make one thing real
09:35   4   clear.  When the Court says it wasn't intentional, what does
09:35   5   the Court mean by that?
09:35   6           THE COURT:  Well, it means, apparently, that this was
09:35   7   in the report, and all of us overlooked it.
09:35   8           MR. STEWARD:  Okay.  Well, what I want to make really,
09:35   9   really clear about is that government counsel has represented
09:35  10   to me that they discussed this issue in advanced of her opening
09:35  11   statement yesterday, and they jointly decided it was okay to
09:35  12   make that statement.  Now, I've got a declaration I'm going to
09:35  13   file here at 10:00 --
09:35  14           THE COURT:  Okay.
09:35  15           MR. STEWARD:  -- to that effect, so --
09:35  16           THE COURT:  Wait just a moment.  They discussed this
09:35  17   with you?
09:35  18           MR. STEWARD:  Yes, yesterday.
09:35  19           THE COURT:  No, no, no, no.
09:35  20           MR. STEWARD:  No, no, no.  I'm sorry.  I'm confused.
09:35  21           They discussed it amongst themselves and told me later
09:35  22   that they had discussed it.  It seems to us --
09:35  23           THE COURT:  Okay.  Was this before the opening
09:36  24   statement?  When did you have this conversation?
09:36  25           MR. STEWARD:  No, no.  Well after.  Well after.
```

CR 02-938(E)-DOC          August 29, 2006                    29

09:36  1              THE COURT:  Now, just a moment.  You are going to have
09:36  2    to slow down.  We are going to go through this piece by piece.
09:36  3    I don't understand.
09:36  4              Yesterday, about 3:00 or 2:30, the government made an
09:36  5    opening statement.  In that opening statement, they accurately
09:36  6    rendered what's on page 4.  You say that the government
09:36  7    discussed this before they made an opening statement and
09:36  8    decided to make the opening statement with this in the opening
09:36  9    statement, and then they discussed it with you after?  They
09:36  10   made a statement to you of some type?
09:36  11             MR. STEWARD:  To be clear, let me read my declaration;
09:36  12   may I do that?
09:36  13             THE COURT:  Thank you.
09:36  14             MR. STEWARD:  Okay.  "I, H. Dean Steward, declare,
09:36  15   one, that I am one of two appointed counsel for Defendant Barry
09:36  16   Byron Mills; two, I make this declaration regarding the
09:36  17   government's statements about AUSA Blanch's opening statement
09:36  18   in the penalty phase of this trial.  In that opening, she told
09:37  19   the jury that Barry Mills was thought to have been responsible
09:37  20   for" --
09:37  21             And as an aside, I thought that's what she said.
09:37  22             Continuing:
09:37  23             -- "for at least six other murders at USP Atlanta.
09:37  24   Mr. Mills was never charged in any of these alleged incidents.
09:37  25             "Three, this statement came from discovery at BBM 284,

CR 02-938(E)-DOC          August 29, 2006                    30

09:37  1   a page in an old presentence report.  It is not attributed to

09:37  2   anyone except, quote, 'investigating authorities,' end of

09:37  3   quote, nor are there any other circumstances given.  I attach

09:37  4   that page of the PSR as Exhibit A to my declaration."

09:37  5          THE COURT:  Before you continue reading, because these

09:37  6   aren't marked, is BBM 2- --

09:37  7          MR. WOLFE:  84.

09:37  8          THE COURT:  -- -84, is that the page I'm looking at?

09:37  9          MR. STEWARD:  Yes, your Honor.

09:38 10          THE COURT:  Okay.  Because it doesn't have a mark at

09:38 11   the bottom.  BBM --

09:38 12          MR. WOLFE:  I should add, it appears twice, it is both

09:38 13   BBM 71 and BBM 284, and I believe what your Honor is looking at

09:38 14   is BBM 71, but the pages are identical.

09:38 15          THE COURT:  All right.  Thank you.

09:38 16          MR. STEWARD:  "Number four, approximately one hour

09:38 17   before the start of the penalty phase today" -- that was

09:38 18   yesterday -- "the defense was given two thick government

09:38 19   exhibit books.  AUSA Flynn represented to co-counsel Fleming

09:38 20   and I that she had, quote, 'taken out all of the things that

09:38 21   the Court had ruled on,' end of quotes.

09:38 22          "Number five, out of an abundance of caution,

09:38 23   Mr. Fleming began reviewing the two books.  They contained 40

09:38 24   to 50 multi-page exhibits, totaling perhaps 600 pages.  Almost

9:38 25   immediately, Mr. Fleming located a reference that remained in

CR 02-938(E)-DOC          August 29, 2006                    31

09:38  1   one of the exhibits that all parties agree was stricken" --

09:39  2         THE COURT:  Now, what was that?

09:39  3         MR. STEWARD:  I'm getting there.

09:39  4         THE COURT:  Okay.

09:39  5         MR. STEWARD:  "The passage has to do with an

09:39  6   allegation that Mr. Mills and other youths had forced a fellow

09:39  7   CYA ward to orally copulate them."

09:39  8         THE COURT:  I already ruled on that, that the

09:39  9   prejudicial effect outweighed the probative value.

09:39  10        MR. STEWARD:  "That passage was also from an old

09:39  11  presentence report.  Ms. Flynn said that she would make sure

09:39  12  that the passage was removed before the government moved for

09:39  13  the admission of the government.

09:39  14        "Number six, after Ms. Blanch made the statement in

09:39  15  her opening about, quote, 'six other murders,' end of quote,

09:39  16  the defense immediately and strongly objected.  At the first

09:39  17  opportunity, the defense also made a motion for a mistrial of

09:39  18  the penalty phase.

09:39  19        "Seven, during the break thereafter, I spoke with

09:39  20  Ms. Blanch.  Ms. Flynn and Mr. Emmick were present.  Ms. Blanch

09:40  21  told me that the prosecutors in this matter had discussed her

09:40  22  statement about the, quote, 'six other murders,' end of quotes,

09:40  23  and Mr. Mills.  They had decided earlier that morning that the

09:40  24  assertion was appropriate for her to make in opening

09:40  25  statement."  Then I put, "I declare under penalty of perjury."

CR 02-938(E)-DOC          August 29, 2006                    32

09:40  1          THE COURT:  All right.  My suggestion is this:  Let's

09:40  2  get the accurate statement read back to us, so none of us are

09:40  3  guessing.  I'm going to ask Jane to do that.

09:40  4          My suggestion is, though, that we go forward with the

09:40  5  striking of this so that you can present Mr. Mills' history,

09:40  6  and we can resolve this literally over the lunch hour or the

09:40  7  latter part of the day.

09:40  8          Now, Mr. Steward, I'm at your disposal.  What would

09:40  9  you like to do?

09:40  10          MR. STEWARD:  Proceed the way the Court just

09:40  11  suggested.  We do have -- we continue to make our motion for

09:40  12  the mistrial, but we have some suggested -- a suggested

09:41  13  curative instruction.  We don't think it really cures it, but

09:41  14  it's the best we can do.

09:41  15          THE COURT:  By me asking you for the curative

09:41  16  instruction, I want the record to reflect that this in no way

09:41  17  waives your request for a mistrial.  After having denied your

09:41  18  request for the mistrial, it's only then, and still adamantly

09:41  19  objected in requesting a mistrial, that you are submitting a

09:41  20  curative instruction.  That way there's no confusion that

09:41  21  you've waived any of your rights upon appellate review, okay?

09:41  22          MR. STEWARD:  Thank you, your Honor.

09:41  23          THE COURT:  Now, why don't we take a break while we

09:41  24  can.  And if this is the case, when we trade court reporters

09:41  25  this afternoon, Jane can go down and find that transcript, so

CR 02-938(E)-DOC          August 29, 2006                    33

| | | |
|---|---|---|
| 09:41 | 1 | she can have a break right now, also, and then we'll read that |
| 09:41 | 2 | back after the jury leaves; is that acceptable? |
| 09:41 | 3 | MR. WOLFE:  Yes, your Honor. |
| 09:41 | 4 | THE COURT:  Okay. |
| 09:41 | 5 | MR. WOLFE:  But may I add something more in response |
| 09:41 | 6 | to Mr. Steward's statement? |
| 09:42 | 7 | THE COURT:  Certainly. |
| 09:42 | 8 | MR. WOLFE:  I believe that's accurate, it leaves out |
| 09:42 | 9 | an awful lot.  The things it leaves out are the discussion |
| 09:42 | 10 | among the prosecutors prior to the inclusion of that sentence |
| 09:42 | 11 | in the opening statement was, "Are we sure that that's okay?" |
| 09:42 | 12 | and the Court allowed it.  We discussed it and decided that it |
| 09:42 | 13 | was because Mr. Fleming went through this document, Exhibit |
| 09:42 | 14 | 552, page, by page, by page on August 10th before your Honor, |
| 09:42 | 15 | and he did not raise an objection to anything on this page. |
| 09:42 | 16 | Yesterday, the 600 pages that are so strenuously |
| 09:42 | 17 | emphasized as having been given to the prosecutor and the |
| 09:42 | 18 | defendants at the last minute, include Exhibit 552 in the first |
| 09:42 | 19 | 20 pages and -- |
| 09:42 | 20 | THE COURT:  I'm sorry.  Just a moment.  No, not so |
| 09:42 | 21 | fast.  Say that again.  I didn't hear the last portion.  I'm |
| 09:43 | 22 | sorry.  I heard it, but I didn't understand it. |
| 09:43 | 23 | Yesterday -- |
| 09:43 | 24 | MR. WOLFE:  The dispute -- |
| 09:43 | 25 | THE COURT:  Yesterday you got documents from the |

CR 02-938(E)-DOC        August 29, 2006                    34

09:43  1  defense?

09:43  2          MR. WOLFE:  No, no, your Honor.  We gave these

09:43  3  exhibits to the defense yesterday morning --

09:43  4          THE COURT:  All right.

09:43  5          MR. WOLFE:  -- prior to opening --

09:43  6          THE COURT:  Thank you.

09:43  7          MR. WOLFE:  -- and Mr. Steward's declaration says it's

09:43  8  600 pages, the implication being, "How can we possibly catch

09:43  9  the errors?"  But this disputed page is in the first 20 pages

09:43  10 of the 600 --

09:43  11         THE COURT:  I see.

09:43  12         MR. WOLFE:  -- and moreover, the one instance that

09:43  13 Mr. Steward is carefully to insert in his declaration that they

09:43  14 corrected is in this document.  They read this document --

09:43  15         MR. STEWARD:  Objection, your Honor, to Counsel's

09:43  16 tone.  I'm getting really tired of it.

09:43  17         THE COURT:  Well, that's fine.

09:43  18         No, no.  Both of you.

09:43  19         MR. WOLFE:  Very well, your Honor.

09:43  20         Mr. Fleming passed this document in a hearing on

09:43  21 August 10th before your Honor.  He objected to -- the document

09:44  22 consists of pages 64 through 71, and 71 is the disputed page.

09:44  23 Mr. Fleming objected to page 65.  He objected to page 66.  He

09:44  24 objected to page 67.  He objected to page 69.  He went back and

09:44  25 objected again to page 66.  He went back and objected again to

CR 02-938(E)-DOC          August 29, 2006                    35

09:44  1    page 65.  He went back and objected again to page 71.  No

09:44  2    objection was made -- I'm sorry, page 67.  No objection was

09:44  3    made to this page, ever, and we went on to the next document.

09:44  4          Yesterday, when the government gave all of the

09:44  5    exhibits to defense counsel, Mr. Fleming raised an objection to

09:44  6    the inclusion of the statement about the defendant having

09:44  7    committed or forced oral copulation while he was in juvenile

09:45  8    custody.  That's at page BBM 66.  He did not say anything about

09:45  9    page BBM 71.

09:45  10          Your Honor allowed a number of evaluative statements

09:45  11    in this document, in the post-sentence report for the

09:45  12    defendant's conviction for bank robbery in the California

09:45  13    Parole Authority documents from the '70s.  The government

09:45  14    asked, "Did the Court mean that we were allowed to discuss

09:45  15    this?"  We looked at the document.  No objection had been

09:45  16    raised to the page, ever.  It is an evaluative statement that

09:46  17    the Court repeatedly allowed over objection, and the government

09:46  18    decided that, therefore, the Court's ruling was that it was

09:46  19    allowed.  If we are mistaken, we would be happy to do anything

09:46  20    that the Court believes is proper to remedy it, but we will not

09:46  21    sit still for the suggestion that we deliberately went against

09:46  22    the Court's order in letter or in spirit.

09:46  23          THE COURT:  Yeah.

09:46  24          MR. FLEMING:  Your Honor, may I just briefly respond

9:46  25    to what Mr. Wolfe said?

CR 02-938(E)-DOC          August 29, 2006                    36

09:46  1          THE COURT:  Well, certainly.

09:46  2          MR. FLEMING:  Thank you.

09:46  3          THE COURT:  Now, can I suggest to both of you, though,

09:46  4   in the heat of passion that the both of you are engaging in,

09:46  5   that you both wait so you have a complete record?  In other

09:46  6   words, we can take hours with this.  The real difficulty for

09:46  7   the Court at the present time is how we're going to proceed,

09:46  8   and at the present time, I'm going to strike this.  I will

09:46  9   listen to your arguments again about why this should be

09:47 10   included, why it shouldn't be included, I'll make a more

09:47 11   complete record on this, and you can voice your objections for

09:47 12   hours in the evening.

09:47 13          So can you, Counsel, you can build your record back,

09:47 14   in other words.

09:47 15          But in terms of getting the jury back and then getting

09:47 16   Mr. Mills' case on today, because I assume you have witnesses

09:47 17   scheduled coming today also, can I suggest to you that it may

09:47 18   make a difference to the Circuit, but it probably doesn't make

09:47 19   much of a difference to the jury?  Number one, the statement is

09:47 20   going to be relatively lost if there is nothing to back it up,

09:47 21   and the tough choice you are going to have to make is if you

09:47 22   want to unring the bell or not.

09:47 23          So while I'll give each of you a full and complete

09:47 24   record, you can file affidavits, you can build your record for

09:47 25   appellate purposes, you can respond to the defense, really, for

09:47  1  the next two or three hours today, it's something that we can

09:47  2  do, literally, at 2:00 or 3:00 this afternoon.

09:47  3          But, Mr. Fleming, you can respond.

09:48  4          MR. STEWARD:  Why don't you wait.

09:48  5          MR. FLEMING:  I think we'll wait until 2:00 or 3:00

09:48  6  this afternoon.

09:48  7          THE COURT:  Because that way you've got, I mean,

09:48  8  literally the rest of the day, tonight, you know, to build your

09:48  9  record.

09:48  10         MR. FLEMING:  That's fine.

09:48  11         THE COURT:  Mr. Steward --

09:48  12         MR. STEWARD:  That's fine, your Honor.

09:48  13         THE COURT:  -- I encourage you to file the affidavit.

09:48  14  Look at it again and make sure it's complete, as far as you're

09:48  15  concerned.  You can respond to the affidavit in writing, you

09:48  16  can, you can respond orally.  But going back and forth, it's

09:48  17  going make each of you lose your focus today, and there's only

09:48  18  one important focus, and that's what's happening in front of

09:48  19  this jury.  That's it for both of you, so --

09:48  20         Now, I'm subject to your disposal.

09:48  21         Mr. Fleming, I want to make sure if you want to

09:48  22  continue on, I'll be more than happy to entertain that.  In

09:48  23  fact, I can keep the jury back there as long as we need.

09:48  24         MR. FLEMING:  We can discuss it this afternoon, your

'9:48  25  Honor, just -- just to state that Mr. Wolf's interpretation of

```
09:48   1   what happened yesterday is not exactly what happened.
09:48   2            THE COURT:  Okay.  And I'm going to give you all the
09:49   3   time you want.  In fact, I'd prefer it in writing, and I think
09:49   4   your client would prefer to have it in writing.
09:49   5            MR. FLEMING:  Yeah, I think everything needs to be
09:49   6   done on the record and in writing, that's fine.
09:49   7            THE COURT:  And Mr. Steward, I'm glad to entertain any
09:49   8   argument, back and forth, between you and Mr. Wolfe.  I think
09:49   9   the motions are healthy for both of you out of the presence of
09:49  10   the jury, you've gotten that out of the way, and now you need
09:49  11   to get focused on your respective cases.  But if you want to
09:49  12   continue on now, Mr. Steward, I'll be glad to entertain any
09:49  13   response.
09:49  14            MR. STEWARD:  I'm fine, your Honor.
09:49  15            THE COURT:  Okay.  This doesn't concern you,
09:49  16   Mr. White, at the present time, or Mr. Harris, but if you have
09:49  17   anything to add, you are more than welcome to.
09:49  18            MR. WHITE:  (No audible response.)
09:49  19            MR. HARRIS:  (No audible response.)
09:49  20            THE COURT:  Okay.  Mr. Wolfe, is there anything else
09:49  21   you'd like to add, or Mr. Emmick?
09:49  22            MR. WOLFE:  I'd like to make sure the preceding
09:49  23   sentence also refers to "The investigative report does reflect
09:49  24   that Mills is considered a danger to society."  Does your Honor
09:49  25   wish to have that sentence stricken?
```

| 09:49 | 1 | THE COURT:  No.  That remains. |

09:49  1    THE COURT:  No.  That remains.

09:49  2    MR. WOLFE:  Then I'll make the correction, your Honor,

09:49  3  in the original.

09:49  4    THE COURT:  Yeah.  Now, that doesn't mean that I won't

09:50  5  reconsider that.  I am just banning that at the present time so

09:50  6  you don't read that, and my only concern isn't necessarily on

09:50  7  Crawford grounds, here.  It's on the lack of foundation, and

09:50  8  the prejudicial effect appears, to me, to outweigh the

09:50  9  probative value.  So I think the safe course of conduct is to

09:50  10  keep the government moving along, and then to get to Mr. Mills'

09:50  11  case today, because I think you told me that you've subpoenaed

09:50  12  a number of witnesses who are going to be standing out in the

09:50  13  hallway shortly, that we can always come back to this tomorrow,

09:50  14  or later even today and discuss over lunchtime.

09:50  15    Then why don't we do this:  Why don't we take about 15

09:50  16  minutes so you can use the restroom, and we'll see you in 15

09:50  17  minutes, okay?

09:50  18    Jane, take a break.

10:12  19    (Recess.)

10:12  20    (The following proceedings is taken outside the

10:12  21  presence of the jury.)

10:12  22    THE COURT:  All right.  We are back in session.  The

10:12  23  defendants are present, the defense counsel and the government

10:12  24  counsel.

0:12  25    Is there anything further?  I want to make certain no

CR 02-938(E)-DOC          August 29, 2006                    40

10:12   1    one feels rushed, that you're not simply taking my suggestion

10:12   2    because I made it, to make a more complete record this

10:12   3    afternoon, and if you are not satisfied with waiting, we'll

10:12   4    resolve it now, and the jury can wait.

10:12   5            Mr. Fleming?

10:12   6            MR. FLEMING:  We can wait.

10:12   7            THE COURT:  Mr. Steward?

10:12   8            MR. STEWARD:  I agree, your Honor.

10:12   9            THE COURT:  All right.  Mr. Wolfe?

10:12  10            MR. WOLFE:  Your Honor, may I ask once more about that

10:12  11    sentence?  I am not paying close enough attention again.

10:12  12            The introductory sentence, "However, the investigative

10:12  13    report does reflect that Mills is considered a danger to

10:12  14    society," is that to be in the document or stricken?

10:13  15            THE COURT:  The reason it remains is because it

10:13  16    explains the paragraph or the sentence preceding that.  It

10:13  17    doesn't make any sense without that sentence, frankly.

10:13  18            MR. WOLFE:  Very well, your Honor.

10:13  19            THE COURT:  So Mr. Mills has a complete record, the

10:14  20    objection, I assume, would be, Mr. Fleming, that we don't know

10:14  21    what this investigative report is that's being referred to.  In

10:14  22    other words, it could be something we already have.  It could

10:14  23    be an entirely anonymous document.  Therefore, the foundational

10:14  24    aspects may be suspect.  My view is that the investigative

0:14  25    report that's -- but I'm not certain of that at all.

CR 02-938(E)-DOC          August 29, 2006                    41

10:14  1             MR. FLEMING:  That is our objection, your Honor.

10:14  2             THE COURT:  Okay.  I am going to allow the sentence.

10:14  3             All right.  If you would be kind enough to summon the

10:14  4  jury, please.

10:14  5             By allowing the sentence -- it's the sentence that

10:14  6  precedes the sentence that's going to be stricken -- "The

10:14  7  investigating authorities indicate that Mr. Mills has been

10:14  8  investigated for at least six other murders committed at the

10:15  9  Atlanta Penitentiary," I am simply ruling under 3593, which is

10:15  10 the state standard 352, and sometimes this has been referred to

10:15  11 as a 403, that at least at this juncture, without hearing a lot

10:15  12 of further argument, the prejudicial effect outweighs the

10:15  13 probative value, that the investigation is going to be linked

10:15  14 to actual murders.  There are no foundational documents.  If

10:15  15 there were other investigative reports, I could sort this out

10:15  16 very quickly, but I don't know where this comes from, what the

10:15  17 basis of it is.

10:15  18             Okay.  Kristee?

10:15  19             (The following proceedings is taken in the presence of

10:15  20 the jury.)

10:16  21             THE COURT:  All right.  The jury and alternates are

10:16  22 present.  All counsel, the government, the defense and

10:16  23 defendants are present.

10:16  24             And Mr. Wolfe, your next evidence, please.

0:16   25             MR. WOLFE:  Your Honor, the government offers at this

CR 02-938(E)-DOC          August 29, 2006                    42

```
10:16   1   time the exhibits that were previously discussed by the
10:16   2   parties.  They are numbers 550 through 567.
10:17   3              THE COURT:  Hadn't I -- strike that.
10:17   4          I had already received 568?
10:17   5              MR. WOLFE:  No, your Honor.  I discovered 568 is a
10:17   6   duplicate.  It's a mistake.  That's why I'm omitting the
10:17   7   number.
10:17   8              THE COURT:  Okay.  And let's be certain, 550 through
10:17   9   567; is that correct --
10:17  10              MR. WOLFE:  Yes.
10:17  11              THE COURT:  -- that you are offering?
10:17  12              MR. WOLFE:  Yes.
10:17  13              THE COURT:  And what are duplicates?  Is it just 568?
10:17  14              MR. WOLFE:  568 turns out to be a duplicate of 554.
10:17  15              THE COURT:  All right.  Thank you.
10:17  16          And I had already received 569?
10:18  17              MR. WOLFE:  No, your Honor.  I have a few more to
10:18  18   offer.
10:18  19              THE COURT:  Before you get to the back end of the
10:18  20   book --
10:18  21              MR. WOLFE:  Yes, your Honor.
10:18  22              THE COURT:  -- because I received some yesterday?
10:18  23          All right.  Those will be received at this time, 550
10:18  24   through 567.
 0:18  25   /
```

10:18   1          (Plaintiff's Exhibit Nos. 550 through 567 are

10:18   2   received into evidence.)

10:18   3          MR. WOLFE:   The government offers 569 and 571 through

10:18   4   584.

10:18   5          THE COURT:   569 and 571 --

10:18   6          MR. WOLFE:   Through --

10:18   7          THE COURT:   584?

10:18   8          MR. WOLFE:   Yes, your Honor.

10:18   9          The Court admitted yesterday 585 through 590.

10:18  10          THE COURT:   Thank you very much.   Those are received,

10:19  11   Counsel.

10:19  12          (Plaintiff's Exhibit No. 569 is received into

10:19  13   evidence.)

10:19  14          (Plaintiff's Exhibit Nos. 571 through 584 are

10:19  15   received into evidence.)

10:19  16          MR. WOLFE:   And may I publish some of them at this

10:19  17   time, your Honor?

10:19  18          THE COURT:   You may.

10:19  19          Are you going to start with 550?   If you do, just call

10:19  20   out the exhibit number so the jury have notes, if they are

10:19  21   taking them, or I have a transcript of what's occurring.

10:19  22          MR. WOLFE:   Your Honor, for some, I intend just to

10:19  23   state what they are and not to publish it at this time, if the

10:19  24   Court will allow.

 0:19  25          THE COURT:   Certainly, but just make sure you name the

CR 02-938(E)-DOC          August 29, 2006                    44

| | | |
|---|---|---|
| 10:19 | 1 | exhibit number. |
| 10:19 | 2 | MR. WOLFE:  Yes, your Honor. |
| 10:19 | 3 | THE COURT:  That way people are able to find whatever |
| 10:19 | 4 | you are referring to, and the defense as well. |
| 10:19 | 5 | MR. WOLFE:  Exhibit 550 is a Bureau of Prisons |
| 10:19 | 6 | Progress Report for Defendant Mills dated April 9th, 2002, and |
| 10:19 | 7 | the government does not propose to publish it at this time. |
| 10:19 | 8 | Exhibit 551 is a Bureau of Prisons Classifications |
| 10:19 | 9 | Study for Defendant Mills dated April 13th, 1978. |
| 10:20 | 10 | Exhibit 552 is a Presentence Report from the Northern |
| 10:20 | 11 | District of Georgia, the Atlanta division, for Defendant Mills |
| 10:20 | 12 | upon his conviction for violations of Title 18, Sections 1111 |
| 10:20 | 13 | and 1117, for murder and conspiracy to commit murder of John |
| 10:20 | 14 | Marzloff. |
| 10:20 | 15 | THE COURT:  Just a moment. |
| 10:20 | 16 | So 552 is dated December 3rd, 1981? |
| 10:21 | 17 | MR. WOLFE:  I believe December 14th, 1981, your Honor. |
| 10:21 | 18 | THE COURT:  Okay.  Thank you. |
| 10:21 | 19 | MR. WOLFE:  The second page includes a summary of the |
| 10:21 | 20 | juvenile and adult prior criminal history of Defendant Mills, |
| 10:21 | 21 | which the government will discuss more fully in -- |
| 10:21 | 22 | THE COURT:  Just a moment.  Can I see your copy for |
| 10:21 | 23 | just a moment?  Will you approach and give me that copy you are |
| 10:21 | 24 | referring to? |
| 10:21 | 25 | MR. WOLFE:  Does your Honor wish the original or |

CR 02-938(E)-DOC          August 29, 2006                    45

10:21    1    the --

10:21    2              THE COURT:   Whatever you propose or eventually will

10:21    3    show to the jury.

10:21    4              MR. WOLFE:   (Complied.)

10:21    5              THE COURT:   Thank you very much.   I'll return that to

10:21    6    you.

10:22    7              MR. WOLFE:   And for the Criminal History section,

10:22    8    there is a personal and family data about Defendant Mills, and

10:22    9    the last page is an evaluation section.   The evaluation reads,

10:22    10   the last page of Exhibit 552, "Mills, a 33-year-old white male,

10:22    11   is before the Court for conspiracy to commit murder and murder.

10:22    12   Mills has refused to talk with the writer, and therefore, the

10:22    13   writer does not have any personal feelings, negative or

10:22    14   positive, concerning this individual.   However, the

10:22    15   investigative report does reflect that Mills is considered a

10:22    16   danger to society.

10:22    17             "Mills' record would indicate that he has no desire to

10:23    18   obtain an acceptable behavior standard in the community.   It

10:23    19   would seem that Mills can only deal with his problems through

10:23    20   violence.   Our criminal justice system, as it is now

10:23    21   established, may not have the tools needed to deal with this

10:23    22   type person.   Even if it did, it would not appear that Mills is

10:23    23   ready to make a change in his behavior.   Prognosis is very

10:23    24   poor."

0:23     25             Your Honor, Exhibit 553 is the Post-Sentence Report of

CR 02-938(E)-DOC          August 29, 2006                    46

10:23   1   the Eastern District of California for Defendant Mills'

10:24   2   conviction for armed bank robbery in 1976.

10:24   3           THE COURT:  And that report is dated March 28th, 1978?

10:24   4           MR. WOLFE:  I believe the sentencing date is

10:24   5   March 28th, 1978, your Honor, and the date of preparation, at

10:24   6   the bottom, is December 3rd.  The date of conviction is

10:24   7   December 30th, 1976.

10:24   8           THE COURT:  Okay.  Thank you.

10:24   9           MR. WOLFE:  The Post-Sentence Report includes another

10:24  10   summary of Defendant Mills' criminal history.  On the second

10:25  11   page, the juvenile summary reads, "This defendant is known to

10:25  12   the Sonoma County Juvenile Probation Department.  Records

10:25  13   indicate that Mills, who was expelled from school while in the

10:25  14   ninth grade, at about the same time, he was first arrested for

10:25  15   malicious mischief and burglary.  As a result of this petition,

10:25  16   subject was placed on probation with the juvenile authorities.

10:25  17   His probation was violated when Mr. Mills allegedly ran away

10:25  18   from home and stole an automobile.  While detained in juvenile

10:25  19   hall, on one occasion he escaped.

10:25  20           "During another period of detention in juvenile hall,

10:25  21   the defendant participated with two other youths in an escape

10:25  22   attempt.  Subject was eventually committed to the custody of

10:25  23   the California Youth Authority where reports indicate he

10:26  24   experienced difficulty in adjustment.  He was paroled from the

0:26   25   California Youth Authority in April of 1965, but by August of

```
10:26   1  1965, his parole was revoked for vehicle theft."
10:26   2          The report includes, then, a two-page summary of
10:26   3  Defendant Mills' criminal history in the section on his
10:26   4  personal history.  It concludes with an evaluative summary,
10:26   5  which reads, "This 29-year-old man involved himself in a
10:26   6  serious act of bank robbery.  The product of a chaotic home
10:26   7  environment, he has now evolved into an aggressive violent
10:26   8  criminal.  Mills has progressively involved himself deeper into
10:27   9  drugs and crime.  It appears that he is not amenable to
10:27  10  treatment.  His only spark of achievement has been in a brief
10:27  11  training period for meat cutting.  His records would indicate
10:27  12  that he has no desire to obtain an acceptable behavior standard
10:27  13  in the community.  It would seem that Mills can only deal with
10:27  14  his problems through violence.
10:27  15          "Our criminal justice system, as it is now
10:27  16  established, may not have the tools needed to deal with this
10:27  17  type of person.  Even if it did, it would not appear that Mills
10:27  18  is ready to make any change in his behavior.
10:27  19          (Live reporter switch.)
10:27  20          (Volume II is reported by Debbie Gale.)
       21  /
       22  /
       23  /
       24
       25
```

1                      _CERTIFICATE_

2

3   *I hereby certify that pursuant to Section 753, Title 28 of the*

4   *United States Code, the foregoing is a true and correct*

5   *transcript of the stenographically reported proceedings held in*

6   *the above-entitled matter and that the transcript page format*

7   *is in conformance with the regulations of the Judicial*

8   *Conference of the United States.*

9

10

11   _____          ____8/30/06_____

12   *JANE C.S. Rule, CSR NO. 9316*        Date
     *Federal Official Court Reporter*

13

14

15

16

17

18

19

20

21

22

23

24

25