ORIGINAL

1

FILED
CLERK, U.S. DISTRICT COURT

CENTRAL
BY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE DAVID O. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

             Plaintiff,

   vs.

                       CR-02-938(C)

BARRY BYRON MILLS;         DAY 26, VOL. IV
TYLER DAVIS BINGHAM;
CHRISTOPHER OVERTON
GIBSON; EDGAR WESLEY
HEVLE,
            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

May 11, 2006

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

```
 1    APPEARANCES OF COUNSEL:

 2    For the Plaintiff:

 3    DEBRA W. YANG
      United States Attorney
 4    STEVEN D. CLYMER
      Special Assistant United States Attorney
 5    Chief, Criminal Division
      MICHAEL EMMICK
 6    TERRI FLYNN
      JOEY BLANCH
 7    Assistant United States Attorneys
      1400 United States Courthouse
 8    312 North Spring Street
      Los Angeles, CA  90012
 9    (213) 894-0511

10    For Defendant BARRY BYRON MILLS:

11    H. DEAN STEWARD
      LAW OFFICES OF H. DEAN STEWARD
12    107 Avenida Miramar, Suite C
      San Clemente, CA
13    (949) 481-4900

14    MARK F. FLEMING
      LAW OFFICES OF MARK F. FLEMING
15    433 "G" Street, Suite 202
      San Diego, CA  92101
16    (619) 652-9970

17    For Defendant TYLER DAVIS BINGHAM:

18    MICHAEL  V. WHITE
      LAW OFFICES OF MICHAEL V. WHITE
19    1717 Fourth Street, Third Floor
      Santa Monica, CA  90401
20    (310) 576-6242

21    WILLIAM S. HARRIS
      STEWART & HARRIS
22    1499 Huntington Drive, Suite 403
      South Pasadena, CA  91030
23    (626) 441-9300

24

25
```

3

```
1    For Defendant CHRISTOPHER OVERTON GIBSON:

2    KENNETH A. REED
     LAW OFFICES OF KENNETH A. REED
3    404 West 4th Street, Suite C
     Santa Ana, CA  92701
4    (714) 953-7400

5    For Defendant EDGAR WESLEY HEVLE:

6    BERNARD J. ROSEN
     LAW OFFICES OF BERNARD J. ROSEN
7    1717 Fourth Street, Suite 300
     Santa Monica, CA  90401
8    (310) 451-4577

9    DONALD J. CALABRIA
     LAW OFFICES OF DONALD J. CALABRIA
10   16133 Ventura Boulevard, Suite 600
     Encino, CA  91436
11   (818) 990-0110

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                           INDEX

2                                                    PAGE

3    PLAINTIFF'S
     WITNESS:              DIRECT      CROSS    REDIRECT    RECROSS
4

5    (None)

6    PLAINTIFF'S
     EXHIBITS:                         MARKED              RECEIVED
7
     (None)
8

9    DEFENSE
     WITNESSES:            DIRECT      CROSS    REDIRECT    RECROSS
10
     (None)
11


12   DEFENSE
     EXHIBITS:                         MARKED              RECEIVED
13
     Exhibit 1058-A                                          12
14

15

16

17

18

19

20

21

22

23

24

25
```

1   SANTA ANA, CALIFORNIA; THURSDAY, MAY 11, 2006; 4:15 P.M.

2           (Jury not present.)

3           THE COURT:  We are on the record.  All counsel,

4   the defendants, and the government is present.

5           Ms. Flynn, I have received a packet of material

6   just this moment from you concerning the request I had

7   between 6:00 and 7:00 this evening for information about Mr.

8   Mills' statement.

9           Could you tell me briefly what this says, and then

10  I will read it in just a minute?

11          MS. FLYNN:  Mr. Carpenter has diligently been

12  trying to reconstruct where he got all of the information to

13  write this memo that the warden asked him to write.  Much of

14  of I think the first several pages are the memorandums

15  already provided to the Court.  He relied on those for much

16  of his May 9, 1997, memo.

17          THE COURT:  Let me turn to March 18 for a moment.

18  March 18, 1997, is a memo that I had hadn't seen before.

19          MS. FLYNN:  Oh, actually --

20          THE COURT:  Do you have that in front of you?

21          MS. FLYNN:  Yes.  The Court didn't see it.  I

22  turned it over to defense counsel.  I apologize.

23          THE COURT:  When did they receive this memo?

24          MS. FLYNN:  Last night or yesterday afternoon.

25          THE COURT:  This would indicate that R. Jones, the

1    correctional counselor, is the person who heard Mr. Mills

2    make these statements.

3              MS. FLYNN:  Some of them, yes.

4              THE COURT:  "Mills made the following statements

5    to me regarding programming here at ADX."  Mills speaking,

6    "I was told I was never going to leave ADX because of me

7    being a so-called group leader.  I was also told several of

8    the guys over in the stepdown units were not ever leaving

9    this place also, and this place is going to be become much

10   more restrictive.  You know guys like me never give you all

11   trouble.  We're just trying to program, but if there is no

12   reason to program, then why not be a real jerk.  We have put

13   up with" -- do you have copies of this.

14             MR. FLEMING:  I am reading along.

15             THE COURT:  Mr. White?

16             MR. WHITE:  I do, Your Honor.

17             THE COURT:  Mr. Calabria?

18             MR. CALABRIA:  Yes.

19             THE COURT:  Mr. Reed?

20             MR. REED:  Yes.

21             THE COURT:  We have put up with knuckleheads out

22   in the yard just to make it through the program.  If we are

23   never going to get out, there is no use in putting up with

24   anything.  Look how they have Reneso hung up in H Unit.  I

25   heard Matthews was told he could not be reviewed again for

1   at least a year.  You need to talk to someone to find out

2   exactly what the program is going to be.  You know, we deal

3   with you and the rest of the team on a daily basis, and this

4   change in program is not good.  The wardens and AWs come and

5   go every two years, but it's nothing to them, but someone

6   needs to talk to them to find out what is going on."

7            The next investigative agent is -- I can't read

8   the handwriting -- 329 East 7th.

9            Is that Mr. Carpenter?

10           MR. CARPENTER:  Yes, sir.

11           THE COURT:  So you received -- once again, Mr.

12  Mills then says to Mr. Carpenter, "So you're the second

13  person who hears this."

14           MS. FLYNN:  No, Your Honor.  I actually think it's

15  Brad Anderson.  It says, "Reply to the attention of."  He

16  wrote the memo to Mr. Carpenter.

17           THE COURT:  So Mr. Anderson heard these

18  statements.

19           MS. FLYNN:  Yes.

20           THE COURT:  Then you have Mr. Anderson.

21  Basically, without reading the whole thing, he then made the

22  statement that "We have been ignoring a lot of shit since

23  this place opened on the grounds that we could program out

24  of here, and they were taking away any chance to program and

25  expect us to go lay down in the corner.  That ain't going to

1  happen.  A hack like you that's not going anywhere should

2  take an interest and tell the higher-ups that we need a

3  program because you are the one that has to work here.

4        "If they were going to pull a lot of people out of

5  the stepdown unit and put them in the same spot that he is

6  in that they should offer a program along the lines of K

7  Unit if they couldn't leave."

8        He then made several statements to the effect of

9  "Misery loves company.  If I'm miserable and my associates

10  are miserable, then we're all miserable together."

11        He also made the statement, "This is something

12  your union should be interested in."

13        We have already discussed Lieutenant Gomez's memo,

14  which you have turned over, and the memo of 5/8/97

15  concerning unusual activity in K Unit.

16        Then we will go to Wheeler, which I haven't read

17  yet.  This is the first time I have seen this -- strike

18  that.  This was also turned over.

19        MS. FLYNN:  Yes, Your Honor.

20        THE COURT:  I read that last evening.  Thank you.

21        Now, the next is a summary of a letter.

22        MS. FLYNN:  I can briefly tell you there

23  are several -- I think there are three letters that follow.

24  This page and the following page kind of summarize what

25  those letters contain.

1          THE COURT:  Let me look at this then.  This is

2     February 24, 1997.

3          (Pause in proceedings.)

4          THE COURT:  Now, it's apparent unless

5     Mr. Carpenter corrects me that --

6          Mr. Carpenter, you did not have any direct

7     conversations with Mr. Mills concerning these statements

8     about the lockdown program or about his dissatisfaction with

9     never getting out or telling the union --

10          MR. CARPENTER:  No, sir.

11          THE COURT:  Thank you for gathering the

12     information.

13          I don't see any reason why Mr. Carpenter should

14     return.

15          MS. FLYNN:  I agree.

16          THE COURT:  Mr. Carpenter, thank you very much for

17     your courtesy.  Thank you for gathering this so quickly.

18     It's exactly what is needed by the defense and the

19     government.

20          Do you know if Jones and Anderson are available?

21          MS. FLYNN:  We know where they are.  I think one

22     of them is retired, but we know where they are.

23          THE COURT:  Okay.  Then why don't we wait for the

24     official transcript tomorrow, and we will go over it and

25     have a hearing tomorrow on it.

```
 1            MR. FLEMING:  May I ask a question about
 2   Mr. Anderson?  I'm just wondering if this is the same Brad
 3   Anderson that Mr. Roach identified as the corrupt official
 4   when he testified.
 5            THE COURT:  It's getting more and more interesting
 6   isn't it.
 7            MR. FLEMING:  I think it must be.
 8            THE COURT:  We're about to find out.
 9            MR. FLEMING:  The name just clicked.  We will find
10   out I guess.
11            THE COURT:  It could be very interesting, so we
12   will see.  Let's resolve that tomorrow evening, not this
13   evening.  I'm aware of the issue, and you are aware of the
14   issue.  Let's get the official transcript tomorrow, so we
15   have the actual words.  I have notes, and I can scroll back,
16   but it's still an unofficial transcript.  I don't think we
17   need to resolve that this evening.
18            If the government is planning on requesting that
19   this evidence be presented during your case-in-chief, then I
20   want to make the ruling by tomorrow tonight.  If I'm ruling
21   against you, so be it.  If I am ruling for you on this
22   matter, then you have time to go forward, but I would like
23   you to start the process of contacting them and see if they
24   are available, so I know who we are really discussing that
25   has some reality of coming into court.
```

1        Mr. Wolfe, would you like to proceed?

2        MR. WHITE:   Your Honor, we have a resolution.

3        THE COURT:   Mr. White and Mr. Wolfe actually have

4   a resolution.

5        MR. WOLFE:   Trying to be mindful of the objections

6   that Mr. Harris and Mr. White described to me, I have talked

7   to Lieutenant Benton, and I structured direct examination to

8   present to Your Honor that I believe avoided hearsay and

9   opinion and was limited to admissible things, and I recited

10  the direct that I had in mind and showed my outline for the

11  direct to Mr. Harris and Mr. White.

12       I believe they agree that if it is done that way

13  it is admissible, and if Your Honor is willing, the parties

14  will simply put him on after -- well, I will put him on

15  adhering to that outline after Mr. Kelly tomorrow.

16       THE COURT:   I think there is immense good faith

17  between the government and the defense on this matter.   I

18  trust you implicitly.   If you represent to me that each of

19  you are satisfied based upon those representations, that you

20  have a comfort level, I'm not going to keep you.   I'm not

21  going to conduct the hearing if that's your request.

22       Mr. Harris, are you satisfied?

23       MR. HARRIS:   We are satisfied.

24       THE COURT:   Mr. White, are you?

25       MR. WHITE:   Yes.

1    THE COURT:  Mr. Wolfe, are you?

2    MR. WOLFE:  Yes.

3    THE COURT:  All I need is that representation.

4    Then is there anything further?  If not, I'm going

5    to get you home and have you get some rest so you are fresh

6    for tomorrow.

7    MR. STEWARD:  May I without government objection I

8    believe offer 1058-A?  This is the Perry Mason trial -- I'm

9    going to call it a document because they called it a

10    document.  It's a newspaper article.  I blacked out

11    everything except the headine and the date on it.  I would

12    offer it at this time.

13    THE COURT:  Any objection?

14    MS. BLANCH:  No.

15    THE COURT:  1058-A is received.  Remind me to

16    state that in front of the jury also.

17    (Exhibit 1058-A received.)

18    THE COURT:  There are a number of exhibits that we

19    have received out of the presence of the jury.  At some

20    point, do you want me to go down a laundry list of those, or

21    do you want me to simply go back and have those received

22    into evidence, and then the jury ends up with this them, and

23    you rely upon your argument?  Think about it.  Now is not

24    the time.

25    Can I inquire from the government -- just have a

1    ballpark figure because we know that we want the defense to

2    start in a timely manner and look as professional in their

3    presentation as you -- how are you doing timewise?  I don't

4    think you're finishing next week.  I think the following

5    week is iffy.

6         MS. FLYNN:  We think the following week may

7    happen, the 23rd.

8         MR. WOLFE:  We think we will be done the following

9    week, the 23rd.  Our estimate only runs through Tuesday, the

10   23rd.  Now, the estimate always expands, but our estimate

11   ends on Tuesday, May 23.

12        THE COURT:  You appear to me to be pretty much on

13   track.  We need to have another meeting I think and get

14   WITSEC involved.

15        MR. STEWARD:  Actually, Your Honor, as to the last

16   meeting we had, we are right on track for that.  We told

17   them we would start the 23rd.  If government counsel

18   finishes on the 23rd --

19        THE COURT:  I want to have a talk with WITSEC

20   then.  I am wondering if I could have that informal talk

21   with each of your permission and maybe include -- well, I'm

22   not going to include the government but include defense

23   counsel at some point, maybe tomorrow afternoon when WITSEC

24   is already here, and just see how they are doing.  If they

25   have problems developing, we may not know about those

1   problems.  It would probably take five minutes.  Go over

2   that list again and the order.

3            Now, if you start the 23rd and we get to that

4   break on the -- never mind.  I'll discuss that later with

5   you.

6            Then why don't you go home and get some rest so

7   you are refreshed tomorrow and you can continue to focus as

8   you have ably done.  Good-night.

9            (Recess.)

10            (Jury not present.)

11            THE COURT:  All counsel are still present.  The

12   defendants are present.  The government is present.

13            Counsel, how would you like to proceed with Rule

14   29?  Oral arguments initially and then submission to the

15   Court in written form with a response from the government,

16   the Court taking that under submission and moving upon that

17   prior to the close of evidence -- or at the close of

18   evidence?

19            MR. ROSEN:  Speaking on behalf of Mr. Hevle, that

20   would seem to be the preferred procedure.

21            THE COURT:  Mr. Calabria?

22            MR. CALABRIA:  I would join.

23            THE COURT:  Mr. Harris?

24            MR. HARRIS:  Yes, that's fine.

25            THE COURT:  Mr. White?

1          MR. WHITE:  Yes.

2          THE COURT:  Mr. Fleming?  Mr. Steward?

3          MR. FLEMING:  We agree.

4          THE COURT:  Mr. Reed?

5          MR. REED:  Agreed.

6          THE COURT:  How about the government?

7          THE GOVERNMENT:  Agreed.

8          THE COURT:  So the first submission to come from

9     the defense -- there is no page limitation -- but I will

10    take your oral argument immediately upon closure and

11    addressing by the government.  That way you preserve the

12    record in terms of each of these and then following up with

13    some time schedule that keeps all of you focused written

14    form if you choose.  You may decide to submit on argument.

15          Second, jury instructions, I don't see any reason

16    to put counsel through jury instructions at this time so

17    that everyone remains focused on their case.  My suggestion

18    is maybe Tuesday, Wednesday, and Thursday of that first week

19    when we try to get back to the jury would be an appropriate

20    time.

21          I would like to get the government's basic

22    instructions, if possible, maybe a week beforehand.

23          MS. FLYNN:  That's fine.

24          THE COURT:  Is that acceptable?

25          MR. ROSEN:  Yes.

1          THE COURT:   That means the defense doesn't have to

2     prepare those instructions right now, but you should get

3     them to me maybe before that weekend so I can look at them

4     on Friday, Saturday, and Sunday on the defense's request,

5     and on Tuesday, maybe we can just get through the basics in

6     a day or two.   Now, those won't be the final instructions

7     but the background.

8          All right, see you tomorrow morning at 8:30.

9     Thanks a lot.

10         (At 5:00 p.m., proceedings were adjourned.)

11                          -oOo-

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                    -oOo-

2

3                                 CERTIFICATE

4

5            I hereby certify that pursuant to Section 753,

6    Title 28, United States Code, the foregoing is a true and

7    correct transcript of the stenographically reported

8    proceedings held in the above-entitled matter and that the

9    transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12   Date:  May 11, 2006

13

14                     Sharon Seffens   5/11/06           5/11/06

15                   SHARON SEFFENS, U.S. COURT REPORTER

16

17

18

19

20

21

22

23

24

25