1

ORIGINAL

1

2    UNITED STATES DISTRICT COURT

3    CENTRAL DISTRICT OF CALIFORNIA

4    SOUTHERN DIVISION

5    - - -

6    THE HONORABLE DAVID O. CARTER, JUDGE PRESIDING

7    UNITED STATES OF AMERICA,

8              Plaintiff,
          vs.

9                                    CR-02-938(C)
                                     DAY 45, VOL. III
     BARRY BYRON MILLS;
10   TYLER DAVIS BINGHAM;
     CHRISTOPHER OVERTON
11   GIBSON; EDGAR WESLEY
     HEVLE,
12             Defendants.

13   ---------------------------

14

15

16    REPORTER'S TRANSCRIPT OF PROCEEDINGS

17    Santa Ana, California

18    June 28, 2006

19

20

21    SHARON A. SEFFENS, RPR
      United States Courthouse
22    411 West 4th Street, Suite 1-1053
      Santa Ana, CA  92701
23    (714) 543-0870

24

25

SHARON SEFFENS, U.S. COURT REPORTER

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   DEBRA W. YANG
     United States Attorney
 4   STEVEN D. CLYMER
     Special Assistant United States Attorney
 5   Chief, Criminal Division
     MICHAEL EMMICK
 6   TERRI FLYNN
     JOEY BLANCH
 7   STEPHEN WOLFE
     Assistant United States Attorneys
 8   1400 United States Courthouse
     312 North Spring Street
 9   Los Angeles, CA   90012
     (213) 894-0511
10

11   For Defendant BARRY BYRON MILLS:

12   H. DEAN STEWARD
     LAW OFFICES OF H. DEAN STEWARD
13   107 Avenida Miramar, Suite C
     San Clemente, CA
14   (949) 481-4900

15   MARK F. FLEMING
     LAW OFFICES OF MARK F. FLEMING
16   433 "G" Street, Suite 202
     San Diego, CA   92101
17   (619) 652-9970

18   For Defendant TYLER DAVIS BINGHAM:

19   MICHAEL   V. WHITE
     LAW OFFICES OF MICHAEL V. WHITE
20   1717 Fourth Street, Third Floor
     Santa Monica, CA   90401
21   (310) 576-6242

22   WILLIAM S. HARRIS
     STEWART & HARRIS
23   1499 Huntington Drive, Suite 403
     South Pasadena, CA   91030
24   (626) 441-9300

25
```

```
1    For Defendant CHRISTOPHER OVERTON GIBSON:

2    KENNETH A. REED
     LAW OFFICES OF KENNETH A. REED
3    404 West 4th Street, Suite C
     Santa Ana, CA  92701
4    (714) 953-7400

5    For Defendant EDGAR WESLEY HEVLE:

6    BERNARD J. ROSEN
     LAW OFFICES OF BERNARD J. ROSEN
7    1717 Fourth Street, Suite 300
     Santa Monica, CA  90401
8    (310) 451-4577

9    DONALD J. CALABRIA
     LAW OFFICES OF DONALD J. CALABRIA
10   16133 Ventura Boulevard, Suite 600
     Encino, CA  91436
11   (818) 990-0110

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1                          INDEX

2                                                      PAGE

3    PLAINTIFF'S
     WITNESS:              DIRECT      CROSS    REDIRECT    RECROSS
4

5     (None)

6    PLAINTIFF'S
     EXHIBITS:                   MARKED              RECEIVED
7
      (None)
8
     DEFENSE
9    WITNESSES:            DIRECT    CROSS    REDIRECT    RECROSS

10    (None)

11

12   DEFENSE
     EXHIBITS:                 MARKED          RECEIVED
13
      (None)
14

15

16

17

18

19

20

21

22

23

24

25

1   SANTA ANA, CALIFORNIA; WEDNESDAY, JUNE 28, 2006; 1:30 P.M.

2           (Jury not present.)

3           THE COURT:  We are back in session.  The

4   defendants, defense counsel, and the government are present.

5   The jury and alternates are not present.

6           We are going to bring the jury back with your

7   consent on July 6 at 8:30.

8           Mr. Reed, does that meet with your consent?

9           MR. REED:  Yes.

10          THE COURT:  Second, I will tell the jury that the

11  case will commence argument on July 11.  The arguments are

12  going to conclude that week.  I don't want to get a

13  situation where I am splitting the defense or the government

14  has rebuttal on the following Monday.

15          What is a time estimate on your part, Ms. Flynn?

16  What do you think, a day, day and a half?

17          MS. FLYNN:  Probably just a day.

18          THE COURT:  I will have an extended session then.

19  I am going to tell the jury the government will begin and

20  complete their argument at whatever time of the day that is.

21  I will just forewarn them as a courtesy.

22          Mr. Steward, or, Mr. Fleming, your time estimate?

23          MR. FLEMING:  Three hours.

24          THE COURT:  Three hours and 15 minutes or three

25  hours?

1          MR. FLEMING:  Three hours.

2          THE COURT:  Thank you.

3          Mr. Harris, or, Mr. White?

4          MR. WHITE:  I think I am a little more long-winded

5     than Mr. Fleming.

6          THE COURT:  Your argument will probably get split

7     then.  If it does, then I will have you call a convenient

8     time that evening.  I am not going to make you extend out to

9     7:00 at night.

10         Mr. Rosen, or, Mr. Calabria, which one of you will

11    be arguing?

12         MR. CALABRIA:  I will be arguing.

13         THE COURT:  What do you think about your time

14    estimate?

15         MR. CALABRIA:  I would say an hour to two hours

16    maximum but more closly to an hour.

17         THE COURT:  Mr. Reed?

18         MR. REED:  Hour and a half.

19         THE COURT:  It's hard to tell about rebuttal, but

20    it sounds to me like we can complete this in four days.  The

21    reason I am asking is I am quite prepared to start on

22    July 10.

23         MR. WHITE:  We would ask for the 11th.

24         THE COURT:  The 11th is fine as long as I have a

25    time estimate and I can be guaranteed that we will finish.

1    I don't want that rebuttal over onto Monday.  I want that

2    rebuttal the same week.

3            Okay, I am going to tell the jury they will be in

4    session and deliberating on the 17th.  I don't know why I

5    blocked out -- on my calendar, I blocked out -- for some

6    reason, we have blocked out the 31st.  I don't know if a

7    juror said something.  Well, that's good enough.

8            MR. REED:  Someone had something to do that day.

9            THE COURT:  Okay, Christy, would you summon the

10   jury, please.  I will send them home.

11           I am going to inform them, Counsel, what we have

12   all agreed upon in terms of them getting an exhibit list

13   with all the exhibits and explain to them about saving them

14   a lot of time, and I am going to thank each of you publicly,

15   both sides and the parties, for coming up with a

16   stipulation.

17           (Jury present.)

18           THE COURT:  The jury is present, and the

19   alternates are present.

20           I am going to send you home in a couple of

21   minutes.  Let me talk to you about where we are at in the

22   presentation of the case.  We have put up a calendar of

23   July.  We are going to return on July 6.  You will not be in

24   session tomorrow.  You will not be in session on Friday.  We

25   will be here if you want to come down and visit.  I'm just

1    kidding.  I don't think we are going to be in session on

2    Friday.  We can complete what we need to do.  We may be in

3    session on July 5, but I know a number of you are driving

4    back from a July 4 vacation.

5          It's working out well for us as well, and I will

6    tell you why.  Mr. Reed on behalf of Mr. Gibson will

7    commence the presentation and finish the presentation of his

8    case on July 6.  The people are coming from literally all

9    over the country.  We set up plane flights for all of those

10   people coming in from the Bureau of Prisons and other people

11   who are testifying on that one day.  It worked out well,

12   quite frankly, because there were a lot of problems

13   logistically where people just didn't want to fly out on the

14   4th to testify on the 5th.

15         To those of you who are taking vacations, thank

16   you for suggesting you needed July 5 because it worked out

17   beautifully.  On July 6, I am going to forewarn you it may

18   be very brief, or it may entail some extended hours.  Once

19   again, I can't judge that, so on July 6, you could be in

20   session until 6:00 or 7:00.  I just ask you to make plans in

21   your own families to give us that time if we need it.  If

22   there is any rebuttal, it will be brief, and that will occur

23   on Friday morning, July 7.

24         Now, that would leave the 8th, 9th, and we have

25   agreed that -- although we have toyed with the idea of

1    starting argument on July 10, we have been talking about

2    that outside your presence -- the argument will commence

3    July 11 at 8:30 in the morning.  What I don't want, though,

4    is either side to carry through the weekend and then have

5    the last word on a Monday, so we are going to complete all

6    the arguments for the government and the defense on that

7    week, those four days.  There is a chance that you could be

8    in session until 6:00 or 7:00 in the evening, but I don't

9    think so.  In other words, they will go until they are done.

10            One of the arguments of the defense will have to

11   be split from the time estimate, but everybody else will

12   have a block of time.  We think it will work well.  I will

13   hopefully instruct you the same week.

14            From then on, we are going to ask you to be in

15   session five days a week in your deliberations.  We think

16   your deliberations will start literally on Friday, July 14.

17   If not, you will go back and start your deliberations on

18   July 17, a Monday.  Then it's Monday, Tuesday, Wednesday,

19   Thursday, Friday.  I know you don't want this but if you do

20   want this Saturdays are fine.  I am not pushing you in that

21   direction, but if you want a Saturday, that's fine.

22            The other thing is we were about to fill the rest

23   of your day with going over every exhibit of the 60 pages of

24   exhibits.  Both counsel for the government and the defense

25   have come up with a very, very wise solution that they are

1    stipulating to.  We are going to give you a copy of the

2    exhibit list.  Therefore, although it may not have a

3    complete description -- for instance, Exhibit No. 4-A would

4    be entitled:  "Witness:  Miller.  Description:  Marzloff.

5    Photograph of Recreation Shack," and it will give the date

6    it was identified, March 21, 2006, in case you need to match

7    it up with your notes if you took notes, and it will show

8    the date it was received into evidence, March 21, 2006.

9            So much of this type of work has been done outside

10   your presence.  You really don't know what evidence has been

11   received.  You have heard of evidence marked, and you have

12   heard of a lot of evidence received in your presence, but

13   there has been a number of items received outside your

14   presence during the evening hours or on a Saturday, and you

15   wouldn't know about that.  We think instead of reading this

16   to you for three-and-a-half hours this afternoon that that's

17   not a wise consumption of your time.

18            If we give this list to you in its final form, you

19   will simply have a list of the exhibits.  Counsel will be

20   referring to a lot of these exhibits during their closing

21   statements, so you can take notes, and obviously the

22   exhibits they refer to may have special importance to them

23   or meaning, and they may want you to focus on those, but

24   that's not to denigrate any of the other evidence if they

25   forget to mention a particular exhibit or item that may have

```
 1   great consequence.  I don't know.

 2             I think that's our agreement, Counsel.

 3             Is that acceptable once again, Mr. Fleming?

 4             MR. FLEMING:  Yes.

 5             THE COURT:  Mr. Steward?

 6             MR. STEWARD:  Yes.

 7             THE COURT:  Mr. White?

 8             MR. WHITE:  Yes.

 9             THE COURT:  Mr. Harris?

10             MR. HARRIS:  Yes.

11             THE COURT:  Mr. Calabria?

12             MR. CALABRIA:  Yes.

13             THE COURT:  Mr. Rosen?

14             MR. ROSEN:  Yes.

15             THE COURT:  Mr. Reed?

16             MR. REED:  Yes.

17             THE COURT:  Ms. Blanch?

18             MS. BLANCH:  Yes.

19             THE COURT:  Ms. Flynn?

20             MS. FLYNN:  Yes.

21             THE COURT:  Mr. Wolfe?

22             MR. WOLFE:  Yes.

23             THE COURT:  Mr. Emmick?

24             MR. EMMICK:  Yes.

25             THE COURT:  Well, that's what we will do then.
```

1    That saves another half day of not busy work but just

2    reading to you.  That's normally what happens.  I want to

3    compliment all sides and all parties in this matter.  I

4    think it's a very good suggestion.

5           I also want to say to you that the case has gotten

6    some recent notoriety or publicity in one of the newspapers.

7    I keep track of that just so I know what's out there.  If

8    some of you started to read that, I compliment you for

9    putting that down.  I just remind you that the case has

10   gotten some notoriety.  I think the best way to approach

11   that is just to say that to you and ask you to continue to

12   put down any newspaper or turn off any television item or

13   any news reporting or anything to do with this case once you

14   recognize it.

15          I am not going to sequester you or put you in a

16   hotel.  Even then you would watch TV or probably read the

17   newspaper, so it's kind of foolish.  Your ethics will really

18   be the most determinative thing.

19          Counsel, I can't think of anything else.

20          Anything further on behalf of the government

21   before I excuse the jury until Thursday, July 6, at 8:30?

22   Give us that full and complete day.  I think that will be

23   it.

24          A JUROR:  When you give us our instructions prior

25   to deliberations, will they be in writing?

1          THE COURT:  Yes.  What we are -- I will tell you

2    all the secrets.  I read a packet of instructions to you.

3    We are deciding if we want to send that packet of

4    instructions back to you.  I think we are going to.  I think

5    when you deliberate back there -- I am literally going to

6    give you my packet of instructions.  You are going to have

7    the exhibit list.  You will have all the evidence, and you

8    are going to have us literally sitting out here in court.

9    So you will have the instructions.

10          The question is whether we give you each a copy of

11    the instructions or not, in other words, each one of you

12    have a separate copy.  There are pros and cons to that.  The

13    good part is each of you can follow along.  The difficult

14    part about that is we don't want you going to separate

15    corners and -- you know, you look at page 52, and somebody

16    else is looking at page 34.  Sometimes it's better to have

17    the jury have one copy where you are working off of one

18    copy.  Other times it's better to give the jury the entire

19    packet.  I will do whatever the defense and government agree

20    to.  Right now we haven't decided that, but you will have

21    minimally one copy of the jury instructions.

22          As to any readback -- we will get to this in

23    literally a couple more days.  On readbacks, we have to be

24    careful because sometimes the jury will send out a note we

25    want the following.  Well, we are very concerned that we

1   give you everything that you want.  What if we forget

2   something on redirect or recross?  In other words, we think

3   from our memory we have covered it, and it turns out later

4   that there was another portion.  Right now we are going to

5   wait to see what you do.  You may have no readbacks.  You

6   may have excellent memories.  You just don't know yet and

7   neither do we, but we will resolve that.

8          Anything else?

9          Okay, we will see you on July 6 at 8:30.  You are

10  admonished not to discuss this matter amongst yourselves nor

11  to form or express any opinions concerning the case.

12          (Jury not present.)

13          THE COURT:  All right, we don't leave this evening

14  until we have a completed form -- first of all, an exhibit

15  list that's completed, finally approved, and stipulated to.

16  What I am trying to do, although it's going to seem harsh to

17  begin with, is give you some time -- we are going to work

18  very hard today and very hard tomorrow.  I am hoping not to

19  bring you in on Friday.  I hoping not to bring you in on

20  Saturday.  I hope not to have to reconvene all of you on

21  July 5.  I am hoping to get you out at a decent hour on

22  Friday, July 7.  That's why we are going to work hard today.

23          Mr. Rosen, I am going to suggest that you and Mr.

24  Emmick or somebody get together while we are going through

25  the jury instructions concerning the Indictment because I am

1    going to go through the instructions one by one so I have a

2    record, and I want each defendant participating and to see

3    these instructions.

4              Mr. Mills, Mr. Bingham, Mr. Gibson, and, Mr.

5    Hevle, you are going to be tired this evening, but I want

6    here.  I want you to see what is occurring.  I want you

7    listening, and I want you to participate.  I want you to

8    know what is being read.  I am not giving you a choice about

9    that.  Normally courts would excuse you and send you back.

10   I am not going to do that.

11             Mr. Rosen, I would suggest that you go through

12   this Indictment with one of the government attorneys.  We

13   are going to start on that sometime this evening.  We are

14   going through that page by page.  I would suggest to you

15   that there is surplusage language as you pointed out.  I

16   think a lot of that can be cleaned up.

17             All right, the government's revised repaginated

18   proposed jury instructions of June 20, 2006, filed with the

19   Court, we are going through -- I know that there are a

20   number of areas of disagreement, but on a lot of these

21   instructions, there is of course no disagreement to.

22             We are going to go through for my record -- we are

23   going to start with Jury Instruction No. 1, is there any

24   objection to that instruction?

25             Hearing none, that's given.

1        Jury Instruction No. 2, charge against the

2   defendant is not evidence, presumption of innocence, burden

3   of proof.

4        Any objection to Instruction No. 2?

5        Hearing none, it's given.

6        After Instruction No. 2, do you want a copy of the

7   Indictment given to the jury?

8        MR. FLEMING:  No.

9        THE COURT:  Mr. White?

10       MR. WHITE:  No.

11       THE COURT:  Mr. Calabria?

12       MR. CALABRIA:  No.

13       THE COURT:  Mr. Reed.

14       MR. REED:  No.

15       THE COURT:  Who is going to speak on behalf of the

16  government?

17       MR. EMMICK:  I am, Your Honor.

18       THE COURT:  Mr. Emmick, do you want a copy of this

19  Indictment given to the jury?

20       MR. EMMICK:  Are you asking whether they would

21  want a copy of the Indictment at this point or whether in

22  general?

23       THE COURT:  In general.

24       MR. EMMICK:  Certainly we think they should have a

25  copy of the Indictment in general.

```
 1            THE COURT:  Any disagreement?
 2            MR. FLEMING:  Yes.  We would object to the jury
 3   getting a copy of the Indictment during the deliberations.
 4            THE COURT:  And the reason?
 5            MR. FLEMING:  It's not evidence.
 6            THE COURT:  The difficulty I have is not with the
 7   charged sections of the Indictment.  It's with the history
 8   portions of the Indictment.  It's what I call the preamble
 9   to the Indictment, so if in fact you want the Indictment and
10   you want to renew that, so be it, but I know that if I did
11   consent I wouldn't allow the first portion.
12            MR. EMMICK:  Your Honor, maybe the thing to do is
13   to try to figure out what an acceptable kind of Indictment
14   would be that it would go back.  Frankly, it is really hard
15   for me to imagine that you couldn't have some sort of
16   Indictment --
17            THE COURT:  I understand that.  It's the first
18   portion that lays out the history of the AB, et cetera, that
19   I think is objectionable.
20            MR. EMMICK:  The problem I think is that that
21   history portion actually makes some of the allegations that
22   are then incorporated by reference into Counts 1, 2, and 3.
23   I can go back and try to figure out what portions are
24   absolutely necessary, but I am sure that all of the portions
25   are incorporated by reference.  I don't have a copy in front
```

1   of me, but I know from reading the Indictment in the past

2   that I am positive it contains those things.

3           The incorporation by reference also incorporates

4   the characterization that has the "enterprise organization"

5   kind of language in it, at least some aspect of that, so I

6   don't think because it's intertwined that way that you can

7   just take it out.  If there is a proposal about how we

8   might, I am certainly willing to entertain it.  If it

9   incorporates by reference and you lop it off, what if an

10  element were left out or what if a description were left

11  out.  We will be arguing about what the Indictment alleges

12  and what it alleges accurately, and, of course, taking out

13  five pages of the allegations, that matters.

14          THE COURT:  We will come back to it.

15          Instruction No. 3, reasonable doubt, any objection

16  in its present form?

17          MR. WHITE:  No, Your Honor.

18          THE COURT:  Hearing none, it's given.

19          Instruction No. 4, consideration of multiple

20  counts, multiple defendants, any objection, page 17?

21          MR. WHITE:  No.

22          THE COURT:  Hearing none, it's given.

23          No. 5, "on or about" explained, page 18, any

24  objection?

25          Hearing none, it's given.

 1              No. 6, overview of instructions, page 19, any
 2    objection?
 3              MR. HARRIS:  We object to this one as not
 4    necessary.
 5              THE COURT:  Tentatively, it will be given over Mr.
 6    Bingham's objection.
 7              MR. FLEMING:  Mr. Mills noted that objection, Your
 8    Honor.
 9              THE COURT:  Thank you.
10              No. 7, Count One, language of Indictment and
11    statute, any objection?
12              Hearing none, it will be given.
13              Instruction No. 8 from my memory was objected to
14    by the defense.  I would like to hear the government's
15    position on this DOJ instruction.
16              Why in light of the Ninth Circuit instruction
17    should I give this?
18              MR. EMMICK:  The reason is that the Ninth Circuit
19    instruction is extremely spare in its description of the
20    various elements and -- what the racketeering elements mean.
21    As a result of how spare a Ninth Circuit instruction is,
22    various other Circuits have expanded their instructions in
23    order to spell out the elements more than the Ninth Circuit
24    has, and the Department of Justice has a model RICO jury
25    instruction -- actually a set of those.

1          Just to use an example, the Ninth Circuit -- for

2     example -- and I am just reading from 8.130.  The Ninth

3     Circuit simply listed four elements, and I should say as an

4     aside the four elements they have broken down into five

5     elements.  The fourth just really has two parts.  The Ninth

6     Circuit instruction doesn't say anything about how to define

7     "enterprise" or how to define "associated with the

8     enterprise," which are the first and second elements or what

9     is meant by "participating directly or indirectly in the

10    conduct of the affairs of the enterprise."

11         In my opinion and I think in the opinion of what

12    the department generally and these other Circuits -- in a

13    RICO case, what the jury really craves is some

14    clarification, some explanation, about what these four

15    unusual terms mean.  That's the reason why we think a

16    further explanation of those terms is not just really

17    advisable but essential.

18    I should note that the defense objection is not that

19    the proposed instruction is inaccurate or misleading or

20    prejudicial but just that it's not necessary.  Under those

21    circumstances, it seems to me that it's better to clarify

22    and help the jury rather than simply hope that they figure

23    out without further instructions what things mean like

24    "associated with the enterprise" or what an enterprise is or

25    what it means to conduct the affairs of an enterprise.

1          I guess a simple way of saying that is we just

2    think in this very confusing RICO area, as long as we are

3    saying things that are right, it's better to address the

4    possible areas of confusion and clarify and help rather than

5    not.

6              THE COURT:  Mr. Fleming.

7              MR. FLEMING:  We join in the objection.

8              THE COURT:  Mr. Harris.

9              MR. HARRIS:  Ninth Circuit 8.130 is right on the

10   nose for the substantive RICO.  It correctly lists the

11   elements of -- Mr. Emmick argued that the Ninth Circuit

12   instruction is too spare on some of the elements.  Taking

13   the first element that is mentioned, "enterprise," 8.130

14   states "an enterprise consisting of a group of persons

15   associated together for a common purpose of engaging in a

16   course of conduct."  The definition is right there.  That's

17   a sufficient definition.

18             More generally, the problem with the Department of

19   Justice's so-called model instruction is contains a lot of

20   argument.

21             THE COURT:  It's not necessary.

22             MR. HARRIS:  It's not necessary.  It says a lot

23   about what the government does not have to prove.  That's

24   what we object to, and we can get to the specific objections

25   later on.

1          THE COURT:  If those what I call negatives were

2    taken out, what the government doesn't have to prove, et

3    cetera -- they use the words "It is not necessary" -- would

4    you have any other disagreement with this instruction?

5          MR. WHITE:  Can I add something, Your Honor?  I am

6    troubled by the reference back to the Indictment.  The first

7    element, "enterprise as described in the Indictment," that

8    troubles me because it's kind of a circular type of

9    reasoning, referring the jury back to the Indictment which

10   alleges the criminal organization.  I think that is

11   prejudicial to the defense.

12         MR. EMMICK:  I would like to respond to

13   Mr. White's argument.

14         THE COURT:  I want to make sure they are finished.

15         MR. WHITE:  Yes.

16         THE COURT:  Anyone else?  Mr. Calabria?

17         MR. CALABRIA:  I would join in Mr. White's

18   argument.

19         THE COURT:  Mr. Reed.

20         MR. REED:  Join.

21         THE COURT:  Mr. Emmick.

22         MR. EMMICK:  Our thought is that it has to link

23   back to the Indictment because that is the particular

24   enterprise that is alleged.  I don't think it's particularly

25   prejudicial to say "an enterprise as described in the

1    Indictment."  That is what the indictment alleges, and it's

2    simply a reference back.  I can't say that this is

3    particularly important to either side, but this is -- if

4    it's accurate and it references the Indictment, I don't know

5    why we would want to take that language out.  I should also

6    point out it would be a little odd to take out the one

7    reference to the Indictment when there is a second reference

8    to the Indictment in that very same element.

9              THE COURT:  Anything further?

10             MR. EMMICK:  Nothing.

11             THE COURT:  Anything further on behalf of the

12   defense?

13             MR. HARRIS:  I don't think there is any argument

14   by the government that the Ninth Circuit instruction is not

15   accurate.  They are saying that their version is accurate,

16   but we have the Ninth Circuit's that's also accurate.  Other

17   things being equal, I think it's a better course to follow

18   the Ninth Circuit instruction.

19             THE COURT:  Tentatively, the Ninth Circuit

20   instruction is going to be given.  The Court is not going to

21   be giving the DOJ model.

22             MR. EMMICK:  If I might offer one thought on that,

23   there are some references in Ninth Circuit 8.130 that don't

24   seem to be applicable, so when we finally get to the point

25   where we would be lining things out, I just note that so we

1  don't simply incorporate 8.130 in total and then forget

2  about those other references.

3          THE COURT:  I am going to stop right now just so

4  we don't get too many things going at one time.  Why don't

5  you get together on 8.130 and strike out the inapplicable

6  portions, and then we will resume.

7          (Counsel conferring.)

8          MR. EMMICK:  I believe Mr. Harris and I have

9  agreed what wording of 8.130 is acceptable.  If I could

10  articulate that.

11          THE COURT:  All right.

12          MR. EMMICK:  8.130 starts off with some

13  introductory language.  I believe we both agree that that

14  introductory language is fine.  If you like, I could read

15  the language.

16          THE COURT:  Better yet, why don't you give me a

17  copy.  What is going to happen is Instructions 1, 2, 3, 4,

18  5, and 6 aren't going to be applicable now.  8.130 is going

19  to take it's place.  If you just give me a copy, I can --

20          MR. EMMICK:  All I have is the book with 8.130.

21          THE COURT:  Fine.

22          (Pause in proceedings.)

23          MR. HARRIS:  I believe Mr. Harris and I agreed on

24  the language to 8.130.  It might be useful for us to read it

25  into the record.

1          THE COURT:  Read it into the record.

2          MR. EMMICK:  "The defendant is charged in Count 1

3    of the Indictment with having participated in the conduct of

4    the affairs of an enterprise or a pattern of racketeering

5    activity in violation of Section 1962(c) of Title 18 of the

6    United State Code.

7              "In order for the defendant to be found guilty of

8    that charge, the government must prove each of the following

9    elements beyond a reasonable doubt:

10             "First, there was an enterprise consisting of a

11   group of persons associated together for a common purpose of

12   engaging in the course of conduct.

13             "Second, the defendant was associated with the

14   enterprise.

15             "Third, the defendant participated directly or

16   indirectly in the conduct of the affairs of the enterprise

17   through a pattern of racketeering activity; and

18             "Fourth, the activities of the enterprise in some

19   way affected commerce between one state and another state."

20         THE COURT:  Let's stop at that point.  Therefore,

21   tentatively, I am rejecting 8, 9, 10, 11, 12, 13, and

22   tentatively finding that the model instruction from 8.130 of

23   the Ninth Circuit satisfies the instruction in this area.

24             Let me start with two different problems for just

25   a moment.  Let's talk about Doc Holiday and his desire to

1   remain.  He is presently housed in Marion I assume under

2   fairly restrictive conditions because apparently he is the

3   founder of the Black Gorilla family.  I have no intention of

4   keeping him here.  The Marshal's Office can transport

5   Mr. Holiday back to Marion.  If we get to the death penalty

6   phase, then I'll bring him back out.

7        Let's talk about the death penalty phase for just

8   a moment in case we get there.  If we don't get there, we

9   have done a lot of unnecessary work.  As soon as the jury

10  goes out, we start working again in terms of instructions.

11  I don't expect the government to tell me what portions you

12  are going to put forward, but it seems to me from our

13  initial discussions if we got to the death phase -- or the

14  penalty phase involving either Mr. Mills or Mr. Bingham or

15  both -- just a rough guess how long do you think you would

16  take?

17        In past death cases, this is what I have done.  I

18  have usually taken three weeks, and then we have started.  I

19  don't think that that's necessary.  Here is a tentative

20  schedule that I am going to ask each of you to consider.  In

21  August -- I don't know when the jury is going to reach a

22  verdict, but it seems to me that we ought to start August 8,

23  9, 10, and 11 with the government case.  Then I have found

24  it wise to take a week off.  The reason for that is that so

25  the defense has that week to absorb what the government said

1   and to come back a week later, in other words, not

2   consecutive, not back to back.

3           I will do anything you both agree to.  I just have

4   found when we went government, defense, it was too quick.

5   The defense needed to absorb that, decide if there were

6   mitigating factors.

7           Gentlemen, if we get to the death phase, you are

8   going to be putting on a defense.

9           I don't know your position in that regard, and you

10  don't know that either.  Possibly it's the 14th through the

11  18th, for instance.  It may be the 21st through the 25th

12  off, and then we are back to the 28th through the 1st of

13  September starting on the defense.  I really like that week

14  in between.

15          My guess is the government doesn't have a lengthy

16  presentation.  You have called everybody out of the Bureau

17  of Prisons in this case.  I am just kidding a little bit

18  about that.

19          I want to thank Mr. Reed for not shutting down the

20  entire Bureau of Prisons and reducing us to 13 witnesses

21  instead of the 30 that he had.

22          MR. WOLFE:  If there is a penalty phase, the

23  length of the government's presentation depends to some

24  extent on Your Honor's evidentiary ruling, particularly on

25  this question, presentence reports and probation reports

1   from old convictions where a probation report from 1976 if

2   it may come in without a witness, then because it was used

3   at the sentencing of the defendant in 1976 and therefore is

4   more reliable than objectionable, things would go very

5   quickly.

6            If the government is obliged to find a live

7   witness to bring in, then it has as much to do with the

8   needed break between the guilt phase and the penalty phase

9   as it does with the amount of time.  That's the thing that

10  has struck me most about trying to think ahead.

11           THE COURT:  Would each of you consent that while

12  the jury is deliberating in the first place and while

13  understanding that we may never get to a second phase that

14  we undertake those determinations so that you know?  Would

15  that be acceptable?  Mr. Fleming?  Mr. Steward?

16           MR. STEWARD:  Yes.

17           THE COURT:  Mr. White?  Mr. Harris?

18           MR. HARRIS:  Yes.

19           THE COURT:  Of course this only applies to Mr.

20  Mills and Mr. Bingham.

21           Then you would have a ruling on my part sometime

22  in the middle of July.  With that in mind, whether it's

23  favorable to your position or unfavorable, it seems to me

24  August 14 through the 18th might be a tentative starting

25  date.

1          My guess is even with those reports -- do you

2   envision taking more than a week?

3          MR. WOLFE:  Certainly not.

4          THE COURT:  I wouldn't think so either.  Just my

5   guess.  I don't think the defense knows quite yet -- I don't

6   think you have sorted that out.  I don't expect you to.

7   What do you think about taking that week in between?  I

8   don't want to push you on that.  If you want to go

9   consecutively right after the government's presentation, I

10  would be more than happy to do that.

11         Mr. Steward.

12         MR. STEWARD:  I think we need a break, Your Honor,

13  to absorb what is going on and see what we need to rebut.

14         THE COURT:  I think you also need to talk to your

15  clients at that point, and I need to give you that time.

16         MR. STEWARD:  One problem I foresee is

17  deliberations.  It could be significantly beyond this

18  schedule.

19         THE COURT:  I could be.  I am not expecting a jury

20  verdict in five or ten days.  I'm just tentatively looking

21  at that.  If the verdict came back sometime in July, then

22  would be a good schedule.  If not, we would modify that.  My

23  point is I think we need that week or a couple of days in

24  between at least.

25         Okay, back to the instructions.

1          8.130 is going to be given.

2          Racketeering Act No. 14 --

3          MR. EMMICK:  If I might interrupt just briefly.  I

4    think Mr. Harris and I have identified two little

5    grammatical changes in 8.130.  There is also a Ninth Circuit

6    instruction that has to be used in conjunction with 8.130.

7    The two grammatical changes would simply be in that first

8    paragraph.  As it's now written, it says "The defendant

9    is" -- why don't we say "The defendants are charged" --

10          THE COURT:  "The defendants are charged in Count 1

11    of the Indictment," et cetera.

12          MR. EMMICK:  Just change the grammar to "The

13    defendants are charged" -- then six lines down it says, "In

14    order for the defendants to be found guilty" -- that's the

15    other grammatical change.

16          THE COURT:  Let me read the fourth paragraph

17    again.  "Fourth, the activities of the enterprise in some

18    way affected commerce between one state and another state."

19    Is that correct?

20          MR. EMMICK:  Yes.

21          THE COURT:  All right, any other instruction to be

22    read in conjunction?

23          MR. EMMICK:  Yes, Your Honor.  The fourth element

24    of 8.130 -- the third element talks about the affairs of the

25    enterprise being conducted through a pattern of racketeering

```
 1    activity.  If 8.130 is given, I think it has to be the case
 2    that we would also give 8.126, which is the Ninth Circuit
 3    instruction having to do with the RICO pattern of
 4    racketeering activity.
 5              MR. HARRIS:  We agree with that.  That is correct,
 6    Your Honor.
 7              THE COURT:  Counsel, why don't you go xerox a copy
 8    for me.
 9              (Pause in proceedings.)
10              THE COURT:  There is an addition to 8.130.  There
11    has been a modification by the Ninth Circuit concerning the
12    third element.  I am going to read it to you.  "Third, the
13    defendant participated directly or indirectly in the conduct
14    of the affairs of the enterprise through a pattern of
15    racketeering activity.
16              "To 'conduct' means that the defendant had to be
17    involved in the operation or management of the enterprise,
18    and
19              "Fourth, the enterprise in some way affected
20    commerce," et cetera.
21              That's been a recent addition by the Circuit.
22              I will simply draft that.  You will see a copy by
23    tonight.  It will be done, and you will have a working copy.
24              8.126, "The pattern of racketeering activity is at
25    least two racketeering acts that have a relationship to each
```

1    other, and they amount to or pose a threat of continued

2    criminal activity.   Conduct forms a pattern if it consists

3    of criminal acts that have the same or similar purposes,

4    results, participants, victims, or methods of commission or

5    otherwise are interrelated by distinguishing

6    characteristics.   Sporadic activity or widely separated and

7    isolated criminal activity does not form a pattern of

8    racketeering activity."

9            Is that acceptable to all parties?

10           MR. EMMICK:   Yes, Your Honor.

11           MR. HARRIS:   Yes, Your Honor.

12           THE COURT:   That should take us to what you have

13   in your index as Jury Instruction 14, general instructions

14   concerning racketeering acts.

15           MR. EMMICK:   I think that's right, Your Honor.

16           THE COURT:   Now, on page 36 at line 10, when I

17   read the Indictment -- we read a redacted version of the

18   Indictment clear back on January 27.   It reads on page 36,

19   "First, you will notice from the numbering of the

20   racketeering acts in the Indictment that over 40 such

21   racketeering acts have been alleged."   The jury doesn't know

22   that.   They just know what we have read them.

23           MR. EMMICK:   Your Honor, I think you mean page 16.

24           THE COURT:   No, I mean page 36.   It's Government's

25   Proposed Instruction No. 14.

1           MR. EMMICK:  On my repaginated -- okay, I'm sorry.

2    I have an unrepaginated version.

3           THE COURT:  Get your paginated version.

4           MR. EMMICK:  My mistake.

5           THE COURT:  The problem is we didn't renumber

6    them.

7           Are you satisfied, though, with what I read?

8    "First, you will notice from the numbering of the

9    racketeering acts in the Indictment that over 40 such

10   racketeering acts have been alleged.  In this trial,

11   however, only 17 of those racketeering acts are before you."

12          MR. EMMICK:  I just wanted something that would --

13          THE COURT:  I understand what you are doing, and

14   it may be entirely appropriate.  I am not questioning it.  I

15   just want to make sure there is a consensus.

16          MR. FLEMING:  No, Your Honor.

17          THE COURT:  Then redraft it.  Tell me what you

18   want because remember this.  When we read it, we read like

19   Racketeering Act No. 1 and then hypothetically 15, 27, 32,

20   33, 38, and let's say 40, so the jury knows -- in fact,

21   everybody consented at the time that that's the way they

22   wanted it read.  I even offered to have it redrafted, and

23   all the parties turned me down on that.

24          MR. FLEMING:  What if we just started with

25   "Seventeen racketeering acts are before you" --

1          MR. HARRIS:  That's good.

2          MR. EMMICK:  I'm fine with that.  There is no

3     point numbering them.

4          THE COURT:  So we will stop right there while both

5     of you redraft that paragraph for me.

6          (Pause in proceedings.)

7          THE COURT:  Counsel.

8          MR. EMMICK:  The paragraph will still start,

9     "First, 17 racketeering acts," so it will drop from the word

10    17 down to line 12 where it will combine with racketeering

11    acts, so it will say, "First, 17 racketeering acts are

12    before you."  I suppose we can keep the second sentence.  I

13    don't know that it's necessary.

14         THE COURT:  That's fine.  These instructions

15    relate to those 17 racketeering acts.

16         With that modification as to Government's Proposed

17    Instruction No. 14, is there any objection?

18         MR. FLEMING:  I have a general objection to the

19    bold wording.  Throughout the instruction, certain words are

20    in bold.

21         THE COURT:  No words will be in bold.

22         MR. FLEMING:  Then we're fine.

23         THE COURT:  Are you satisfied?

24         MR. FLEMING:  Yes.

25         THE COURT:  Mr. Harris?

```
 1              MR. HARRIS:  There is an objection to page 36,
 2   lines 21 through 26.  21 begins with "In this case" -- that
 3   sentence being unnecessary.
 4              THE COURT:  Overruled.  That instruction will be
 5   given in the modified form.
 6              MR. HARRIS:  There is one other objection.
 7              THE COURT:  What is that?
 8              MR. HARRIS:  On page 37, line 25, through 38, line
 9   3, "Co-conspirator liability cannot be used to establish the
10   predicate racketeering act."
11              THE COURT:  Page 37, line --
12              MR. HARRIS:  Page 37, line 25, through page 38,
13   line 3.
14              THE COURT:  Beginning with "There are also
15   circumstances" --
16              MR. HARRIS:  Yes.  That sentence is an inaccurate
17   statement of the law.
18              THE COURT:  Mr. Emmick.
19              MR. EMMICK:  Your Honor, I don't believe that is
20   an inaccurate statement of the law.  I don't even believe
21   that the description of the Shryock case that the defense
22   has in its brief supports that view.  That is to say, all
23   that the defense has characterized this as the Shryock case
24   is saying is that -- Shryock says that you can have
25   Pinkerton liability under certain circumstances when you
```

1     also have an aiding and abetting theory, not that Pinkerton

2     is unavailable as a matter of law.

3            You can see that because whether or not Pinkerton

4     liability is available in a particular case would depend on

5     the state law pertaining to these racketeering acts.  If

6     under state law the state law had aiding and abetting

7     liability and it had Pinkerton liability, then you would in

8     applying the state law have Pinkerton liability applicable.

9            The particular instruction that we are looking

10     at -- if I could just make sure here -- what we really all

11     have in mind I think are the Lewisburg counts.  This is a

12     preview of in a sense the Lewisburg counts.  In

13     Pennsylvania, there is actually a specific instruction that

14     says there are two ways that you can find this substantive

15     count.  One way is aiding and abetting liability, and one is

16     co-conspirator liability.  It's that specific instruction

17     that I have in my proposed instructions pertaining to

18     Racketeering Acts 38, 39, and 41.

19            THE COURT:  When you say co-conspirator, you mean

20     Pinkerton?

21            MR. EMMICK:  Yes.

22            THE COURT:

23     Let me hear from Mr. Harris.

24            MR. HARRIS:  The law as I read it under Shryock,

25     the Ninth Circuit case, is that for the predicate

```
 1   racketeering acts -- it's either got to be personal
 2   commission by the defendant or aiding and abetting by the
 3   defendant of two distinct acts within ten years.  If
 4   Pinkerton liability would do it, it would completely open it
 5   up.  Any associate of the AB could be charged with a
 6   racketeering act.  That's not even what the government's
 7   instruction stated.
 8          If you look at, for example, Government's
 9   Instruction 35 -- I am looking at page 116.  They say the
10   same thing.
11          THE COURT:  What page are you on?
12          MR. HARRIS:  Page 116.  Specifically, I am looking
13   at -- starting at line 23.  This is the government's
14   proposed instruction.  "First, as I previously instructed
15   you, to convict a defendant on a RICO substantive offense as
16   charged on Count 1, the government must prove that the
17   defendant personally committed, caused, or aided and abetted
18   at least two of the charged racketeering acts.
19          "By contrast, a convicted defendant on a RICO
20   conspiracy offense charged in Count 2" -- it goes on.
21          You can use Pinkerton on -- basically, the gist of
22   it is for Count 2 Pinkerton applies.  On Count 1, it
23   doesn't.  That makes sense because that limits it to those
24   who personally commit racketeering acts.  If somebody can be
25   vicariously liable, you wouldn't have to personally commit
```

1   racketeering two acts within ten days.  Just if any member

2   or associate of the AB did, everybody would be responsible.

3            MR. EMMICK:  The problem I think with that theory

4   is it ignores what the state law is.  The state law is that

5   you can be held liable for the substantive violation if you

6   were a member of a conspiracy.  Now, we are not contending

7   with respect to Count 1 that mere membership in the RICO

8   conspiracy means that the racketeering acts can be found.

9   In fact, we think it makes much more sense to think about it

10  as simply the conspiracy related to the Lewisburg counts,

11  for example.

12            That is to say, we are not suggesting that the

13  conspiracy that would satisfy the Pinkerton foundational

14  element is the RICO conspiracy in Count 2 as applied to

15  Count 1.  We are just saying under state law if there is a

16  conspiracy and the substantive violation is committed by one

17  of the co-conspirators and is foreseeable, then under state

18  law that defendant can be found guilty of that substantive

19  violation.  I don't see how we get around that because we

20  are applying state law.

21            THE COURT:  Mr. Harris.

22            MR. HARRIS:  We made specific objections later on

23  to cover that point.  Let's say under state law as quoted in

24  the government's instruction conspiracy would be sufficient

25  to satisfy the Lewisburg counts.  If that's the case, either

1    you are talking about the overarching AB conspiracy -- I

2    don't think you can do it that way -- or you are talking

3    about a more defined conspiracy to murder Salaam or Joyner

4    in which case the aiding and abetting covers it anyway.  If

5    you are a member of a more defined conspiracy and you have

6    made some act in furtherance of that, it's captured in the

7    aiding and abetting.  That's the argument.

8            THE COURT:  Thank you.

9            Mr. Emmick.

10           MR. EMMICK:  Our position is that if you look at

11    the racketeering acts themselves you can see that

12    Racketeering Act 37 is the conspiracy to murder black

13    inmates, and you can see that if it is foreseeable that one

14    of these other murders, that is, the Salaam or Joyner or the

15    attempt on Ball -- that it was a foreseeable consequence of

16    Racketeering Act 37, conspiracy to murder black inmates,

17    then you can see how Pinkerton would apply and would fairly

18    apply.

19           The whole point of having a Pinkerton-like theory

20    of liability is that aiding and abetting and foreseeability

21    aren't completely congruent.  If you have something that is

22    foreseeable but may not be aiding and abetting, the Court

23    permits a finding of guilt based on foreseeability.  For

24    example, it's foreseeable that Joyner or Salaam may be

25    killed as a result of the conspiracy, even though some of

1   the people who were part of that conspiracy didn't have in

2   mind let's go aid and abet the murder of that particular

3   person.  It's foreseeable.  That's why we would like to have

4   the foreseeability instruction to be part of it.

5               THE COURT:  Mr. Harris.

6               MR. HARRIS:  The problem is as we argued before.

7   If on Joyner and Salaam the jury accepts our version that a

8   warning was sent into Lewisburg, that would mean that

9   certainly for Mr. Bingham there was no intention of a death

10  occurring in Lewisburg, so the only basis for liability

11  would be membership in the Aryan Brotherhood.  That would be

12  the only way you could get him on those.

13              For a racketeering act, you can't have Pinkerton

14  liability.  There has to be personal commission or aiding

15  and abetting, so I think that the government is limited

16  since personal commission doesn't apply since Mr. Bingham

17  wasn't there -- they have got to show aiding and abetting,

18  and you can't do it with Pinkerton.

19              MR. EMMICK:  Just to respond briefly, our theory

20  would be if the defense theory of it was just a warning were

21  applicable then he would not have been participating in a

22  conspiracy to murder black inmates under Racketeering Act

23  37, so that concern is alleviated because the conspiracy

24  under Racketeering Act 37 wouldn't be found, so he wouldn't

25  be worried about foreseeability because he wouldn't be part

1    of the conspiracy to murder black inmates.

2         MR. WHITE:  It appears as though we have now

3    gotten into the Joyner and Salaam murders.  My concern is

4    that the government theory with regard to T.D. Bingham is

5    that he sent in an order to go to war.  Clearly, given the

6    government's theory, he is an aider and an abettor.  He

7    intends that Mr. Salaam, Mr. Joyner, be killed or other

8    blacks be killed.  That is their theory.

9         What worries me is that they now seem to want to

10   be giving the jury an alternative theory, which they are

11   really not arguing.  I would agree with Mr. Emmick's last

12   statement that if the jury believes that Mr. Bingham sent in

13   a warning that he is not part of a conspiracy to murder

14   black inmates and arguably that should take care of it, but

15   the Court knows better than any of us that when -- my worry

16   is that when the jury gets bombarded with instructions that

17   really aren't applicable to this case that anything can

18   happen back in the jury room.

19        Maybe that instruction is applicable to other

20   defendants.  It's certainly not applicable to Mr. Bingham.

21   It's not applicable to Mr. Mills.  The government theory is

22   that Mr. Mills and Mr. Bingham ordered this race war.

23   Therefore, it's aiding and abetting, and they are either

24   guilty or not guilty based on whether the jury decides that

25   they ordered the war or didn't order the war.

1      THE COURT:  Is there an application to Mr. Hevle?

2      MR. EMMICK:  Mr. Hevle is not charged in Count 1

3  at all.  There may be Pinkerton applications for him on

4  later counts, but since now we are focused on Count 1 -- and

5  I take it Mr. Harris's point really is that this is -- maybe

6  we can be a little more practical minded about this.

7      Part of my concern is that on one level when a

8  message is sent out people who are sending out the messages

9  have a generalized notion that we are going to go out and

10  kill black inmates.  Now, whether or not that constitutes

11  aiding and abetting a particular murder of a particular

12  black inmate at a particular penitentiary is something that

13  the jury might have some issue with.

14      The specificity, the particularity, may be

15  something where they think, you know, if the particular

16  crime is murdering Joyner and the person who sends the

17  message didn't really have Joyner in mind, maybe that

18  doesn't count as aiding and abetting.  What we would like to

19  have is the Pinkerton instruction because it captures the

20  appropriate criminal liability of someone who is actually

21  joined in the conspiracy and is helping the conspiracy go

22  forward but doesn't have particular inmates in mind.

23      That's the reason that we want to have the

24  overlapping theories, and we think that they are available

25  under Pinkerton.  This is in a sense the perfect case for it

1   because we have Racketering Act 37 which alleges the

2   conspiracy, and 38, 39, and 41 are the specific applications

3   of that.

4          The final thought is you couldn't ask for a more

5   on point jury instruction than the Pennsylvania jury

6   instruction that talks about the two ways in which criminal

7   liability can be found.

8          THE COURT:  Why do you have that fear if the

9   aiding and abetting instruction was the only instruction

10  given because you have aiding and abetting in the killing of

11  black inmates at Lewisburg?  There are no specific inmates

12  to be killed.

13         MR. EMMICK:  There is a conspiracy charged in

14  Racketeering Act 37, and then there is a substantive count

15  relating to the actual murdering of Joyner.  It's

16  conceivable to me that the jury could say to itself, gosh,

17  whoever passed a message along at any stage relating only to

18  the generalized notion of killing black inmates is not

19  aiding and abetting the specific crime of killing Joyner in

20  Lewisburg.

21         THE COURT:  It's not killing Joyner.  It's the

22  conspiracy to murder black inmates.

23         MR. EMMICK:  That's the conspiracy.  I think we

24  can prove up that Racketeering Act 37, conspiracy, in that

25  way.  The issue is whether or not --

1          THE COURT:  And aiding and abetting?

2          MR. EMMICK:  No, just with conspiracy alone.  The

3    question is whether or not aiding and abetting in addition

4    to -- whether conspiracy in addition to aiding and abetting

5    applies to Racketeering Act 38.  The defense would like it

6    to be simply aiding and abetting on 38, 39, and 41, and we

7    would like co-conspirator liability also to apply to 38, 39,

8    and 41 for the reason that --

9          It's conceivable to me that the defense could

10   argue they didn't have Joyner in mind.  They didn't have

11   Lewisburg in particular in mind.  They didn't have anybody

12   in particular in mind.  Maybe you can't aid and abet a

13   particular murder if you don't even have that person in

14   mind.  That's exactly why you want to have co-conspirator

15   liability.

16         MR. WHITE:  May I make a suggestion.  If I make

17   that argument -- the Court hasn't instructed yet -- then the

18   Court can certainly provide them with a conspiracy

19   instruction.  I will not make that argument.  That's

20   contrary to logic.

21         THE COURT:  Remember I am going to instruct at the

22   end of the case.

23         MR. EMMICK:  I am not just thinking about what

24   they might argue.  I am thinking about what the jury may

25   have in mind because they are going to be looking at the

1    aiding and abetting instruction not only for each state, but
2    they will have aiding and abetting instructions for the
3    Ninth Circuit.  The aiding and abetting instructions do
4    focus on the particular crimes, and the particular crimes
5    have to do with particular victims.
6            That's the reason we would like to have something
7    that's more broad based.  There is no question that the
8    defendants in this case -- on the front end, they are not
9    thinking Joyner.  They are not thinking Salaam.  They are
10   not thinking Ball.  They are just thinking about the notion
11   of going out and murdering black inmates in general.  That's
12   the reason we want the foreseeability because then it
13   doesn't focus on the individual, which is what Racketeering
14   Acts 38, 39, and 41 focus on.  It's the murder of particular
15   individuals.  That may or may not be what they had in mind,
16   but it's certainly foreseeable.
17           MR. HARRIS:  It sounds like what Mr. Emmick is
18   worried about is some sort of transferred intent problem.
19   With aiding and abetting, I don't think there would be any
20   problem with crafting some kind of transferred intent
21   instruction.  I think that's implicit in it without opening
22   it up to conspiracy, which I think is Pinkerton land
23   iability is not necessary to solve the problem that he is
24   talking about.  It's a transferred intent problem.
25           THE COURT:  Mr. White.

1    MR. WHITE:  Only, Your Honor, I hate to make this
2    kind of an argument, but I have tried so many homicide
3    cases, and unfortunately sometimes clients have been
4    convicted based upon aiding and abetting theories.  I have
5    never seen a jury failing to convict on an aiding and
6    abetting theory because my client didn't specify that a
7    particular person was murdered.

8        If the person who committed the acts or murder was
9    aided and abetted by my client, it -- they didn't need to be
10   a specific person as the victim.  I just don't think it's a
11   real live concern.  I think it just opens up the
12   government's ability to get a conviction on a theory they
13   really haven't put forward.

14       THE COURT:  Mr. Emmick.

15       MR. EMMICK:  The problem is we necessarily are
16   projecting out what the possibilities are.  We think this is
17   a reasonable possibility, but more particularly, we think
18   Pinkerton is perfect for this.  Really what we have is a
19   conspiracy to murder black inmates.  It's a generalized
20   conspiracy.  It's foreseeable that individuals are going to
21   be murdered, and then we have individual substantive counts.
22   We think this is the perfect case for Pinkerton liability.
23   We also think we can prove aiding and abetting, but
24   Pinkerton is a very good fit as well.

25       MR. FLEMING:  Your Honor, we would make sure that

1    Mr. Mills joins in this objection.   Earlier I stated that we

2    were satisfied with the change in the language and had no

3    objection to this instruction.   I want to be clear.   We do

4    object to this instruction based on the arguments

5    articulated by Mr. Harris and Mr. White.

6              THE COURT:   Is everybody else satisfied with your

7    argument?

8              MR. EMMICK:   Yes.

9              MR. HARRIS:   Yes.

10             THE COURT:   All right, we will go on.   I will come

11   back to it.

12             MR. EMMICK:   Your Honor, may I approach Mr.

13   Harris?

14             THE COURT:   Yes.

15             (Counsel conferring.)

16             MR. EMMICK:   Your Honor, with respect to

17   Instruction 14, there is a typo that should be noted on line

18   15 of page 17 -- 37.   It says "third."   It should be

19   "fourth."

20             THE COURT:   Line 15?

21             MR. EMMICK:   On line 15, it should be "fourth."

22             THE COURT:   Anything else?

23             All right, Government Proposed Instruction No. 15

24   is found at page 39.

25             Any objection?

1          MR. FLEMING:  No, Your Honor.

2          THE COURT:  Government's Proposed Instruction No.

3     16 found at page 43.

4          MR. STEWARD:  Your Honor, on 16, the last

5     paragraph on page 46 starting at line 2, I understand that's

6     part of the pattern, but it really isn't applicable in this

7     instruction.

8          THE COURT:  Right.  It's not an incorrect

9     statement of the law.  It's not incorrect.

10         MR. STEWARD:  I think I agree with that.  I am

11    just saying it's really unnecessary given the picture of our

12    facts.

13         MR. EMMICK:  But Mr. Mills is the one who is

14    charged, and he is not present.

15         THE COURT:  Right.

16         Any other objection to Instruction No. 16 other

17    than the bolded portions?  That should be stricken.

18         MR. STEWARD:  No, Your Honor.

19         THE COURT:  Mr. Steward, your objection is

20    overruled.

21         Also, on page 43, "Subpart (a) of Racketeering Act

22    4," I think that was just put in.

23         Now, do you want that left but just unbolded?

24    Look at page 43.  Look at line 10 and look at page 44, line

25    18.  Those are the bolded portions you were talking about.

1   What the government did in the proposed instruction was

2   simply to bold those so that we knew we had a Subpart (a)

3   and a Subpart (b) to look at.  This should be easily

4   resolved.

5        MR. EMMICK:  I had understood they didn't want the

6   bold for emphasis.  Here it's just a heading.

7        MR. STEWARD:  The way it is is fine.

8        THE COURT:  The way it is?

9        MR. STEWARD:  That's fine.

10       THE COURT:  Mr. Harris?

11       MR. HARRIS:  That's fine.

12       THE COURT:  Then we will just leave it as it is.

13   Disregard my last comment?

14       Any other objections to 16?

15       All right, it will be given as submitted.

16       Instruction No. 17 beginning on page 47.

17       MR. STEWARD:  No objection to 17.

18       THE COURT:  17, no objection.

19       Just so my record is clear, let's go back to 16.

20   Any of the footnotes such as Footnote 20 on page 44 and the

21   reference to 20 at line 17 is stricken.  That also applies

22   to No. 21 at page 46, line 6, and also the footnote at the

23   bottom portion is stricken.  As to 17, that also applies to

24   Note 22 on page 48, line 24, and of course the footnote

25   portion on pages 48 and 49 which is stricken and to Footnote

No. 23 on page 50, line 10.

Instruction No. 18.

MR. STEWARD:  In order to be consistent, the last paragraph of 18 on page 54, line 5, I will object to that. I realize the Court has already ruled on the identical issue in another objection, but for the record, I object.  Other than that, no objection.

THE COURT:  Once again, no one is objecting then to "Subpart (a) of Racketeering Act 6" or to "Subpart (b)" being bolded?

Hearing no objection, it will be given in its present form.

Jury Instruction No. 19.

MR. HARRIS:  Your Honor, there is a typo on line page 59, line 24.  That should read "intent on the part of."

THE COURT:  All right, anything else concerning that instruction?  Acceptable then?

MR. WHITE:  Yes.

THE COURT:  It's acceptable only in the sense that you are also joining Mr. Steward's objection?

MR. WHITE:  No, I am not actually.

THE COURT:  Page 61, Proposed Instruction No. 20.

MR. STEWARD:  No objection to 20.

MR. WHITE:  No objection.

MR. CALABRIA:  No objection.

1          THE COURT:  Mr. Reed?

2          MR. REED:  Between lines 7 and 8 on page 61, I

3   think there is some type of typo.  There is something

4   missing.

5          MR. EMMICK:  There should be the word "defendant"

6   in there.

7          THE COURT:  "That the defendant committed" --

8          MR. EMMICK:  I think what happened was we saw that

9   the word "defendant" was missing, and we put if on the wrong

10  line.  We should take the word "defendant" out of line 9 and

11  stick it in at the beginning of line 8.

12         THE COURT:  With those modifications, any

13  objection by any party?

14         Okay, it's given.

15         Instruction No. 21.

16         MR. HARRIS:  On page 68, line 6, we would ask that

17  the words "of defendant Bingham" be inserted between

18  "conspirator and committed."

19         THE COURT:  Page 68, line 6

20         MR. HARRIS:  Item No. 4.  We ask that it read --

21  it should be "A co-conspirator of defendant    Bingham" --

22         THE COURT:  While you are deciding that, I am

23  going to strike -- there is a reference to Footnote 30 -- on

24  page 68, line 22, the actual footnote, and on page 70, line

25  8, the "31" and then the actual footnote at the bottom of

1   page 70.

2          Have you had enough time to consider page 68 and

3   the request on line 6?  It would read, "A co-conspirator of

4   defendant Bingham committed an overt act" --

5          MR. EMMICK:  That's fine.

6          THE COURT:  That's inserted then.

7          With that modification and the striking of the

8   footnotes, as to Instruction No. 21, is there any objection?

9          MR. HARRIS:  No, Your Honor.

10         THE COURT:  Then that is going to be given.

11         All right, let's take a 15-minute recess.

12         (Recess.)

13         (Jury not present.)

14         THE COURT:  We are back on the record.

15         Government's Proposed Instruction 22, page 71, on

16  page 72, line 18, we will strike "Footnote 32" and of course

17  the footnote on that page, and we will strike "Footnote 33"

18  on page 74, line 13 and of course the footnote on that page.

19         Then I will wait for any comments concerning that.

20         MR. FLEMING:  No objection.

21         THE COURT:  It's given.

22         Page 75, which is Instruction No. 23, the Court

23  will strike "Footnote 34" on page 77 and the actual footnote

24  on page 77 and "Footnote 35" on page 80, which is at line

25  14, and the actual footnote at the bottom of page 80.

1          I will wait for any comments concerning that

2  instruction.

3          MR. HARRIS:  There is a typo at page 79, line 19.

4  We should delete the word "which."

5          THE COURT:  79, line 19.

6          MR. EMMICK:  We agree.

7          THE COURT:  "Which" is stricken.

8          Any other modifications or objections?

9          MR. WHITE:  No.

10         THE COURT:  Acceptable to everyone?

11         MR. WHITE:  Yes.

12         THE COURT:  No. 24, page 81, the Court once again

13  will strike "Footnote 36" at page and the actual footnote on

14  that page as well as "Footnote 37," page 84, line 12, and

15  the actual footnote on that page.

16         MR. STEWARD:  We have no objection on 24.

17         THE COURT:  Mr. White?  Mr. Calabria?

18         If I don't hear from anyone, then it's given.

19         MR. CALABRIA:  No objection.

20         THE COURT:  This is 25.  The Court will begin by

21  striking a reference to "Footnote 38" on line 1 and the

22  actual footnote at the bottom of that page and "Footnote 39"

23  on page 88 on line 24 and the actual footnote that

24  corresponds to that at the bottom of the page, and we will

25  add the instruction requested by Mr. Reed.

1          "As I have instructed you previously, evidence

2     presented by the government concerning Racketeering Act 32

3     in all its forms is not to be considered by you against

4     defendant Christopher Gibson for any purpose in your

5     deliberations regarding his guilt or innocence of any count

6     in this case."

7          I will insert that right after that instruction.

8          Now, as to 25 and that added instruction, I will

9     wait for your comments.

10         MR. FLEMING:  That's acceptable.

11         MR. WHITE:  It's acceptable.

12         THE COURT:  Hearing nothing from all parties then

13    or anything additional, the instruction is given.

14         Proposed Instruction No. 26, page 82, the Court

15    will strike "Footnote 40" on page 90 which is at line 12 and

16    the actual footnote that corresponds to it at the bottom of

17    the page and then wait for counsel's comments.

18         MR. EMMICK:  Your Honor, there is one very minor

19    point.  I am not going to object to my own instruction, but

20    on the second line, I had highlighted the word "not" because

21    this was the first of the racketeering acts that did not

22    have Subparts (a) and (b), so I am not sure if that is

23    something --

24         THE COURT:  I don't want to highlight any portion.

25    We are going to take that out.  Thank you very much.  The

1    underscoring or underlining is deleted.   I will wait for any

2    other comments.

3              MR. FLEMING:   It's acceptable, Your Honor.

4              THE COURT:   It's acceptable by all parties then.

5    It will be given.

6              27 starts at page 91.   I will strike "Footnote 41"

7    on page 93, line 11, and the corresponding footnote on the

8    same page.

9              I will await comments by any of the parties.

10             MR. EMMICK:   This one also has the word "not"

11   underscored at line 5.

12             THE COURT:   I will strike that underscoring.

13             MR. WHITE:   Acceptable.

14             THE COURT:   Instruction No. 27 will be given.

15             Proposed Instruction No. 28 starts at page 94.   I

16   will strike "Footnote 42" found at page 96, line 12, and the

17   corresponding footnote at the bottom of the page.   I will

18   wait for any comments.

19             Apparently it's accepted by all the parties.   The

20   Court then with the acquiescence of counsel will give

21   Instruction No. 28.

22             Instruction No. 29 starts at page 97.   The Court

23   will strike Footnote 43, page 100, at line 6 and the

24   corresponding footnote at the bottom of that page.   The

25   underlining on "not" is deleted.

1          MR. HARRIS:  On this, we have an objection to the

2    language at page 98, line 5, through page 98, line 26, for

3    the same reason discussed previously, that on the predicate

4    racketeering acts co-conspirator or Pinkerton liability does

5    not work, so on this one, we believe --

6          THE COURT:  You are on page --

7          MR. HARRIS:  Page 98, lines 5 through 26, is the

8    objection.  Specifically, while that may be a correct

9    statement of Pinkerton law irrespective of the RICO context,

10   in this case, what they are saying is that Pinkerton

11   liability can establish a predicate racketeering act.  That

12   doesn't work for RICO -- substantive RICO.  We have cited

13   the United States versus Shryock case from the Ninth Circuit

14   for that proposition.

15          So you are asking the Court at page 98, line 5,

16   through what?

17          MR. HARRIS:  Through line 26 on that same page.

18          THE COURT:  How would you redraft that?  I am

19   going to require you to redraft it.

20          MR. HARRIS:  You would have to --

21          THE COURT:  I am just going to have you do it.

22   Just put it down on paper.

23          (Pause in proceedings.)

24          THE COURT:  Counsel, do you have a draft?

25          MR. HARRIS:  Yes.

```
 1            THE COURT:  Could I see it?
 2            Do you have a copy?
 3            MR. WHITE:  We have a copy.
 4            THE COURT:  What am I deleting?  In other words, I
 5    have yellow underlining here.  Am I deleting all the yellow
 6    underlining?
 7            MR. HARRIS:  No.  You start deleting at page 97,
 8    line 28.  That's all deleted completely starting at page 97,
 9    line 28, through all of page 98.  Delete on page 99 through
10    line 8 the words "more specifically," and then the sentence
11    starts --
12            THE COURT:  I don't have the slightest idea what
13    you are doing.  Take a pencil and draw through those
14    portions you don't want.
15            (Pause in proceedings.)
16            THE COURT:  Any comment?
17            MR. EMMICK:  If it is the same issue -- I haven't
18    seen the instruction.  If it's the same thing he showed me
19    earlier --
20            (Counsel conferring.)
21            MR. EMMICK:  We are fine with this if the Court
22    does not go with the Pinkerton theory.  We still think that
23    the Pinkerton theory is applicable.  If the Court goes the
24    other way, that seems like a fine way of --
25            THE COURT:  I am concerned about the Pinkerton
```

1   theory.  I am not concerned with finality.  I want some time

2   to think about it.  Let me set this off to the side.  It's

3   the same issue I have been dealing with before.

4           Let's go to Instruction No. 30, which would be on

5   101.  The "not" will be deleted.  We will strike "Footnote

6   44," line 6, page 104, and the footnote at the bottom of the

7   page.

8           I will wait for comments of counsel.

9           MR. HARRIS:  We have this one redacted along the

10  same lines.

11          THE COURT:  Moving to Instruction No. 31 on page

12  105, I assume that we have the same issue.

13          MR. HARRIS:  Yes.

14          THE COURT:  "45" is stricken on page 108 and the

15  attendant footnote at the bottom.  You have given me a

16  redacted copy.

17          No. 32 at page 109, any objection to Proposed

18  Instruction No. 32?

19          MR. HARRIS:  No, Your Honor.

20          THE COURT:  Hearing no other objection from all

21  counsel except the underlining on page 110, line 16,

22  before -- I would like to delete that underlining.

23          Government's Proposed Instruction No. 33, I

24  understand this is still subject to a Rule 29 motion.

25          In its present form prior to the Court making the

1  ruling, is there anything that's objectionable by the

2  defense?

3            MR. FLEMING:  No, Your Honor.

4            THE COURT:  Then it's going to be tentatively

5  accepted as well.

6            We move to page 115, Instruction No. 34.  Of

7  course we have the same issue I think on page 116 -- strike

8  that.  We don't.  My apologies.

9            The highlighted portions  we are going to

10  unhighlight.  We are going to strike "Footnote 46," line 7,

11  page 118, and the actual footnote at the bottom of that

12  page.

13            Any objections or comments to Instruction No. 34?

14            MR. WHITE:  Or 35?

15            THE COURT:  Page 115, that's 34.

16            MR. EMMICK:  That's 34.  I think we were looking

17  at 35.

18            THE COURT:  On 34, we are going to unbold the

19  first, second, third, or fourth, or do you want to leave it

20  in its present condition?

21            MR. WHITE:  That's 35.

22            THE COURT:  I am going to step over and show you

23  what I am working on.  Mine says Proposed Government

24  Instruction No. 34 and starts at page 115.

25            MR. EMMICK:  It ends on 115.

```
 1              THE COURT:  My apologies.  Thank you.  It's 35.
 2    You are absolutely right.
 3              On 35, do you want those portions unbolded or
 4    left?
 5              MR. FLEMING:  Unbolded.
 6              THE COURT:  First of all, we will unbold those
 7    portions, and we will unbold the "is not," the "actually,"
 8    et cetera, on page 117 and strike 46 which I have already
 9    alluded to on page 118, line 7, and the actual footnote.
10              What are the objections?
11              MR. HARRIS:  The objection is from page 116, line
12    20, through the end as being argumentative and unnecessary.
13              THE COURT:  Counsel, let me hear from Mr. Emmick.
14              Any comments?
15              MR. EMMICK:  Your Honor, we think that especially
16    with the RICO conspiracy there is a need to have a further
17    explanation of what these various terms mean.  I don't think
18    the concept of a RICO conspiracy is at all clear or
19    self-evident.  For that reason, we think that it's not at
20    all argumentative.  In fact, I don't see what aspect of the
21    pages to which the defense is objecting would be
22    argumentative or why it's argumentative.  We think all of
23    this makes clear something that is quite unclear.  That's
24    why we think it should be in here.
25              Just to put a point of contrast here, the Ninth
```

1    Circuit does not have a RICO conspiracy construction.   What
2    we have done here is taken the DOJ model RICO instruction,
3    but we have also considered the RICO conspiracy instruction
4    from a couple of other Circuits.   I don't think -- I can
5    pull out those other Circuits' instructions --
6              THE COURT:   What did we do on the Fernandez case?
7    We gave a very abbreviated form, and it was held by Judge
8    Fletcher to be more than adequate.
9              MR. EMMICK:   I have a copy.   I don't know if it's
10   in L.A. or upstairs.
11             THE COURT:   I have a copy of the instruction.   Why
12   don't we go get it.
13             MR. HARRIS:   May I respond to that?
14             THE COURT:   I know I gave a very abbreviated
15   instruction.   We will wait.
16             Do you have the Fernandez case with you?
17             MR. EMMICK:   I don't think I do.   It's possible
18   that I have it upstairs.   I don't remember if it is upstairs
19   or in L.A.
20             THE COURT:   Ms. Blanch, if you would be kind
21   enough to pull that for him.
22             MR. EMMICK:   Do you mean the case itself or the
23   jury instruction that is --
24             THE COURT:   I have got the jury instructions.   I
25   would like you to be satisfied.   It's the leading case right

1    now.   These instructions survived the Circuit.

2            (Pause in proceedings.)

3            THE COURT:   I know on the 31st we promised one of

4    the jurors off.   That's why I had it taken off in my notes.

5    No matter what, something came up, and we will not be in

6    deliberations on the 31st.

7            MR. REED:   Somebody had a doctor's appointment.

8            THE COURT:   There is something on the 31st.   We

9    represented no matter what we wouldn't be in session.

10           We spent a day or two on this issue with counsel.

11           Mr. Reed, you were involved in this discussion.

12           MR. REED:   Oh, yes.

13           THE COURT:   There is a 99-percent chance that

14   instruction is going to be given.   As defense counsel goes

15   over to the government counsel table and looks over their

16   shoulder, pull the Fernandez case and see if there are any

17   comments in those 80 pages about that area.

18           Mr. Emmick, you have done a fabulous job.   I am

19   going to give some form of this instruction that comes from

20   the Fernandez case, and I will tell you why besides just

21   following a time-tested case now.   Your instruction

22   emphasizes -- it gives too much of what you don't have to

23   prove.   In a sense, it almost switches the burden around,

24   although it doesn't.   I understand that legally, but anytime

25   I get into what you don't have to do there is an affirmative

1   duty really that you have to prove something, but it's left

2   to argument.  You are not foreclosed in any way.

3           Later on if the jury asks, I can always come back

4   in light of a question -- maybe I will end up responding in

5   the way you would hope I would respond in this case, but I

6   am going to start with simplified instructions.

7           Who is going to draft this for me?  Mr. Harris?

8   Good.  You are going to draft this for me.  Here is the

9   instruction.  You are going to submit your own instruction

10  in a few moments.  Why don't you sit down and write.

11          Mr. Wolfe, is going to research this.  I am asking

12  you to go through the Fernandez case.  I just don't remember

13  each instruction and if there was any criticism, if the

14  Circuit was concerned.  So when you go through that and if

15  you see something, please tell me.  Remember I tried to keep

16  these instructions relatively simple and leave it to

17  argument.  I thought that the instructions are best

18  understood if they are not as convoluted.

19          Are you going to draft this, Mr. Reed?

20          MR. REED:  Yes.

21          THE COURT:  Then I will go onto the next

22  instruction, Instruction No. 36.

23          MR. EMMICK:  35 and 36 are tied together in a

24  sense, so if we are redoing 35 -- I don't know whether it

25  affects 36.  It looks like 36 drops away.

1          THE COURT:  You might look -- I think that there

2    was an additional instruction -- do you have the Fernandez

3    instructions?

4          MR. EMMICK:  No.  I handed it back to -- Mr. Reed

5    has it.

6          MR. REED:  Is that the one that talks about an

7    enterprise?

8          THE COURT:  Yes.

9          MR. REED:  That's 42.

10          THE COURT:  I have something involving just a

11   brief issue in chambers for just a moment.  Why don't you

12   and Mr. Emmick take a look at that whole series that starts

13   with Count 2 and the definitions that follow.

14          (Recess.)

15                          -oOo-

16

17

18

19

20

21

22

23

24

25

-oOo-

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:   June 28, 2006

Sharon A. Seffens      6/28/06

SHARON SEFFENS, U.S. COURT REPORTER

SHARON SEFFENS, U.S. COURT REPORTER